**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
STEVEN AMMANN

                            Plaintiff,          **REPORT AND RECOMMENDATION**

        -against-                               **21-CV-2766 (JS) (ST)**

SHARESTATES, INC. and ALLEN
SHAYANFEKR, in his capacity as Employer,

                            Defendants.
-----------------------------------------------------------X
**TISCIONE, United States Magistrate Judge:**

        Before the Court is Plaintiff's motion for sanctions made pursuant to Rule 11 of the Federal

Rules of Civil Procedure ("Rule 11"). Steven Ammann ("Plaintiff") brought this action against

Sharestates, Inc. and Allen Shayanfekr ("Defendants") alleging that Defendants breached a

contract for Plaintiff to perform consulting services for Sharestates, Inc. and violated various New

York Labor Laws. Thereafter, Defendants brought a counterclaim action alleging Plaintiff failed

to maintain required licenses under the contract. Plaintiff argues that Defendants' counterclaim is

frivolous and has been made for an improper purpose and requests that the Court sanction

Defendants by dismissing the action and awarding Plaintiff attorneys' fees and costs incurred in

defending against the counterclaim.

        The motion was referred to this Court for a Report and Recommendation by the Honorable

Joanna Seybert. For the reasons set forth below, the Court respectfully recommends that Plaintiff's

motion be GRANTED.

## BACKGROUND

        In 2016, Plaintiff and Defendant Sharestates entered into an agreement for Plaintiff to

introduce investors to Sharestates in exchange for commissions from sales made as a result of

those introductions.[1] Am. Compl. ¶¶ 25, 34–35, ECF No. 47; Mot. Sanctions Ex. A, ECF No. 89-3. On May 17, 2021, Plaintiff filed a Complaint alleging that Sharestates and Allen Shayanfekr, in his capacity as Plaintiff's employer, intentionally began withholding commissions earned, thereby breaching the contract and violating several New York Labor Laws regarding withholdings from earnings and deductions from wages. *See generally* Am. Compl. Plaintiff's Complaint sought to recover those commissions. Compl., ECF No. 1.

Thereafter, on June 30, 2021, Defendants filed an Answer which raised a counterclaim alleging that Plaintiff failed to obtain a broker/dealer license under Securities Exchange Act § 15(a).[2] Answer ¶¶ 7–9; *see* 15 U.S.C. § 78o(a). On July 21, 2021, Plaintiff filed a Reply to the Answer which included an affirmative defense stating: "Sharestates's counterclaim fails because there is no private right of action under Section 15(a)(1) of the Securities and Exchange Act of 1934." Reply to Answer 2, ECF No. 9.

On September 29, 2022, Plaintiff filed an Amended Complaint reasserting the claims contained in the original Complaint and alleging, at length, that Defendants' counterclaim was retaliatory and frivolous. Am. Compl. 3 n.1, 22, 22 n.4, 23–24, 28–30. Defendants then filed an Amended Answer on October 27, 2022, which reasserted the first counterclaim for failure to register for a broker/dealer license and added a second counterclaim, which is not at issue here. Am. Answer ¶¶ 8–17, ECF No. 52. The only modifications made to the first counterclaim were:

---

[1] The parties dispute whether this agreement gave rise to an employment relationship or whether Ammann was an independent contractor. Mem. Law Supp. Mot. Rule 11 Sanctions ("Pl.'s Mem.") 4, ECF No. 89-1. The consulting agreement was originally entered into orally, and was later memorialized in writing. Am. Compl. ¶¶ 25, 31–33.

[2] The Answer, and later the Amended Answer, state: "During all relevant times, Ammann was required by applicable laws and regulations (including, but not limited to, relevant sections of the Securities Exchange Act of 1934 (15 U.S.C. 78a, etc.)) to maintain one or more professional securities broker-dealer licenses . . . ." Answer ¶ 7; Am. Answer ¶ 9, ECF No. 52. The provision referenced in that allegation, specifically 15 U.S.C. § 78a, is the first section of the Act and contains only the Act's short title. It is unclear whether Defendants intended to reference subparagraph (a) of § 78o, which deals with registration and licensure, or whether the reference to "78a, etc." was intended to broadly reference the entire act and any relevant provisions therein. In any event, 15 U.S.C. § 78o(a)(1), which is commonly referred to as Exchange Act § 15(a)(1), is the relevant provision regarding registration.

(1) the insertion of an introductory paragraph describing the consulting agreement; (2) a paragraph incorporating and realleging the allegations in the prior paragraphs; (3) the addition of a title[3]; and (4) the insertion of the language "and foreseeable" to an allegation that Sharestates' injuries were "a direct and foreseeable result" of Plaintiff's alleged failure to maintain required licenses. *Compare* Answer ¶¶ 6–9, *with* Am. Answer ¶¶ 6–11. The title to the first counterclaim stated as follows: "**FIRST COUNTERCLAIM (FOR FAILURE TO MAINTAIN REQUIRED LICENSES)**." Am. Answer 13 (emphasis in original).

On June 14, 2023, Plaintiff sent Defendants a letter entitled "Rule 11 Safe Harbor Notice," (the "Safe Harbor Letter") with an accompanying draft motion for Rule 11 sanctions. Mot. Sanctions Ex. I, ECF No. 89-11. The letter asserted that the first counterclaim was frivolous and presented for an improper purpose (namely, retaliation), on the grounds that there is no private right of action under § 15(a) of the Exchange Act and that, even if Defendants were intending to use § 15(a) as a basis to bring an action for rescission of the consulting contract under Exchange Act § 29(b), such action would be time barred under the applicable statute of limitations for actions under § 29(b).[4] Mot. Sanctions Ex. I. Two days later, on June 16, 2023, Defense counsel acknowledged receipt of the Safe Harbor Letter via email and stated "I will respond next week." Mot. Sanctions Ex. J. Defense counsel ultimately did not respond to the Safe Harbor Letter. Mem. Law Opp'n Pl.'s Mot. Rule 11 Sanctions ("Defs.' Opp'n") 5, ECF No. 96. On August 8, 2023, Plaintiff filed a Reply to the Amended Answer, again asserting that there is no private right of action under § 15(a)(1) as an affirmative defense to the first counterclaim. Reply to Am. Answer

---

[3] The title was presumably added to the first counterclaim in order to distinguish it from the second counterclaim, as that action had not been brought in the original Answer. *Compare* Answer ¶¶ 6–9, *with* Am. Answer ¶¶ 8–11.

[4] The Safe Harbor Letter also alleged that Defendants' second counterclaim was frivolous and retaliatory. The instant Rule 11 motion, however, is only predicated upon the first counterclaim. Pl.'s Mem. 6.

2, ECF No. 87. On August 28, 2023, Plaintiff filed the Motion for Rule 11 Sanctions currently before this Court. Mot. Rule 11 Sanctions, ECF No. 89.

The Honorable Joanna Seybert referred the motion to me for this Report and Recommendation. *See* Referral Order dated Oct. 17, 2023.

## LEGAL STANDARD

Rule 11(b) provides, in relevant part:

> By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> > (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; [and]
> >
> > (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

Fed. R. Civ. P. 11(b).

In accordance with the above Rule, "to avoid the risk of sanctions, a party's counsel must undertake reasonable inquiry to ensure that papers filed are well-grounded in fact, legally tenable, and not interposed for any improper purpose." *Mahoney v. Yamaha Motor Corp. U.S.A.*, 290 F.R.D. 363, 368 (E.D.N.Y. 2013) (quoting *Young v. Suffolk Cnty.*, No. 09–cv–3325, 2013 WL 491982, at *23 (E.D.N.Y. Feb. 11, 2013)). "Because Rule 11 requires that a party's inquiry must be 'reasonable under the circumstances,' liability for sanctions 'requires only a showing of objective unreasonableness.'" *Bletas v. Deluca*, No. 11 CIV. 1777, 2011 WL 13130879, at *10 (S.D.N.Y. Nov. 15, 2011) (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, (2d Cir. 2009)). "A pleading or motion violates Rule 11 if it is 'frivolous, legally unreasonable, or factually without foundation, even though not signed in subjective bad faith.'" *ED Cap., LLC v.*

*Bloomfield Inv. Res. Corp.*, 316 F.R.D. 77, 81 (S.D.N.Y. 2016) (quoting *Wechsler v. Hunt Health Sys., Ltd.*, 216 F. Supp. 2d 347 (S.D.N.Y. 2002)) (citing *Simon DeBartolo Grp., L.P. v. The Richard E. Jacobs Grp., Inc.*, 186 F.3d 157, 167 (2d Cir. 1999)); *see also Storey v. Cello Holdings, LLC*, 347 F.3d 370, 387 (2d Cir. 2003) ("'[T]he standard for triggering the award of fees under Rule 11 is objective unreasonableness,' and is not based on the subjective beliefs of the person making the statement." (quoting *Margo v. Weiss*, 213 F.3d 55, 65 (2d Cir. 2000))). In examining a Rule 11 sanctions motion, courts must "resolve all doubts in favor of the signer of the pleading." *Bletas*, 2011 WL 13130879, at *10 (quoting *Abdelhamid v. Altria Group, Inc.*, 515 F. Supp. 2d 384, 392 (S.D.N.Y. 2007)).

In examining frivolousness, "[m]erely incorrect legal statements are not sanctionable under Rule 11(b)(2)." *Id.* (quoting *Storey*, 347 F.3d at 391). Rather, for a legal action to be considered frivolous thereunder, "[t]he operative question is whether . . . the legal position has no chance of success, and there is no reasonable argument to extend, modify or reverse the law as it stands." *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 177 (2d Cir. 2012) (quoting *Fishoff v. Coty Inc.*, 634 F.3d 647, 654 (2d Cir.2011)). "In other words, the court should not consider whether the claims in question are 'losers,' but rather whether they are 'so clearly [ ] loser[s] that it is in the interest of justice to deter future plaintiffs and attorneys from prosecuting similar ones.'" *Robinson v. De Niro*, 614 F. Supp. 3d 73, 75 (S.D.N.Y. 2022), *report and recommendation adopted*, No. 19-CV-09156, 2022 WL 7091518 (S.D.N.Y. Oct. 12, 2022) (quoting *Toussaint v. NY Dialysis Servs., Inc.*, 230 F. Supp. 3d 198, 223 (S.D.N.Y.), *aff'd*, 706 F. App'x 44 (2d Cir. 2017)). "The extent to which a litigant has researched the issue and found some support for its theories even in minority opinions, in law review articles, or through consultation with other attorneys should certainly be taken into account when determining whether [Rule

11(b)(2)] has been violated." *ED Cap.*, 316 F.R.D. at 81 (quoting Fed. R. Civ. P. 11 advisory committee's note to 1993 amendments).

In examining whether a filing was made for an improper purpose under Rule 11(b)(1), the pleading must first be found to be frivolous. *Sussman v. Bank of Israel*, 56 F.3d 450, 458–59 (2d Cir. 1995) (adopting analysis in *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990) that the filing of a nonfrivolous action cannot be sanctioned for being filed with an improper purpose); *see also id.* at 458 ("Although the 'improper purpose' and 'frivolousness' inquiries are separate and distinct, they will often overlap since evidence bearing on frivolousness or non-frivolousness will often be highly probative of purpose." (quoting *Townsend*, 929 F.2d at 1362)). "Although a frivolous position will often signal an improper purpose," frivolousness alone does not give rise to a finding of improper purpose, absent something more. *Sierra Club v. U.S. Army Corps of Engineers*, 776 F.2d 383, 391 (2d Cir. 1985). To that end, "[a] court may infer an improper purpose if, in light of [a party's] conduct during and outside of litigation, a complaint is so baseless as to suggest that there is an ulterior motive behind the lawsuit." *An v. Despins*, No. 22-CV-10062, 2023 WL 4931832, at *6 (S.D.N.Y. Aug. 2, 2023) (first citing *S. Pac. Shipping Co. v. Redi-Fresh Produce Inc.*, No. 14 CIV. 4157, 2014 WL 6968039, at *10 (S.D.N.Y. Dec. 9, 2014); and then citing *Schlaifer Nance & Co., Inc. v. Estate of Warhol*, 194 F.3d 323, 338 (2d Cir. 1999)).

"In determining whether sanctions are appropriate, courts consider, *inter alia*, whether the improper conduct was 'willful[ ] or negligent,' whether the conduct was 'part of a pattern or activity,' or whether the party had 'engaged in similar conduct in other litigation.'" *Id.* at *4 (quoting *Colliton v. Cravath, Swaine & Moore LLP*, 2008 WL 4386764, at *12 (S.D.N.Y. Sept. 24, 2008), *aff'd*, 356 F. App'x 535 (2d Cir. 2009)). "The Court may also consider whether the misconduct infected the entire pleading or only one particular count or defense; what effect the

misconduct had on the litigation process in time or expense; and whether the responsible person is trained in the law." *Id.* at *4 n.8 (quoting *Colliton*, 2008 WL 4386764, at *12). "[S]ince Rule 11 imposes a 'continuing obligation' on counsel to correct or withdraw documents that are found to lack support, a court should also consider whether it was objectively unreasonable for an attorney to 'reaffirm[ ]' claims and 'advocat[e] positions' after they were shown to be inaccurate." *Robinson*, 614 F. Supp. 3d at 75 (quoting *Galin v. Hamada*, 753 F. App'x 3, 8 (2d Cir. 2018)). Moreover, "[a]n action is 'objectively unreasonable' such that 'Rule 11 sanctions are appropriate where an attorney or party declines to withdraw a claim upon an express request by his or her adversary after learning that [the claim] was groundless.'" *Cameau v. Nat'l Recovery Agency, Inc.*, No. 15CV2861, 2018 WL 4853050, at *2 (E.D.N.Y. Sept. 28, 2018) (quoting *Fuerst v. Fuerst*, 832 F. Supp. 2d 210, 220 (E.D.N.Y. 2011)).

"When a court determines that Rule 11 sanctions are appropriate, it has 'has significant discretion in determining what sanctions, if any, should be imposed for a violation,' bearing in mind 'that the sanctions should not be more severe than reasonably necessary to deter repetition of the conduct by the offending person or comparable conduct by similarly situated persons.'" *E. Gluck Corp. v. Rothenhaus*, 252 F.R.D. 175, 179 (S.D.N.Y. 2008) (quoting Advisory Committee Notes). "The court may impose a fine or penalty, an award of reasonable expenses and attorney's fees incurred as a result of the misconduct, or dismiss the action." *Id.* (citing *Abdelhamid*, 515 F. Supp. 2d at 392). "Awarding attorneys' fees as a sanction is particularly appropriate for improper purpose violations." *S. Pac. Shipping Co.*, 2014 WL 6968039, at *11 (citing Fed. R. Civ. P. 11 Advisory Committee Notes to 1993 Amendments).

## DISCUSSION

Plaintiff argues that Defendants' first counterclaim is frivolous and is presented for an improper purpose for two reasons. First, Plaintiff argues that Defendants' first counterclaim attempts to assert a cause of action against Plaintiff under the Securities Exchange Act § 15(a)(1) for failure to obtain a license, and that longstanding precedent has held that there is no private right of action under that section. Pl.'s Mem. 11. Second, Plaintiff argues that, even if Defendants intended the counterclaim to be an action for rescission of the consulting contract under Exchange Act § 29(b), with such rescission being predicated upon a violation of § 15(a)(1), the action is nevertheless frivolous because it is time barred.[5] Pl.'s Mem. 12–15. Plaintiff argues that sanctions are warranted because the counterclaim is entirely without merit and was brought for the improper purpose of retaliating against Plaintiff for bringing suit, and because Defendants failed to reply to the Safe Harbor Letter or withdraw the claim despite being on notice of its frivolousness, arguing that failure to do so is objectively unreasonable. Pl.'s Mem. 16–18. Plaintiff further argues that retaliatory purpose is supported by a pattern of behavior throughout discovery, including several motions to compel filed by Plaintiff, and that such pattern of behavior has been "calculated to increase Plaintiff's litigation costs." Pl.'s Mem. 4–7, 17–18.

Defendants, in response, begin with a statement of facts disputing Plaintiff's characterization of the factual background giving rise to this action, presented for the apparent purpose of demonstrating that Defendants' first counterclaim has merit. To that end, Defendants allege that Plaintiff was required to maintain a license in order to be entitled to commissions for sales of "fractional loans," although not for sales of "whole loans," and that Plaintiff agreed in the

---

[5] Plaintiff's argument notes that it is not even clear whether a private right of action for rescission under § 29(b) can be predicated on a § 15(a)(1) violation as the Second Circuit has declined to answer the question. Pl.'s Mem. 12 (first citing *EMA Fin., LLC v. Vystar Corp.*, No. 119CV01545, 2021 WL 1177801, at *3 (S.D.N.Y. Mar. 29, 2021); and then citing *Boguslavsky v. Kaplan*, 159 F.3d 715, 722 n.6 (2d Cir. 1998)).

contract to obtain or maintain a license if required, but failed to do so. Defs.' Opp'n 4–5. Defendants further allege that "[m]ost of the loans for which Plaintiff claims a commission were sold by Sharestates as 'whole loans.'" Defs.' Opp'n 4, 5 n.1. Thus, Defendants assert as follows:

> Plaintiff characterizes the Counterclaim as seeking to "rescind" the entire Consulting Agreement and to "claw back" and "recover all amounts that Sharestates ever paid" to Plaintiff. That is not Sharestates' position. The Counterclaim states that "[a]mong the services" Plaintiff provided were services requiring a license. Sharestates seeks to recover amounts paid as compensation for those transactions for which Plaintiff lacked a required license; that is, those transactions which are the subject of the Counterclaim's allegations.

Defs.' Opp'n 5 n.1. In sum, Defendants factually characterize the counterclaim as only seeking to recover a portion of the commissions paid.[6]

In their first argument in opposition, Defendants do not argue that there is a private right of action under § 15(a)(1). Instead, Defendants argue that Plaintiff's motion concedes that the counterclaim could be interpreted to be an action for rescission under § 29(b) predicated on a violation of § 15(a)(1), and that Plaintiff admits that the Second Circuit has declined to decide whether a violation of § 15(a)(1) could serve as a predicate thereunder. Defs.' Opp'n 7–8. Defendants then argue at length that multiple circuits have recognized a private right of action under § 29(b), citing to a variety of cases stating that there is a private right of action under that section.[7] Defs.' Opp'n 7. Thus, Defendants argue that, although the Second Circuit has not decided

---

[6] While not expressly stated, this background appears to be presented to illustrate that Defendants' counterclaim is reasonable in its scope and not retaliatory.

[7] The availability of a private right of action under § 29(b) is not in question, as the statute contains a statute of limitations, and the Supreme Court has recognized the existence of such actions. *See Ceres Partners v. GEL Assocs.*, 918 F.2d 349, 361 (2d Cir. 1990) ("The [Exchange] Act expressly provides for a number of private actions *i.e.*, under §§ 9, 16(b), 18(a), and 29(b)" (citing 15 U.S.C. § 78cc); *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 18–19 (1979). Rather, because rescission actions under § 29(b) must be predicated upon a violation of the Exchange Act, *Williams v. Binance*, No. 22-972, 2024 WL 995568, at *11 (2d Cir. Mar. 8, 2024), the only question is which provisions of the Act can serve as predicate violations. *See, e.g.*, *Boguslavsky*, 159 F.3d at 722 n.6 (declining to decide whether § 15(a)(1) could serve as a predicate for rescission). Two of Defendants' cited cases involve rescission actions predicated on § 15(a); the rest are inapposite to that section and, as the availability of § 29(b) rescission actions is not in dispute, are thus inapposite to the frivolousness of the counterclaim. *See Reg'l Properties, Inc. v. Fin. & Real Est. Consulting Co.*, 678 F.2d 552, 561 (5th Cir. 1982) (holding § 15(a)(1) could serve as predicate for rescission); *Weiss v. Altholtz*, No. 10 C 02609, 2011 WL 4538459, at *4 (N.D. Ill. Sept. 29, 2011) (same); *see also*

whether § 15(a)(1) violations can serve as a predicate for § 29(b) rescission actions, other courts have, and the counterclaim is not legally unreasonable such that it has no chance of success. Defs.' Opp'n 8.

Thereafter, Defendants argue at length that Plaintiff has failed to show that the action is time barred under the applicable statute of limitations. Defs.' Opp'n 8–10. Finally, Defendants concede that they did fail to respond to the Safe Harbor Letter, but that Plaintiff's counsel did not raise the issue with Defendants' counsel in communications between the two after Plaintiff sent the letter, and that Defendants did not intentionally ignore the letter. Defs.' Opp'n 5.

For the reasons that follow, the Court respectfully recommends that Plaintiff's motion for sanctions be GRANTED, that the first counterclaim be DISMISSED WITH PREJUDICE, and that Plaintiff be awarded reasonable expenses and attorneys' fees incurred in bringing this motion.

## I.    Defendants' Counterclaim is Frivolous and Was Filed for an Improper Purpose.

### A.  *Defendants' Counterclaim Is Frivolous Because Longstanding Precedent Establishes that there Is No Private Right of Action Under § 15(a)(1), and the Counterclaim Attempts to Assert an Action Under § 15(a)(1).*

Section 15(a)(1) of the Exchange Act regarding the registration and regulation of brokers and dealers states:

> It shall be unlawful for any broker or dealer which is either a person other than a natural person or a natural person not associated with a broker or dealer which is a person other than a natural person (other than such a broker or dealer whose business is exclusively intrastate and who does not make use of any facility of a national securities exchange) to make use of the mails or any means or instrumentality of interstate commerce to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security (other than an exempted security or commercial paper, bankers' acceptances, or commercial bills) unless such broker or dealer is registered in accordance with subsection (b) of this section.

---

*Lee v. Fisher*, 70 F.4th 1129, 1146 n.13 (9th Cir. 2023) (discussing private right of action under § 14(a) and § 29(b)). Plaintiff's § 29(b) statute of limitations argument necessarily relies on the existence of private rights of action thereunder. Pl.'s Mem. 12–15.

15 U.S.C. § 78o. Section 29(b) of the Exchange Act regards the validity of contracts which violate that chapter. It states:

> Every contract made in violation of any provision of this chapter or of any rule or regulation thereunder, and every contract (including any contract for listing a security on an exchange) heretofore or hereafter made, the performance of which involves the violation of, or the continuance of any relationship or practice in violation of, any provision of this chapter or any rule or regulation thereunder, shall be void (1) as regards the rights of any person who, in violation of any such provision, rule, or regulation, shall have made or engaged in the performance of any such contract, and (2) as regards the rights of any person who, not being a party to such contract, shall have acquired any right thereunder with actual knowledge of the facts by reason of which the making or performance of such contract was in violation of any such provision, rule, or regulation.

15 U.S.C. § 78cc.

Overwhelming and longstanding precedent, both within and outside this circuit, has held that there is not a private right of action under § 15(a)(1). *See, e.g.*, *Goodman v. Shearson Lehman Bros.*, 698 F. Supp. 1078, 1086 (S.D.N.Y. 1988) (declining to imply a private cause of action under § 15 because "there [is] no indication that Congress intended that there be a private right of action for violations of § 15(a)(1)" and because "courts addressing the issue since *Cort* have consistently refused to imply such a private right of action for § 15(a)(1) violations." (citing *Cort v. Ash*, 422 U.S. 66 (1975))); *Sheldon v. Vermonty*, 204 F.R.D. 679, 684, 684 n.3 (D. Kan. 2001) (collecting cases, and noting that those cases that did recognize rights of action under § 15 predated the Supreme Court's decision in *Cort v. Ash*, which announced a new test for implying rights of action under the Exchange Act). In the past 36 years since *Goodman*, the Southern District of New York, which is known for its expertise in securities law, has routinely and perfunctorily dismissed actions under § 15(a)(1) for failure to state a claim, sometimes in a single sentence, because there is no private right of action under the section. *See, e.g.*, *Hunt v. Alamo*, No. 23 CIV. 9151, 2024 WL 532176, at *3 (S.D.N.Y. Feb. 9, 2024) (citing *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1314 (9th

Cir. 1982)) (dismissing because no private right of action under §15(a)); *EMA Fin. v. TPT Glob. Tech, Inc.*, No. 20-CV-8781, 2023 WL 7043227, at *8 (S.D.N.Y. Oct. 26, 2023) (citing *Vystar Corp.*, 2021 WL 1177801, at *3) (no private right of action under § 15(a)(1)); *Cyber Apps World, Inc. v. EMA Fin., LLC*, 645 F. Supp. 3d 281, 285–86 (S.D.N.Y. 2022) (dismissing action brought under § 15(a)). A mere cursory search of caselaw on this topic yields the above precedents and reveals the legal insufficiency of an action brought under § 15(a).

Plaintiff first argues that Defendants' first counterclaim is frivolous because it attempts to assert an action under § 15(a)(1) and that, under the longstanding authority detailed above, there is no private right of action under that section. Pl.'s Mot. 11. In response, Defendants argue that the Second Circuit has not addressed whether § 15(a)(1) violations can serve as a predicate for § 29(b) rescission actions, but that other courts have held that rescission actions can be brought for § 15(a)(1) violations, and thus "the Counterclaim [is not] legally unreasonable, such that it has no chance of success."[8] Defs.' Mem 7–8. The Court understands Defendants' argument to be that their first counterclaim does not attempt to bring a cause of action under § 15(a)(1), but rather that it is intended to be a rescission action under § 29(b) that is merely predicated upon a violation of § 15(a)(1). This is consistent with other portions of Defendants' memorandum, in which they state that the counterclaim "seeks to recover amounts paid as compensation" under the contract. Defs.' Opp'n 5 n.1.

---

[8] Defendants' memorandum actually states that "the Second Circuit has not explicitly decided whether there is a private right of action *under Section 29(b)*, even though other Circuit Courts have found that there is." Defs.'Opp'n 8 (emphasis added). As discussed, there is no dispute that the Second Circuit, and the Supreme Court, have expressly recognized the availability of rescission actions under § 29(b). *See Transamerica Mortg. Advisors*, 444 U.S. at 18–19. The only unanswered question is whether § 15(a)(1) violations can form the basis for them. *See* Pl.'s Mem. 12–15. Because this assertion immediately succeeds a statement that "Plaintiff admits that . . . 'the Second Circuit has yet to . . . decide whether an alleged violation of § 15(a)(1) can form the predicate for a rescission action under § 29(b),'" Defs.' Opp'n 8 (quoting Pl.'s Mem. 12), and Defendants cite to two out-of-circuit rescission cases based upon § 15(a)(1), this appears to just be an error in phrasing, and the Court has rephrased the argument accordingly. Defs.' Opp'n 8.

This argument, however, is contrary to the plain language of the pleading. The counterclaim, which is entitled "**FIRST COUNTERCLAIM (FOR FAILURE TO MAINTAIN REQUIRED LICENSES)**," alleges as follows:

> Despite applicable requirements, Ammann failed to maintain any, or at least all, professional licenses necessary to perform the services for which Sharestates paid him fees. Ammann therefore was not entitled to the fees that Sharestates paid to him. *Ammann's failure to obtain and maintain such licenses posed significant risk to Sharestates, and could subject Sharestates to regulatory sanctions and liability from customers.* The payment of such amounts in light of Ammann's failure to obtain and maintain appropriate licenses is not permitted by applicable law or broker-dealer rules, *and making such payments could render Ammann a broker performing services for which he is not licensed and pose significant risks for Sharestates*. . . . *__As a direct and foreseeable result, Sharestates has been injured in an amount to be determined at trial__*, but in no event less than the amount required for this Court to have subject matter jurisdiction over this Counterclaim.

Am. Answer 13 (emphasis added). The counterclaim, as plead, asserts an action for monetary damages based upon exposure to liability, not an action for which rescission is the requested relief. Specifically, Defendants' counterclaim alleges that: (1) Plaintiff failed to maintain a license; (2) the payments Sharestates made to Plaintiff under the contract were thus unlawful; (3) making unlawful payments to an unregistered broker exposed Sharestates to liability from regulators and customers; and (4) Sharestates thus suffered injury as a result of that exposure. The title, which states that it is an action "**FOR FAILURE TO MAINTAIN REQUIRED LICENSES**," Am. Answer 13 (emphasis in original), further illustrates this point, as it directly states that Defendants are countersuing Plaintiff *for failing to maintain a required license*, not to rescind a contract due to such alleged failure. Defendants' argument that the counterclaim is a rescission action is both unsupported and contradicted by the language of the pleading Defendants filed, and apparently misrepresents the nature of the counterclaim. The Court thus finds that the counterclaim attempts to assert an action under § 15(a)(1), not one for rescission under § 29(b) predicated on an alleged violation of § 15(a)(1).

In fact, elsewhere in their memorandum, Defendants apparently concede that the action is not a rescission action. Instead, Defendants argue that while "Plaintiff characterizes the Counterclaim as seeking to 'rescind' the entire Consulting Agreement and to 'claw back' and 'recover all amounts that Sharestates ever paid' to Plaintiff," "[t]hat is not Sharestates' position."[9] Defs.' Opp'n 5 n.1 (quoting Pl.'s Mem.). To that end, Defendants note that sales of "whole loans," which made up "[m]ost of the loans for which Plaintiff claims a commission," did not require a license, and that only sales of "fractional loans" required a license. Defs.' Opp'n 4–5, 5 n.1, 10. Thus, Defendants argue, the counterclaim only seeks to recover for commissions based upon sales of fractional loans, which Defendants acknowledge made up only a minority of the commissions under the contract.[10] Defs.' Opp'n 5 n.1.

However, actions for rescission under § 29(b) can only be brought to rescind *contracts* that are unlawful, not unlawful *transactions* under lawful contracts. *TPT Glob. Tech*, 2023 WL 7043227, at *5; *Zerman v. Jacobs*, 510 F. Supp. 132, 135 (S.D.N.Y.), *aff'd*, 672 F.2d 901 (2d Cir. 1981); *Palmer v. Thomson & McKinnon Auchincloss, Inc.*, 474 F. Supp. 286, 291 (D. Conn. 1979). In other words, the contract must be "unable to be legally performed." *TPT Glob. Tech*, 2023 WL 7043227, at *5; *Vystar Corp.*, 2021 WL 1177801, at *3; *Frati v. Saltzstein*, No. 10 CIV. 3255, 2011 WL 1002417, at *6 (S.D.N.Y. Mar. 14, 2011) (citing *Pompano-Windy City Partners, Ltd. v. Bear Stearns & Co.*, 794 F. Supp. 1265, 1288 (S.D.N.Y. 1992)); *see also DarkPulse, Inc. v.*

---

[9] This assertion could be understood to mean either that Sharestates is not seeking to rescind the contract, with "the entire Consulting Agreement" just serving as emphatic language characterizing Plaintiff's memorandum, or that Sharestates is not seeking to rescind the *entire* contract, *i.e.*, that Defendants seek only to partially rescind the contract. Neither reading salvages Defendants' position. If the action is not one for rescission, it can only be one under § 15(a)(1), and Defendants do not even attempt to argue that there is a nonfrivolous argument for changing existing law to imply a private right of action under § 15(a)(1). For the latter reading, Defendants provide no basis in law to support the idea that § 29(b) allows for partial rescission of a contract, and there is none.

[10] Plaintiff alleges that fractional loan commissions made up less than 1% of commissions claimed under the contract. Pl.'s Reply Supp. Rule 11 Mot. ("Pl.'s Reply Supp. Sanctions") 3 n.2, ECF No. 97. Defendants do not provide an estimated percentage, and only assert that "most" of the commissions were for whole loan sales.

*FirstFire Glob. Opportunities Fund, LLC*, No. 21 CIV. 11222, 2023 WL 199196, at \*11 (S.D.N.Y. Jan. 17, 2023) ("Courts in this District have . . . held that in § 29(b) actions, a defendant's failure to register as a dealer does not make the transaction 'prohibited,' where the underlying contract does not require the defendant to act as a dealer. Indeed, courts have routinely dismissed such actions." (collecting cases)); *LG Cap. Funding, LLC v. ExeLED Holdings, Inc.*, No. 17 CIV. 4006, 2018 WL 6547160, at \*5 (S.D.N.Y. Sept. 28, 2018), *vacated on other grounds*, No. 17-CV-04006, 2022 WL 16751904 (S.D.N.Y. Nov. 7, 2022) ("LG may have acted improperly when it sold off the shares . . . but because nothing in the Note . . . 'explicitly require[s it] to act as a broker,' . . . the Contracts were still capable of performance even if LG failed to register as a dealer." (internal citation omitted)). Even a cursory search of caselaw examining rescission actions reveals this precedent, which courts in this circuit have consistently followed for decades.

It is unclear whether Defendants inadvertently concede that the action was not intended to be a rescission action, or attempt to argue that the counterclaim is an action for partial rescission. In any event, by arguing that "[m]ost of" the commissions were for lawful transactions of whole loan sales, Defendants admit that the contract could, in fact, be legally performed and that "[m]ost of" the contract was, in fact, legally performed. Defs.' Opp'n 4; *see Vystar Corp.*, 336 F.R.D. at 81 ("[A] contract can be voided where 'there could be no performance under the contract without violating the Act.'" (quoting *Slomiak v. Bear Stearns & Co.*, 597 F. Supp. 676, 682 (S.D.N.Y. 1984))). Even a cursory inquiry into relevant legal precedent would reveal that there is no action for partial rescission of contracts that can be legally performed under § 29(b), and Defendants do not attempt to argue that there is any nonfrivolous argument to support recognizing one. Thus, Defendants' argument that the counterclaim is a rescission action—which has been made in opposition to a motion for Rule 11 sanctions predicated upon the presentation of frivolous legal

arguments—is itself frivolous.[11] In any event, this argument does nothing to explain or justify the language of the counterclaim which, standing alone, and at the time of its filing, attempting to assert a private right of action under § 15(a)(1) for failure to maintain a license. *See* Fed. R. Civ. P. 11(b) (requiring a reasonable inquiry at the time of filing).

Given the substantial body of authority holding that there is no private right of action under § 15(a)(1), and the lack of any nonfrivolous argument for recognizing one, the Court finds that Defendants' counterclaim which attempts to bring a claim thereunder was frivolous, in that it was not merely incorrect, but had no chance of success. *See Bletas*, 2011 WL 13130879, at *10 (quoting *Storey*, 347 F.3d at 391); *Star Mark*, 682 F.3d at 177 (quoting *Fishoff*, 634 F.3d at 654). Moreover, Defendants' argument that the action was one for rescission or should be interpreted to be one for rescission, asserted to avoid Rule 11 sanctions, is also frivolous in that it, too, has no chance of success. *See Bletas*, 2011 WL 13130879, at *10 (quoting *Storey*, 347 F.3d at 391); *Star Mark*, 682 F.3d at 177 (quoting *Fishoff*, 634 F.3d at 654).

As such, the Court finds that it was objectively unreasonable for Defendants to bring the counterclaim for failure to maintain a license under § 15(a)(1). First, before filing the Answer, even a cursory inquiry into the relevant precedent would have revealed that there is no private right of action under § 15(a)(1) and that the counterclaim thus lacked a proper legal basis, and thus a reasonable inquiry as required by Rule 11(b) into the viability of the claim was not performed. Thereafter, Defendants were put on notice on multiple occasions, over a period of years, that there is no private right of action under § 15(a)(1) on which to base the claim, and not only failed to

---

[11] The argument that the counterclaim brings an action for partial rescission also appears to contradict the facts alleged in support of the counterclaim. The counterclaim states: "Despite applicable requirements, [Plaintiff] failed to maintain any, or at least all, professional licenses necessary to perform *the services for which Sharestates paid him fees*. [Plaintiff] therefore was not entitled to *the fees that Sharestates paid him*." Am. Answer 13 (emphasis added). This language appears to be phrased absolutely, in that it lacks any limiting phrases such as "some of" or "a portion of." The Court notes that several of the arguments presented by Defendants to demonstrate that the counterclaim is not objectively unreasonable appear to plainly contradict the language of the counterclaim as plead.

withdraw it, but instead reasserted it. For example, despite Plaintiff raising the unavailability of a private right of action under § 15(a)(1) as an affirmative defense to the counterclaim in July 2021, Defendants reasserted the counterclaim in their Amended Answer over a year later. Reply to Answer 2; Am. Answer ¶¶ 6–11. The counterclaim asserted in the Amended Answer was largely unchanged, apart from one substantive addition—the insertion of the words "and foreseeable" to the allegation that Sharestates' exposure to liability was "a direct and foreseeable result" of Plaintiff's failure to maintain allegedly required licenses. Am. Answer ¶¶ 6–11. Defendants thus not only reasserted the counterclaim after being put on notice that there is no private right of action under § 15(a)(1), but in fact added to allegations pleading damages based on exposure to liability, which could only be supported by a private right of action. Almost a year after that, Plaintiff sent the Safe Harbor Letter providing an array of precedent demonstrating that there is no private right of action under § 15(a)(1), but Defendants failed to respond to the letter and did not withdraw, amend, or clarify the claim. Defs.' Opp'n 5. Thus, the initial filing of the counterclaim, the reassertion of the counterclaim after being put on notice, and the failure to withdraw the claim were objectively unreasonable.

Having found that the counterclaim was objectively unreasonable, the Court must consider whether to award sanctions. In deciding whether to award sanctions, courts consider many factors, including whether the improper conduct was willful or negligent, whether it was part of a pattern of behavior in the litigation, whether the misconduct resulted in additional litigation expenses, whether the party reasserted claims after being put on notice that they lacked a proper legal basis, as well as whether a party failed to respond to a safe harbor notice and whether such failure necessitated the filing of a motion. *An*, 2023 WL 4931832, at *4 (quoting *Colliton*, 2008 WL 4386764, at *12, *aff'd*, 356 F. App'x 535); *id.* at *4 n.8 (quoting *Colliton*, 2008 WL 4386764, at

- 17 -

*12); *Cameau*, 2018 WL 4853050, at *2 ("Rule 11 sanctions are warranted given that Plaintiff's Counsel never responded to Defendant's safe harbor letter, and . . . was objectively unreasonable in failing to dismiss the action or amend the Complaint. Counsel's objectively unreasonable conduct required Defendant to move for summary judgment, which could have been avoided . . . ." (quoting *Fuerst*, 832 F. Supp. 2d at 220)); *Robinson*, 614 F. Supp. 3d at 75 ("[A] court should also consider whether it was objectively unreasonable for an attorney to 'reaffirm[ ]' claims and 'advocat[e] positions' after they were shown to be inaccurate." (quoting *Galin*, 753 F. App'x at 8)).

Examining these factors, the Court finds that sanctions are appropriate in this case. Defendants, despite being repeatedly put on notice that the counterclaim was frivolous, both realleged and failed to withdraw or correct the counterclaim. Moreover, the Court finds Defendants' failure to respond to the Safe Harbor Letter or withdraw the counterclaim after being notified that a Rule 11 motion would follow if they failed to do so further justifies the imposition of sanctions. The failure to amend or withdraw the claim for several years, including after having received the Rule 11 Safe Harbor Letter, increased the time and expenses expended in this litigation, when a mere cursory inquiry into whether § 15(a)(1) provides a private right of action, including via the precedent presented in Plaintiff's Safe Harbor Letter, would have revealed that the claim was not viable or justifiable.

In their memorandum, Defendants concede that counsel acknowledged receipt of the letter via email and stated that he would respond to it, but did not do so, but attempt to justify this failure. Defs.' Opp'n 5. For example, Defendants note that, after receiving Plaintiff's letter, "the parties conferred regarding a number of issues, without mention of the Rule 11 letter" and that "Plaintiff's counsel did not raise the issue, ask whether a response would be made, *or otherwise inform*

- 18 -

*Sharestates' counsel that he was making the present motion*." Defs.' Opp'n 5 (emphasis added). While Defendants acknowledge that "[i]t is not Plaintiff's responsibility to remind opposing counsel of outstanding issues," they note that "several of *Plaintiff's* prior motions might have been resolved by better communication between attorneys" prior to filing. Defs.' Opp'n 5 (emphasis added). Defendants argue that, in any event, they did not intentionally ignore the letter. Defs.' Opp'n 5.

The Court is not persuaded. As they correctly note, Defendants have an obligation to address items brought to their attention, and it is not Plaintiff's responsibility to remind Defendants to address outstanding issues. Moreover, a Rule 11 safe harbor letter, by definition, informs the recipient that a Rule 11 motion will be forthcoming if a response is not received, and the letter at issue here satisfactorily made mention of that. Thus, Defendants cannot credibly complain that Plaintiff's counsel did not "inform Sharestates' counsel that he was making the present motion." Defs.' Opp'n 5. Moreover, Plaintiff repeatedly communicated through filings, over a period of years, that the counterclaim was frivolous, including by filing an Amended Complaint in which the counterclaim is referred to as "frivolous" at least seven times. Am. Compl. 3 n.1, 22, 23–24, 28–30. Defendants responded to that Amended Complaint by reasserting the counterclaim, and thus cannot credibly complain that Plaintiff's counsel did not adequately communicate his belief that the claim was frivolous (and, by extension, sanctionable). Finally, the Court notes that, while Defendants allege that they did not intentionally fail to respond to the Safe Harbor Letter, the standard for imposing sanctions under Rule 11 is objective unreasonableness, and the failure to respond was objectively unreasonable. *See Cameau*, 2018 WL 4853050, at *2 ("Rule 11 sanctions are warranted given that Plaintiff's Counsel never responded to Defendant's safe harbor letter, and . . . was objectively unreasonable in failing to dismiss the action or amend the Complaint. Counsel's

objectively unreasonable conduct required Defendant to move for summary judgment, which could have been avoided . . . ." (quoting *Fuerst*, 832 F. Supp. 2d at 220)).

In sum, the Court finds that the Defendants' counterclaim was frivolous, and that sanctions are warranted. The Court will next address whether the counterclaim was made for an improper purpose, before examining what sanctions should be imposed.

### B.  *In Light of the Circumstances, Defendants' Counterclaim Was Made for an Improper Purpose.*

The Court also finds that, in light of the history of discovery between the parties, the counterclaim was presented for an improper purpose. For a claim to be filed with an improper purpose, it must first be found frivolous, but frivolousness alone does not give rise to an inference of improper purpose, absent something more. *Sussman*, 56 F.3d at 458–59; *Sierra Club*, 776 F.2d at 391. A pattern of behavior throughout the course of litigation, combined with a frivolous claim, can give rise to an inference of improper purpose. *See An*, 2023 WL 4931832, at *6.

In light of the history of discovery between the parties, including the eight motions to compel thus far filed by Plaintiff, the ease with which a search of the relevant legal precedent reveals the standards in question, the arguments made in opposition to this motion which are both legally frivolous and obviously contradictory to the language of the pleading, and the failure to respond to the Safe Harbor Letter, the Court finds that the action has been brought for an improper purpose under Rule 11(b)(1). *See An*, 2023 WL 4931832, at *6–7. The nature of the pleading, in light of this broader context, gives rise to this inference. *See An*, 2023 WL 4931832, at *6–7.

In so finding, the Court notes that reasserting the claim, failing to withdraw the claim, and failing to respond to the Safe Harbor Letter all "needlessly increase[d] the cost of litigation," *see* Fed. R. Civ. P. 11(b)(1) (listing purposes considered improper under Rule 11), and that Defendants have failed to provide any compelling justification for these failures. Defendants' memorandum,

perhaps intentionally, does not even attempt to clarify whether the counterclaim was intended to be an action under § 15(a)(1) or § 29(b) at the time of filing, does not explicitly state that it is presently being pursued as a rescission action, and fails to provide any nonfrivolous arguments for recognizing either a private right of action under § 15(a)(1) or partial rescission of contracts under § 29(b). More notably, the memorandum does not even attempt to allege that a reasonable inquiry into the viability of the claim was made at any point during the nearly three years it has been pursued, and specifically does not allege that Defendants performed any inquiry into whether the claim was frivolous in response to Plaintiff's repeated assertions that it was. *See E. Gluck Corp.*, 252 F.R.D. at 180–81 (examining arguments detailing reasonable inquiries that were taken by a party opposing sanctions). Finally, Defendants fail to provide any sources that may have been discovered during such inquiry which would have supported a good faith belief that the action was tenable. These arguments likely have not been made because there are no such arguments to make.

Having found that the filing was presented for an improper purpose, the Court finds that these same facts justify the imposition of sanctions. *An*, 2023 WL 4931832, at *4, *4 n.8 (quoting *Colliton*, 2008 WL 4386764, at *12); *id.* at *6–7; *Robinson*, 614 F. Supp. 3d at 75 (quoting *Galin*, 753 F. App'x at 8); *Cameau*, 2018 WL 4853050, at *2 (quoting *Fuerst*, 832 F. Supp. 2d at 220).

### C. *Defendants' Counterclaim Should Be Dismissed and Plaintiff's Should Be Awarded Reasonable Expenses and Fees.*

Having found that sanctions are warranted, the Court will now consider the sanctions that should be imposed.

Given the frivolous nature of the counterclaim and the repeated failures to conduct reasonable inquiries into the counterclaim's viability, the Court recommends that the counterclaim

be dismissed with prejudice.[12] *Abdelhamid*, 515 F. Supp. 2d at 392, 392 n.39, 400 (dismissing

frivolous action as a Rule 11 sanction). Moreover, the Court recommends that Plaintiff be awarded

expenses and attorneys' fees incurred in bringing this motion. In so recommending, the Court notes

that "[i]t is well settled that Rule 11 empowers judges with discretion to award that portion of a

defendant's attorney's fees thought reasonable to serve the sanctioning purpose of the Rule," *An*,

2023 WL 4931832, at *7 (quoting *Int'l Shipping Co., S.A. v. Hydra Offshore, Inc.*, 875 F.2d 388,

392 (2d Cir. 1989)), and that "[a]warding attorneys' fees as a sanction is particularly appropriate

for improper purpose violations." *S. Pac. Shipping Co.*, 2014 WL 6968039, at *11 (citing Fed. R.

Civ. P. 11 Advisory Committee Notes to 1993 Amendments). Moreover, an award of expenses

and fees is appropriate given Defendants' failure to respond to the Safe Harbor Letter, which

resulted in the filing of this motion and would otherwise have been unnecessary. *See Cameau*,

2018 WL 4853050, at *3 (finding failure to respond to safe harbor notice warranted award of

expenses and fees that could have been avoided); *see also An*, 2023 WL 4931832, at *6–7 (finding

award of fees appropriate for improper purpose violation in case where "even a cursory inquiry

would have shown" that the claim was meritless, and the litigation history indicated bad faith).

The Court finds that such sanctions are "[no] more severe than reasonably necessary to

deter repetition of the conduct by the offending person or comparable conduct by similarly situated

persons," and that it is warranted in light of the circumstances. *E. Gluck Corp.*, 252 F.R.D. at 179

(quoting Advisory Committee Notes).

---

[12] Even if the Court did not recommend dismissal of the claim pursuant to Rule 11, it would recommend dismissal for failure to state a claim under Rule 12(b)(6) or judgment on the pleadings under Rule 12(c). As noted, courts in this circuit routinely and perfunctorily dismiss actions under § 15(a)(1), as well as rescission actions under § 29(b) that allege only unlawful transactions pursuant to lawful contracts, citing the longstanding and copious authority holding that such actions are not available.

II.    **Because the Section 15(a)(1) Claim is Frivolous, the Court Need Not Address Plaintiff's Argument Regarding the Statute of Limitations.**

Because the Court finds that sanctions are warranted, the Court need not address Plaintiff's argument that, assuming the action were a rescission action under § 29(b), that it would nevertheless be time barred under the applicable statute of limitations. The Court notes, briefly, that it is not immediately obvious, from either the parties' briefs or existing precedent, whether the one year limitation or the three year limitation would apply, whether the applicable statute of limitations would begin when the parties entered into the contract or when the sales occurred, or whether the continuing wrong theory would apply to a contract under these circumstances. *See Williams*, 2024 WL 995568, at *10–11; *Kahn v. Kohlberg, Kravis, Roberts & Co.*, 970 F.2d 1030, 1039–42 (2d Cir. 1992). As the answer does not immediately suggest itself from a cursory review of the applicable caselaw, the Court cannot say that it is "patently clear" based upon existing precedent that this action is time barred, and Rule 11 sanctions motions are not an appropriate avenue for exploring legal questions on the merits. *E. Gluck Corp.*, 252 F.R.D. at 179 ("To establish a Rule 11(b)(2) violation, it must be 'patently clear that a claim has absolutely no chance of success . . . .'" (quoting *Park v. Seoul Broad. Sys. Co.*, No. 05 Civ. 8956, 2008 WL 619034, at *1 (S.D.N.Y. Mar.6, 2008))); *id.* at 181.

## CONCLUSION

For the reasons set forth above, this Court recommends that Plaintiff's motion to dismiss be GRANTED, that the first counterclaim be DISMISSED WITH PREJUDICE, and that Plaintiff be awarded reasonable expenses and attorneys' fees incurred in bringing this motion.

## OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and

Recommendation to file written objections. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Marcella v. Capital Dist. Physicians' Health Plan, Inc.*, 293 F.3d 42, 46 (2d Cir. 2002); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

_____
/s/
Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Central Islip, New York
           March 21, 2024