**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
STEVEN AMMANN,

                            Plaintiff,                      **MEMORANDUM AND ORDER**

    -against-                                    **21-CV-2766 (JS) (ST)**

SHARESTATES, INC. and ALLEN SHAYANFEKER,
in his capacity as Employer,

                            Defendants.
-------------------------------------------------------------------X
**TISCIONE, United States Magistrate Judge:**

Before the Court is a motion by Steven Ammann ("Plaintiff") against Sharestates, Inc. and Allen Shayanfekr ("Defendants") to recover attorneys' fees and costs as a sanction pursuant to Rule 11 of the Federal Rules of Civil Procedure. Previously, Plaintiff moved pursuant to Rule 11 to dismiss a counterclaim brought by Defendants and to recover attorneys' fees and costs incurred defending against it, on the grounds that the counterclaim was frivolous and brought for an improper purpose. On March 21, 2024, the Court issued a report and recommendation on the motion, recommending that it be granted in full and that Plaintiff be granted leave to file a formal fee application. On June 17, 2024, the report and recommendation was adopted in its entirety, and the instant motion for attorneys' fees was anticipatorily referred to this Court for decision by the Honorable Joanna Seybert.

For the reasons set forth below, Plaintiff's motion for attorneys' fees is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

The allegations that form the basis for this case were set forth in the Court's prior opinion on the Rule 11 motion for sanctions. *Ammann v. Sharestates, Inc.*, No. 21-CV-2766 (JS) (ST),

2024 WL 1956237, at *1–2 (E.D.N.Y. Mar. 21, 2024), *report and recommendation adopted*, (Order dated June 17, 2024). Nevertheless, the Court briefly summarizes the facts and sets forth the history of litigation between the parties that, ultimately, gave rise to the Rule 11 motion for sanctions upon which the instant motion for attorneys' fees is predicated. Finally, before addressing the instant motion, the Court will review its holdings and rationale in that opinion.

Plaintiff brought this action alleging breach of contract and various New York Labor Law violations, seeking to recover unpaid commissions earned pursuant to an agreement with Defendant Sharestates, and Defendant Shayanfekr, Sharestates' CEO, for introducing investors to Sharestates. *Id.* at *1, *1 n.1; Compl. ¶¶ 3, 5, 10, 13, 25–44, 131–59, ECF No. 1. Thereafter, Defendants brought a counterclaim against Plaintiff, alleging that Plaintiff failed to obtain a broker-dealer license as required under Securities Exchange Act ("SEA") § 15(a)(1), thus exposing Sharestates to potential regulatory fines and liability from customers. *Ammann*, 2024 WL 1956237, at *1, *1 n.2; Answer at 10–12, ECF No. 8. Plaintiff then filed a Reply, asserting several affirmative defenses, including that there is no private right of action under SEA § 15(a)(1) and that the action was time-barred under the statute of limitations. *Ammann*, 2024 WL 1956237, at *1; Reply at 2, ECF No. 9.

Thereafter, Plaintiff filed an Amended Complaint, inserting various allegations that Defendants' counterclaim was retaliatory and frivolous on the grounds that it attempted to advance a cause of action under SEA § 15(a)(1) despite there being no private right of action thereunder. *Ammann*, 2024 WL 1956237, at *2; Am. Compl. ¶¶ 10 n.1, 131–32, 135–42, ECF No. 47. The Amended Complaint further alleged that, even if the action were intended to be an action to rescind Plaintiff and Sharestates' contract under SEA § 29(b) which was predicated upon a violation of SEA § 15(a)(1), the action would be time-barred under the applicable statute of limitations. Am.

Compl. ¶ 135. Defendants then filed an Amended Answer which reasserted the first counterclaim and added a second counterclaim. *Ammann*, 2024 WL 1956237, at *2; Am. Answer at 12–14, ECF No. 52. The first counterclaim remained largely unchanged, but with one minor substantive addition alleging that Defendant Sharestates' injuries were foreseeable. *Ammann*, 2024 WL 1956237, at *2; Am. Answer at 12–14, ECF No. 52.

Several months later, Plaintiff sent Defendants a Rule 11 safe harbor letter, with a draft notice of motion attached, asserting that Defendants' first counterclaim was frivolous and brought for an improper purpose—namely, retaliation—and warning that, if Defendants did not withdraw the counterclaim, Plaintiff would file for Rule 11 sanctions. *Ammann*, 2024 WL 1956237, at *2; ECF No. 89-11. Two days later, Defendants' counsel acknowledged receipt of the safe harbor letter, but ultimately never responded. *Ammann*, 2024 WL 1956237, at *2; ECF No. 89-12. Plaintiff then filed an Amended Reply, again asserting, as an affirmative defense, that there is no private right of action under SEA § 15(a)(1). *Ammann*, 2024 WL 1956237, at *2; Reply to Am. Answer at 2, ECF No. 87. Finally, approximately two and a half months after sending the safe harbor letter, Plaintiff filed the Rule 11 motion for sanctions, which was referred to this Court for a report and recommendation by the Honorable Joanna Seybert. *Ammann*, 2024 WL 1956237, at *2; Mot. Sanctions, ECF No. 89.

Plaintiff's motion argued, in substantial part, that the first counterclaim attempted to assert a cause of action under SEA § 15(a)(1) for failure to obtain a broker-dealer license, but that there is no private right of action available for violations thereof. Mem. Law Supp. Mot. Sanctions at 10–11, ECF No. 89-1. Alternatively, Plaintiff argued that, even if the Court were to interpret Defendants' counterclaim as bringing an action for recission of Plaintiff's contract with Sharestates under SEA § 29(b), predicated upon a violation of SEA § 15(a)(1), the action would

still be frivolous. *Id.* at 12. To that end, Plaintiff first argued that, while actions under § 29(b) must be predicated upon a violation of the SEA, the Second Circuit has declined to address whether violations of § 15(a)(1) can serve as a predicate for such actions. *Id.* Moreover, even if § 15(a)(1) can serve as a predicate for rescission actions under § 29(b), Plaintiff argued that a § 29(b) action would still be time-barred under the applicable statute of limitations. *Id.* at 12–16. Plaintiff thus argued that the counterclaim, which Plaintiff characterized as attempting to rescind the contract and "claw back" all of the commissions Plaintiff had been paid, was frivolous in that it had no chance of success. *Id.* at 4, 10–16. Plaintiff further argued that sanctions were particularly warranted given the history of conduct throughout the course of the litigation, including Defendants' failure to withdraw the counterclaim despite Plaintiff raising multiple times that the action was frivolous and retaliatory, Defendants' failure to respond to the safe harbor letter, and a history of failures to comply with discovery which, at the time, had given rise to seven motions to compel, all of which were granted either in whole or in part. *Id.* at 1, 5, 16–19. Plaintiff's motion thus sought attorneys' fees and costs incurred in defending against the first counterclaim, and for the claim to be dismissed with prejudice. *Id.* at 19–20.

In response, Defendants did not clarify whether the counterclaim intended to assert a cause of action under SEA § 15(a)(1) for failure to obtain a broker-dealer license, or one for rescission under SEA § 29(b). Moreover, Defendants made no attempt to argue that counsel, in asserting the counterclaim, had conducted a reasonable inquiry and determined that the claim was legally tenable, nor presented any sources which might support it. Rather than asserting their intended legal basis for the claim, Defendants argued that Plaintiff conceded that the action *could* be interpreted to be an action for rescission predicated on a violation of SEA § 15(a)(1), and that Plaintiff admitted that the Second Circuit had not decided whether a rescission action could be

based on a violation of SEA § 15(a)(1). Mem. Law Opp'n Mot. Sanctions at 7–8, ECF No. 96. Then, instead of arguing that there were grounds for recognizing a private right of action for rescission based on a violation of SEA § 15(a)(1), Defendants argued in detail that there were grounds for recognizing a private right of action for rescission, a question which was not in dispute. *Id.*

Despite presenting an argument that the claim could be interpreted as an action to rescind the contract pursuant to § 29(b), Defendants also argued, at length, that the counterclaim did not attempt to rescind the entire the contract and "claw back" all of the commissions paid under it, and that Plaintiff's characterization to the contrary was wrong. *Id.* at 4–5, 5 n.1. Instead, Defendants argued that the counterclaim sought only to recover for a small fraction of the commissions paid under the contract. *Id.* Defendants further argued that Plaintiff mischaracterized the long history of discovery disputes. *Id.* at 1–2. Finally, Defendants argued that, although they did not respond to the Rule 11 safe harbor letter, Plaintiff's counsel did not remind them to do so, and did not inform them that Plaintiff was making the motion. *Id.* at 5.

On March 21, 2024, the Court issued a report and recommendation, finding that Defendants' counterclaim was frivolous and had been brought for an improper purpose, thereby recommending that sanctions be imposed in the form of dismissing the counterclaim with prejudice and awarding Plaintiff reasonable attorneys' fees and costs incurred in defending against the counterclaim. *Ammann*, 2024 WL 1956237, at *4–12. Specifically, the Court found that, while Defendants apparently attempted to characterize the counterclaim as a rescission action under SEA § 29(b), that characterization was belied by the plain language of the counterclaim. *Id.* at *6–7. Thus, the Court found that the claim attempted to assert an action for a violation of SEA § 15(a)(1).

- 5 -

*Id.* at *7. However, the Court found that there is no private right of action under that section. *Id.* at *6.

Moreover, the Court found that, even if Defendants were attempting to assert a rescission action under SEA § 29(b), such claim would also be meritless. *Id.* at *8. Specifically, the Court found that rescission actions can only be brought to rescind entire contracts, not portions of a contract, but that, according to Defendants' own argument, the action sought to recover some, but not all, of the commissions paid under the contract. *Id.* Because rescission actions require that the contract is incapable of being legally performed, and Defendants admitted that the majority of the contract could be, and was, legally performed, the Court found that the action could not be one for rescission. *Id.* Moreover, the Court found that Defendants' argument that the action sought to recover only a minority of the commissions paid under the contract was contradicted by the language of the pleading, which was phrased absolutely. *Id.* at *8 n.11.

The Court found that a cursory inquiry into relevant precedent yielded both the conclusion that there was no private right of action under SEA § 15(a)(1), and that there is no action under SEA § 29(b) for partial rescission of a contract. *Id.* at *7–9. The Court therefore found that Defendants' assertion of the first counterclaim was objectively unreasonable, and thus frivolous, in that a cursory examination of relevant precedent yielded the conclusion that it was not legally tenable. *Id.* at *9. More specifically, the Court found that Defendants had failed to present any argument that an inquiry was performed to determine if it was legally tenable, noting that Defendants had been put on notice multiple times that there was no private right of action under SEA § 15(a)(1) but, nevertheless, failed to withdraw the counterclaim, subsequently reasserted it, and further failed to respond to the safe harbor letter. *Id.* Moreover, in light of the frivolousness of the claim, the inadequacy of the arguments advanced in opposition to the motion for sanctions,

and the history of discovery in the case, including the numerous motions to compel, the Court found that the counterclaim was brought for an improper purpose. *Id.* at *11. The Court found that sanctions were thus warranted. *Id.* at *10–11. With respect to the sanctions imposed, the Court found that dismissal of the first counterclaim was warranted under the circumstances, and that Plaintiff should be awarded attorneys' fees and costs incurred in defending against the counterclaim. *Id.* at *11–12.

On June 17, 2024, the Honorable Joanna Seybert issued an Order adopting the report and recommendation in its entirety as the opinion of the Court. *See* Docket Order dated June 17, 2024. Because Plaintiff had not submitted records regarding the request for fees and costs, the District Judge granted Plaintiff leave to file a formal fee application and referred the anticipated motion to this Court for decision. *See id.* The motion was fully briefed on July 31, 2024. *See* ECF No. 135.

## LEGAL STANDARD

"If a party violates Rule 11's requirements, courts may impose a sanction against the offending party including, *inter alia*, 'an order directing payment . . . of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.'" *Offor v. Mercy Med. Ctr.*, 327 F.R.D. 32, 34 (E.D.N.Y. 2018) (Spatt, J.) (quoting Fed. R. Civ. P. 11(c)(4)). When a court decides to impose attorneys' fees and costs as a sanction under Rule 11, the award should reflect both the reasonable fees and costs attributable to the sanctioned party's misconduct and the amount needed to serve the deterrent purposes of Rule 11. *Id.* (citing *Eastway Const. Corp. v. City of New York*, 821 F.2d 121, 122-23 (2d Cir. 1987)).

The Second Circuit employs the lodestar method to determine the reasonableness of requested fees. *See Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (first citing *Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir.

2008); and then citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010)). Under this method, the "presumptively reasonable fee" is the product of a reasonable hourly rate and the reasonable number of hours expended. *Id.*; *see also Offor*, 327 F.R.D. at 34 ("The 'presumptively reasonable fee' is 'comprised of a reasonable hourly rate multiplied by a reasonable number of expended hours.'" (quoting *Finkel v. Omega Commc'n Servs., Inc.*, 543 F. Supp. 2d 156, 164 (E.D.N.Y. 2008))).

First, courts must determine the reasonable hourly rate. *Arbor Hill*, 522 F.3d at 190; *Lilly v. City of New York*, 934 F.3d 222, 230 (2d Cir. 2019). "The reasonable hourly rate is the rate a . . . client would be willing to pay." *Arbor Hill*, 522 F.3d at 190. "In determining what rate a . . . client would be willing to pay," the Second Circuit has instructed that courts should consider the factors articulated in *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). *Arbor Hill*, 522 F.3d at 190; *Lilly*, 934 F.3d at 230. The *Johnson* factors require that courts consider:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill*, 522 F.3d at 186–87 n.3 (citing *Johnson*, 488 F.2d at 717–19). In setting the reasonable hourly rate, courts "should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Id.* at 190. Finally, courts setting a reasonable hourly rate must use the "forum rule." *Id.* Under the forum rule, courts must use the "prevailing [hourly rate] in the community" to determine the hourly rate, whereby the "'community' . . . is the district where the district court sits." *Id.* (citing *Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d

23, 25 (2d Cir. 1983)). The forum rule is presumptive, and the applicable in-district rates may be deviated from if a party demonstrates that "retention of an out-of-district attorney was reasonable under the circumstances as they would be reckoned by a client paying the attorney's bill." *Id.* at 191. However, courts are not necessarily required to adhere to the forum rule in assessing the reasonable hourly rate when attorneys' fees are awarded as a Rule 11 sanction. *On Time Aviation, Inc. v. Bombardier Cap., Inc.*, 354 F. App'x 448, 452 (2d Cir. 2009); *Kyros L. P.C. v. World Wrestling Ent., Inc.*, 78 F.4th 532, 548 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 822, 218 L. Ed. 2d 31 (2024) (ruling that forum rule presumptively applies, but that "after applying the forum rule, a district court may still act within its discretion in ordering a larger award to serve the purpose of deterrence under Rule 11").

After determining the reasonable hourly rate, courts must determine the reasonable number of hours expended, before multiplying the reasonable hourly rate thereby. *Arbor Hill*, 522 F.3d at 190; *Lilly*, 934 F.3d at 230. The hours expended "must be documented by 'contemporaneously created time records that specify, for each attorney, the date, hours expended, and the nature of the work done.'" *Offor*, 327 F.R.D. at 35 (quoting *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 172 (2d Cir. 1998)). "District courts reviewing fee petitions must exclude hours that are excessive, redundant, or otherwise unnecessary, allowing only those hours that are reasonably expended." *Hernandez v. Berlin Newington Assocs., LLC*, 699 F. App'x 96, 97 (2d Cir. 2017) (quoting *Kirsch*, 148 F.3d at 172–73) (internal quotations and alterations omitted). The critical inquiry is whether, "at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992) (citation omitted).

"[In] determin[ing] the reasonableness of hours spent on a matter, '[t]he district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award' by

a reasonable percentage." *J.G. v. New York City Dep't of Educ.*, 719 F. Supp. 3d 293, 301 (S.D.N.Y. 2024) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436–37 (1983)); *see also McDonald ex rel Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006) ("A district court may exercise its discretion and use a percentage deduction as a practical means of trimming fat from a fee application." (citation and quotations omitted)). After determining the reasonable number of hours expended, the court calculates the two figures to arrive at the lodestar. *Arbor Hill*, 522 F.3d at 190; *Lilly*, 934 F.3d at 230.

While there is a strong presumption that the calculated lodestar is reasonable, the calculation is not "conclusive in all circumstances." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553–54 (2010). Rather, in rare circumstances, the court may adjust the figure when it "does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Millea*, 658 F.3d at 167 (quoting *Perdue*, 559 U.S. at 554). Ultimately, the Second Circuit has recognized that district courts have considerable discretion in determining the reasonableness of attorneys' fees. *Arbor Hill*, 522 F.3d at 190; *Lilly*, 934 F.3d at 234.

However, "[t]he amount of attorney's fees awarded under Rule 11 need not be exactly equivalent to the lodestar amount." *Manti's Transp. v. Kenner*, No. 13-CV-6546 SJF AYS, 2015 WL 1915004, at *13 (E.D.N.Y. Apr. 27, 2015) (citing *Eastway Const. Corp.*, 821 F.2d at 122–23). Rather, "[t]he purpose of a Rule 11 award 'is not compensation of the victimized party but rather the deterrence of baseless filings and the curbing of abuses.'" *On Time Aviation, Inc.*, 354 F. App'x at 452 (quoting *Caisse Nationale de Credit Agricole–CNCA, N.Y. Branch v. Valcorp, Inc.*, 28 F.3d 259, 266 (2d Cir.1994)). Thus, courts should exercise discretion "to award only that portion of a [party's] attorney's fee thought reasonable to serve the sanctioning purpose of the Rule." *Eastway Const. Corp.*, 821 F.2d at 123. This may reflect either an upward or downward deviation from the

lodestar. *Id.* at 122–23 (upholding fee award below lodestar and holding that "lodestar amount need not be routinely awarded" when assessing sanctions under Rule 11); *Kyros L. P.C.*, 78 F.4th at 548 (noting that a "district court may still act within its discretion in ordering a larger award to serve the purpose of deterrence under Rule 11"). As a result, courts awarding attorneys' fees under Rule 11 begin with the lodestar amount and then "adjust[] [it] as necessary to assure [the] deterrent objective is achieved." *S.E.C. v. Smith*, 798 F. Supp. 2d 412, 436 (N.D.N.Y. 2011), *aff'd in part*, *dismissed in part*, 710 F.3d 87 (2d Cir. 2013).

## DISCUSSION

Plaintiff moves the Court for $44,652.50[1] in attorneys' fees incurred in defending against the counterclaim, for work performed by four attorneys. Pl.'s Mem. Law Supp. Mot. Att'ys Fees ("Pl.'s Mem.") at 11, ECF No. 127. In support of this request, Plaintiff submitted declarations detailing the experience of the attorneys and invoices reflecting the fees billed to Plaintiff. Declaration of David M. Pohl ("Pohl Decl."), ECF No. 127-1; Declaration of M. Todd Parker ("Parker Decl."), ECF No. 127-2; Declaration of Andrew J. Wit ("Wit Decl."), ECF No. 127-3.

### I.    Reasonableness of Hourly Rate.

Plaintiff requests attorneys' fees for work performed by four attorneys—David Pohl, Todd Parker, Wendy Tannenbaum, and Andrew J. Wit. Pl.'s Mem. at 11. Plaintiff requests that Pohl and Parker be awarded an hourly rate of $550, that Tannenbaum be awarded an hourly rate of $400, and that Wit be awarded an hourly rate of $315. *Id.* at 3, 11.

---

[1] Plaintiff twice states that Plaintiff seeks $47,652.82 in fees, *see* Pl.'s Mem. at 1, 11, but this appears to be a typographical error whereby a 4 was replaced with a 7, and then copied and pasted into the second location. The chart that Plaintiff sets forth in the brief provides a breakdown of the hours, rates, and total fees requested for each attorney, with an overall total of $44,652.82. *See id.* at 11. However, this chart is also incorrect, in that the sum of the invoices submitted equates to $44,652.50. As this difference is de minimus, the Court has simply reduced the requested amount by the 32 cents, thus correcting the total to match the invoices submitted.

According to the affidavits submitted in support of the motion, Pohl graduated from New York University School of Law in 2005 and has more than 18 years of litigation experience, primarily in complex commercial matters. Pohl Decl. ¶¶ 3, 5–6. Pohl co-founded Parker Pohl LLP in 2017, together with Todd Parker, a 2005 graduate of St. Louis University School of Law who has over 15 years of experience in litigation, primarily in complex commercial and employment matters. *Id.* ¶ 4; Parker Decl. ¶¶ 2–3. Wendy Tannenbaum, an associate at Parker Pohl, graduated from Columbia University School of Law in 2000, and has "considerable experience" in litigating commercial matters, although Pohl's affidavit does not specifically state the number of years of experience that she has. Pohl Decl. ¶ 7.

Pohl avers that the firm represented Plaintiff from 2021 until 2024, and that, in taking on Plaintiff as a client, he and Parker agreed to a reduced rate of $550 an hour, although he does not state the rate that they typically charged in other matters. Pohl Decl. ¶ 7. Pohl avers that the firm raised their rates considerably in the years after taking Plaintiff's case, but that they continued to charge Plaintiff the same rate. *Id.* Tannenbaum worked at a rate of $400 per hour, although the submissions do not indicate that this was a reduced rate.

Andrew J. Wit graduated from Stetson University College of Law in 2020, and thereafter gained experience in complex litigation, before founding his own firm, Wit Law, PLLC, in 2022. Wit Decl. ¶¶ 3–5. He primarily handles complex business and bankruptcy litigation, and worked at a rate of $315 per hour, the rate he typically charges to other clients. *Id.* ¶ 6.

Plaintiff argues that the requested hourly rates are reasonable because this matter is a complex commercial case and the rates sought are in line with those awarded in complex commercial cases in the Eastern District. Pl.'s Mem. at 7–8. To that end, Plaintiff relies on various cases finding that courts in the Eastern District have, in complex matters, awarded between $375

to $655 per hour for partners, between $200 to $400 per hour for associates, and between $75 to $150 per hour for paralegals. *Id.* at 8 (citing, *inter alia*, *Alcon Vision, LLC v. Lens.com, Inc.*, No. 18-CV-407 (NG) (SJB), 2023 WL 8072507, at *7 (E.D.N.Y. Nov. 21, 2023) (collecting cases), *New York Ass'n for Retarded Child. v. Cuomo*, No. 72 CV 356 (RJD), 2019 WL 3288898, at *3 (E.D.N.Y. July 22, 2019) (collecting cases), and *Schwartz v. United States Drug Enf't Admin.*, No. 13CV5004CBAST, 2019 WL 1299192, at *9 (E.D.N.Y. Mar. 1, 2019), *report and recommendation adopted*, No. 13CV5004CBAST, 2019 WL 1299660 (E.D.N.Y. Mar. 21, 2019) (collecting cases)). To demonstrate that the requested fees are reasonable, Plaintiff argues that the firm charged higher rates in other matters, but that the firm agreed to work at reduced rates in this matter. *Id.* Further, Plaintiff argues that, while the firm increased their rates over the years, it did not increase its billed rates in this case. *Id.* Thus, Plaintiff argues, the requested hourly rates for the Parker Pohl attorneys are reasonable. *Id.* at 8–9. Plaintiff does not present any argument explaining why the requested hourly rates for Wit are reasonable.

In response, Defendants do not contest the reasonableness of the hourly rates sought with respect to the Parker Pohl attorneys. Defs.' Mem. Law Opp'n Pl.'s Mot. Att'ys Fees ("Defs.' Opp'n"), ECF No. 130. Instead, Defendants argue that the number of hours expended are not reasonable or are inadequately supported on several grounds, including that the billing entries are vague and contain block billing, that tasks that would have been more appropriately performed by associates or paralegals were billed at partner rates, and that the time spent on tasks was excessive. *Id.* at 1–5. Defendants do, however, challenge the reasonableness of the hourly rate billed by Wit, arguing that Wit's declaration does not detail how many years of experience he has, and that the fee application does not provide sufficient information to support that Wit's "hourly rate is reasonable or typical for an attorney of his experience in Tampa, Florida, where he practices." *Id.*

at 4. Defendants argue that the lack of support for Wit's hourly rate, combined with the issues raised with respect to the reasonableness of the hours expended, warrant a reduction of Plaintiff's requested fees by 60%. *Id.* at 5–7.

At the outset, Plaintiff brought this action alleging one claim for breach of contract, which is based upon a contract that is a mere six pages in length, and three claims alleging violations of various New York Labor Laws. *See* ECF No. 1; ECF No. 89-3. To that end, the action would not, to a casual observer, be considered "complex," such that it might warrant rates awarded in complex actions in this District, as Plaintiff argues. However, as the protracted years of litigation have well made clear, and as the Court has detailed at length in the factual background above, this action is a far cry from simple. The discovery in this action has involved the compilation, calculation, and analysis of large quantities of accounting records and data, and the issues at hand have been hotly contested by the parties at every stage of this litigation. This matter has given rise to a separate, related action, and has resulted in delays that have ensnared this action in the quicksand of years of discovery that, at times, felt seemingly without end. In its report and recommendation on the underlying Rule 11 motion for sanctions, this Court was, as far as it can tell, the first Court in this Circuit to impose sanctions for an action brought under § 15(a)(1) as being frivolous, rather than just dismissing the action in the terse, unceremonious manner which has become near-standard practice in the Southern District. *See, e.g., Hunt v. Alamo*, No. 23 CIV. 9151 (PAE), 2024 WL 532176, at *3 (S.D.N.Y. Feb. 9, 2024) ("Defendants argue that Count[] One . . . based on § 15(a)(1) of the Exchange Act . . . do[es] not state a claim, because . . . [there is no] private right of action [thereunder]. . . . Defendants are correct. . . . The Court thus dismisses Count[] One." (citations omitted)). The Court did so, in substantial part, against the backdrop of the history of litigation in this action.

The Court finds Plaintiff's requested hourly rates to be reasonable for this District. First, and most importantly, Defendants make no argument that Plaintiff's requested hourly rates are unreasonable, and this Court agrees. Namely, Plaintiff's requested hourly rates are within the appropriate ranges for complex matters as they have existed in the Eastern District for several years. *See Everetts v. Personal Touch Holding Corp.*, No. 21-CV-2061 (JMA) (ARL), 2025 WL 942800, at *5 (E.D.N.Y. Mar. 28, 2025) ("[I]n complex matters, courts [in recent cases] have awarded rates that have ranged from approximately $375 to $630 for partners, $200 to $400 for associates, and $100 to $125 for paralegals." (quoting *Alcon Vision, LLC*, 2023 WL 8072507, at *7)); *see also Aptive Env't, LLC v. Vill. of E. Rockaway, New York*, No. 19CV3365DRHSIL, 2022 WL 5434178, at *4 (E.D.N.Y. July 8, 2022), *report and recommendation adopted*, No. 19CV3365JMASIL, 2022 WL 4376618 (E.D.N.Y. Sept. 22, 2022) ("[T]here is . . . precedent within this District awarding rates as high as $600 depending upon the experience of the lawyer and complexity of the matter." (collecting cases)). As discussed above, the Court has found that the complexity of this action warrants such rates. The application of these Eastern District rates thus complies with the forum rule.[2] Moreover, at least one court in this District has recently held that the rates applicable to standard (*i.e.*, non-complex) actions require an increase to account for inflation. *Rubin v. HSBC Bank USA, NA*, --- F. Supp. 3d ---, 2025 WL 248253, at *6 (E.D.N.Y.

---

[2] The Court notes, however, that, as discussed above, courts need not strictly comply with the forum rule when awarding attorneys' fees as a sanction when departure from the rule serves the deterrent purposes of an award of sanctions. The Court further notes that this action, from the outset, should have been brought in the Southern District according to the forum selection clause in Plaintiff's consulting contract, which Defendants, as the drafters of the agreement, have failed to invoke for the four years during which this action has been ongoing. *See* ECF No. 89-3. Defendants have, at this point in the protracted litigation, plainly waived the right to enforce the forum selection clause. *Kasper Glob. Collection & Brokers, Inc. v. Glob. Cabinets & Furniture Mfrs. Inc.*, 952 F. Supp. 2d 542, 569 (S.D.N.Y. 2013). Indeed, Defendants, as the drafters of the agreement, cannot credibly claim to have been unaware of the clause's existence, and yet have litigated this action for four years and filed two counterclaims, at least one of which was based upon the language of that very contract. However, to the extent that the forum selection clause selects the Southern District, the Court notes that Defendants, in receiving notice of this action, could reasonably have anticipated, at that point, that they faced potential liability for attorneys' fees under the fee shifting provisions applicable to employment law actions, at the higher hourly rates applicable in the Southern District.

Jan. 21, 2025). Indeed, Judge Block has recently held that the prevailing rates in the Eastern District are now "$450-$650 for partners, $300-$450 for senior associates, $150-$300 for junior associates, and $100-$150 for paralegals." *Id.* Thus, the Court alternatively finds the requested rates reasonable under the rates applicable to non-complex matters.

In addition to considering the forum rule, the Court has reached its finding in light of the *Johnson* factors, including the time and labor required, the level of skill required, the attorney's customary hourly rate, the results obtained from the work performed, and the ability of the attorneys. *Arbor Hill*, 522 F.3d at 186–87 n.3 (citing *Johnson*, 488 F.2d at 717–19). To that end, the Court notes that Plaintiff prevailed on this motion despite the high burden of persuasion upon the movant in bringing a motion under Rule 11, and that Plaintiff's submissions were thorough, despite motions for sanctions being a relatively uncommon filing.

The Court thus finds that Pohl's requested hourly rate of $550, Parker's requested hourly rate of $550, and Tannenbaum's requested hourly rate of $400, are reasonable under the circumstances.

With respect to the hourly rate sought for Wit, Defendants argue that Plaintiff's fee application is inadequate in that it fails to provide information regarding whether Wit's requested rate is reasonable in Tampa, Florida, and does not indicate how many years he has practiced law. Defs.' Opp'n at 4. The Court finds unavailing Defendants' argument that Wit's declaration fails to adequately detail his experience. While Defendants are correct that Wit's declaration does not specifically state the number of years that Wit has been practicing, it states that he graduated from law school in 2020, and thereafter worked at an Am Law 200 firm, before founding his own firm in 2022, a firm which apparently still exists. Wit Decl. ¶¶ 3–6. This is sufficient to discern Wit's work experience.

Moreover, Defendants ostensibly argue that the prevailing rates for Tampa, Florida, should apply to Wit's hours, apparently presuming that such rates would be lower than Eastern District rates. *See* Defs.' Opp'n at 4. However, not only have Defendants presented no case law supporting this assumption, but Defendants have also presented no argument explaining how courts should apply the presumption in favor of the forum rule under such circumstances. Indeed, Defendants apparently presume that a failure to discuss Tampa, Florida, rates is simply grounds to decline to award any fees for the time expended by Wit. However, courts, even on fee applications that were entirely devoid of mandatory documentation under binding, Second Circuit caselaw have been "reluctant to deny [inadequate] fee applications entirely when they result from sanctions." *Alcon Vision, LLC*, 2023 WL 8072507, at *6. Indeed, when faced with a fee application that was so defective as to nearly entirely preclude judicial review, the court in *Alcon Vision, LLC v. Lens.com, Inc.*, found that "[d]enying the fee award would not serve the purposes of imposing sanctions, especially where, as here, the sanctions were for bad-faith litigation misconduct." *Id.* In any event, Wit has appeared in this action *pro hac vice* and is thus practicing in this District for purposes of this motion. It is not at all clear that the Tampa, Florida, rates should properly apply to work performed by an attorney who has filed an appearance in this District and is litigating before this Court.

For the same reasons stated above, the Court finds that an Eastern District rate of $315 is reasonable for work performed by Wit. Specifically, Wit has more than four years of experience, thus generally qualifying as a senior associate under the rate tiers applicable in this District. *See, e.g.*, *De La Cruz v. Trejo Liquors, Inc.*, No. 16CV4382 (VSB) (DF), 2019 WL 9573763, at *18 (S.D.N.Y. Sept. 10, 2019), *report and recommendation adopted*, 2020 WL 4432298 (S.D.N.Y. July 30, 2020); *Wang v. XBB, Inc.*, No. 18CV7341PKCST, 2023 WL 2614143, at *5 (E.D.N.Y.

Mar. 23, 2023), *reconsideration denied*, No. 18CV7341PKCST, 2024 WL 184263 (E.D.N.Y. Jan. 17, 2024). Under the rate schedules applicable to complex matters, and under new precedent in this District, the hourly rate requested for Wit falls reasonably within, and indeed in the lower range, of his experience level. *See Everetts v. Personal Touch Holding Corp.*, No. 21-CV-2061 (JMA) (ARL), 2025 WL 942800, at *5 (E.D.N.Y. Mar. 28, 2025); *Rubin v. HSBC Bank USA, NA*, --- F. Supp. 3d ---, 2025 WL 248253, at *6 (E.D.N.Y. Jan. 21, 2025). A consideration of the *Johnson* factors does not warrant any upward adjustment to this rate, especially given that Wit has averred that the rate requested is his customary hourly rate, a relevant factor thereunder. *Arbor Hill*, 522 F.3d at 186–87 n.3 (citing *Johnson*, 488 F.2d at 717–19).

In sum, the Court finds that Plaintiff's requested hourly rates are reasonable, and sets the rates for purposes of the lodestar calculation as follows: (1) for Pohl, an hourly rate of $550; (2) for Parker, an hourly rate of $550; (3) for Tannenbaum, an hourly rate of $400; and (4) for Wit, an hourly rate of $315.

## II.    Reasonableness of Hours Worked.

As discussed, after determining the reasonableness of the hourly rates sought, courts must determine whether the hours expended were reasonable under the circumstances, *Arbor Hill*, 522 F.3d at 190; *Lilly*, 934 F.3d at 230, by "exclud[ing] hours that are excessive, redundant, or otherwise unnecessary, [and] allowing only those hours that are reasonably expended." *Hernandez*, 699 F. App'x at 97 (quoting *Kirsch*, 148 F.3d at 172–73).

Plaintiff's fee application seeks to recover for 94.52 hours[3] incurred in defending the counterclaim and bringing the Rule 11 motion for sanctions. Pl.'s Mem. at 4, 11. Plaintiff argues

---

[3] Plaintiff's motion actually requests that 94.7 hours be awarded. Pl.'s Mem. at 4. In October 2022, Parker Pohl changed its method of time tracking from a system that utilized minutes to a system that utilized tenths of an hour, which is the reason for this discrepancy. *Id.* at 3–4 n.1. When the total time billed by all three attorneys under the minute billing system is aggregated, the number divides into 60 in a manner that produces a decimal limited to tenths.

that Defendants' counterclaim added unnecessary complexity to the action by injecting new subject matter—namely, securities law—into the action that Plaintiff otherwise was not prepared to address, given that the claims Plaintiff had asserted involved only breach of contract and employment law. *Id.* at 9. Plaintiff argues that the counterclaim required counsel to take various steps throughout the course of the litigation to defend against the action, including researching defenses, filing a Reply, filing an Amended Complaint, filing another Reply, drafting a Rule 11 safe harbor letter, and briefing a Rule 11 motion for the Court. *Id.* at 9–10. Thus, Plaintiff argues, the hours expended in defending against the counterclaim were reasonable. *Id.*

Defendants, for their part, argue that the Court should reduce the number of hours sought for purposes of the lodestar on several grounds. First, Defendants argue that several of Plaintiff's time entries are vague or were block billed. Defs.' Opp'n at 1–2. Defendants take issue with numerous time entries, including descriptions such as "[r]esearch defenses to counterclaim," "[d]raft Rule 11 motion," and "[r]esearch points for Rule 11 brief." *Id.* at 2. Defendants next argue that various tasks were performed by partners or senior associates that would have been more appropriately performed by junior attorneys or paralegals (*i.e.*, overstaffing). *Id.* at 3–4. On the other hand, with respect to the fee application prepared by Wit, Defendants argue that the filing should have been prepared by the more senior, in-state attorney who would have been more familiar with Second Circuit case law. *Id.* at 5. Finally, Defendants argue that the time spent on the Rule 11 motion and the fee application was excessive and unnecessary, in that the total number

---

However, when broken down by attorney and added to those attorneys' hours tracked under the subsequent system, the numbers for the individual attorneys do not evenly divide in a manner whereby the decimal is limited to tenths. The Court must multiply the hourly rate for each attorney by the number of hours expended to determine the lodestar, so the Court must adjust the hours expended accordingly. The 94.52 figure provided here reflects 49.83 hours for Pohl, 2.73 hours for Parker, and 29.66 hours for Tannenbaum.

of hours expended are beyond what would be considered reasonable under the circumstances. *Id.* at 4–5.

As an initial matter, Defendants cite no case law for the contention that a court should reduce an award of attorneys' fees on the ground that an out-of-state attorney, who has properly appeared *pro hac vice*, is less familiar with the Circuit's case law than an in-state attorney, and thus should not have performed work in the action, and the Court is aware of none. Indeed, courts often find that fee requests that reflect overstaffing—*i.e.*, work performed by attorneys who have more experience than is required to complete a task, and whose time thus reflects an hourly rate disproportionate to the task performed—are improper, and reduce them accordingly. *Lopez v. 1923 Sneaker, Inc.*, No. 18CV3828WFKRER, 2021 WL 1845057, at *12 (E.D.N.Y. Mar. 5, 2021), *report and recommendation adopted*, No. 18CV3828WFKRER, 2021 WL 1259623 (E.D.N.Y. Apr. 6, 2021); *Shi v. TL & CG Inc.*, No. 19-CV-08502 (SN), 2023 WL 5827598, at *7 (S.D.N.Y. Sept. 8, 2023); *Cabrera v. Schafer*, No. CV126323ADSAKT, 2017 WL 9512409, at *3 (E.D.N.Y. Feb. 17, 2017), *report and recommendation adopted*, No. 12CV6323ADSAKT, 2017 WL 1162183 (E.D.N.Y. Mar. 27, 2017); *Jones v. Pawar Bros. Corp.*, No. 17CV3018PKCSJB, 2023 WL 6214213, at *11 (E.D.N.Y. Sept. 25, 2023), *appeal withdrawn*, No. 23-7385, 2024 WL 1609743 (2d Cir. Mar. 18, 2024). In light of such case law, assigning the fee application to the most junior of Plaintiff's attorneys was a responsible billing practice, and an example of excesses.

Moreover, while Defendants have argued that the time spent preparing the fee application was excessive, the Court has reviewed Wit's highly detailed billing entries submitted with this motion and finds no merit to this contention. Indeed, if one were to speculate the time expended by Defendants in opposing this motion based on the time expenditures submitted by Plaintiff, the Court can readily conclude that it has spent substantially more time reviewing the instant motion

than the parties spent drafting the motion papers. This is not to say that counsels' submissions were in any way inadequate, but it does speak to the reasonableness of the time spent in preparing the filings. Thus, the Court finds that this does not provide a proper basis for an adjustment of the hours expended.

On the other hand, courts routinely hold that fee requests should be reduced when they reflect overstaffing, specifically when the time entries indicate that administrative or clerical tasks were performed by attorneys at full hourly rates. *Lopez*, 2021 WL 1845057, at *12 (E.D.N.Y. Mar. 5, 2021); *Shi*, 2023 WL 5827598, at *7; *Cabrera*, 2017 WL 9512409, at *3; *Jones*, 2023 WL 6214213, at *11.

The Court finds that several of the time entries reflect that tasks were performed by Pohl, a partner, that would have been more appropriately performed by a junior associate or a paralegal, including filing documents with the Court, proofreading, cite checking, organizing exhibits, creating tables of contents, and assembling and shipping courtesy copies. Pohl Decl. Ex. A; Pohl Decl. Ex. D; Pohl Decl. Ex. H; Pohl Decl. Ex. J. On reply, Plaintiff argues that "[g]ood lawyers edit, review, and proofread," and that "[n]o case says a lawyer can be 'overqualified' to do that for which he is trained and required to do." Pl.'s Reply Defs.' Mem. Law Opp'n Pl.'s Mot. Att'ys Fees ("Pl.'s Reply") at 3, ECF No. 135. Plaintiff further argues that "the presentation of exhibits is a critical part of the overall presentation – good lawyers take pride in their work to present an understandable argument with support, and there is nothing improper about a lawyer doing all aspects of the submission." *Id.* Plaintiff is correct, good lawyers do edit, review, and proofread, and there is nothing improper about a lawyer doing all aspects of a submission. Attorneys are welcome to perform such tasks, but the Supreme Court has made clear that an attorney cannot charge their regular hourly rates when performing such tasks. *Lilly*, 934 F.3d at 233 (noting that in

*Missouri v. Jenkins by Agyei*, 491 U.S. 274 (1989), the Supreme Court held that non-legal work performed by an attorney commands a lesser rate and that "[i]ts dollar value is not enhanced just because a lawyer . . . does it."). Thus, while *Missouri v. Jenkins* does not hold that a lawyer can be "overqualified" such that the lawyer cannot perform such tasks, it *does* hold that a lawyer can be "overqualified" by billing full rate for such tasks.

Plaintiff asserts that Defendants' various arguments amount to "nitpicking . . . when they are the parties responsible for the time incurred [for which] Plaintiff . . . now seeks to recover." Pl.'s Reply at 1. Plaintiff thus argues that "[a]llowing Defendants to pick and choose the attorney time spent for their own misconduct is not what Rule 11 sanctions are for and should be dismissed outright," and that Plaintiff's motion is a "simple request to be reimbursed for . . . time." *Id.* at 2. These arguments misapprehend the standard for an award of attorneys' fees as a sanction pursuant to Rule 11. Rule 11 sanctions are not intended to be compensatory, and, even though the Court may have discretion to impose an amount above the lodestar if necessary to serve the deterrent purposes of Rule 11, the Court would still need to first properly assess the lodestar before applying an upward deviation. *On Time Aviation, Inc.*, 354 F. App'x at 452 (ruling that Rule 11 is not compensatory); *Kyros L. P.C*, 78 F.4th at 548 (finding that, after determining reasonable rate, "a district court may still act within its discretion in ordering a larger award to serve the purpose of deterrence under Rule 11"); *Smith*, 798 F. Supp. 2d at 436 (ruling that courts must first determine reasonable fees under lodestar calculation before making adjustments to serve purposes of Rule 11). The Court thus finds these arguments unavailing, and finds that a reduction is warranted for tasks performed by Pohl at a partner rate, which would have been more appropriately performed at a junior associate or paralegal rate. However, rather than award junior associate or paralegal rates for the time Pohl spent performing these tasks, percentage-based reduction to the number of

hours requested is warranted. *McDonald ex rel Prendergast*, 450 F.3d at 96 ("A district court may exercise its discretion and use a percentage deduction as a practical means of trimming fat from a fee application." (citation and quotations omitted)).

Defendants next argue that the time spent on the Rule 11 motion for sanctions was excessive and unnecessary. Defs.' Opp'n at 4–5. In sum, Defendants' argument in this regard is that the requested number of hours, when viewed in the aggregate, are high. The Court finds no merit to this argument. As other courts have found, an argument that the time incurred in bringing a Rule 11 motion was excessive or unreasonable is particularly unpersuasive when the party advancing the argument could have prevented the expenditure of such time by responding to an applicable sanctions warning or other, similar circumstances. *Offor*, 327 F.R.D. at 36. Here, Defendants failed to respond to Plaintiff's safe harbor letter, thus causing Plaintiff to file the Rule 11 motion, when such work could have been avoided by reasonable diligence in simply responding to a communication that had been sent to counsel. In any event, the Court has reviewed the time entries and does not find the time expended in bringing the Rule 11 motion to be unreasonable. Indeed, the Rule 11 motion itself reflected the time expended on it—it was well-written, contained copious citations to applicable case law and the record, and advance persuasive arguments. The Court found the work product to be reasonable in its presentation, and finds the hours spent preparing it to likewise be reasonable.

However, Defendants last argue that several of the time entries with respect to the Rule 11 motion are vague and reflect block billing. The Court finds this argument, for the most part, unpersuasive. In reviewing the time entries, the Court found the descriptions to clearly reflect the tasks that were performed. While Defendant takes issue with several of the descriptions, including "[r]esearch defenses to counterclaim," "[d]raft Rule 11 motion," and "[r]esearch points for Rule

11 brief," and cites to cases in which courts found that similar descriptions were too vague, those cases are readily distinguishable. For example, *Alcon Vision*, upon which Defendants primarily rely, found that a fee application seeking $1,167,086 in attorneys' fees "for approximately 1700.6 hours of work" with was supported by only a "7-page declaration" and "no supporting documentation" which used a "single hourly rate of $740 for all of the attorneys working on [the] matter" and which did "not identify which attorneys or paralegals worked, or the number of hours that were spent, on any given task," was insufficiently vague. *Alcon Vision, LLC*, 2023 WL 8072507, at *1. The *Alcon* Court found that several of the time entries were vague and that the fee application "contain[ed] hundreds of block billed hours" including an entry of 580.9 hours for "Motions to Dismiss Lens.com's Antitrust Counterclaims" which prevented the court from determining how much time was spent on each task subsumed in that time. *Id.* at *4–5.

Such a fee application is a far cry from the fee application presently before this Court. Indeed, Defendants themselves complain that Plaintiff spent *too much* time preparing the fee application. While Defendants take issue with entries such as "[d]raft Rule 11 motion," it is not at all unclear to the Court what task was being performed during this time. The motion for sanctions was a 21-page brief, excluding tables and authorities, complete with 88 pages of exhibits, all of which addressed one topic—whether Defendants' first counterclaim asserted a valid cause of action. *See* ECF No 89. Far from an entry for 580.9 hours which refers to multiple motions to dismiss, presumably covering an array of legal issues, the motion was narrow in scope. Moreover, the Court's assessment of the reasonableness of a fee request can be properly guided by its knowledge of the case, the docket, and the filings. *Gagasoules v. MBF Leasing LLC*, 296 F.R.D. 107, 110 (E.D.N.Y. 2013) (citing *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992)). To that end, the time spent on the Rule 11 motion was apparent from the quality of the filing before the

Court. The Court is readily able to discern that an entry stating "[d]raft Rule 11 motion" is an entry for time spent drafting the Rule 11 motion the Court reviewed and ruled on.

However, although certainly not to the extent of those at issue in *Alcon*, the Court does find one time entry to be impermissibly vague. The time entry in question reads "analyze options re counterclaim," and charges for 15 minutes of time expended. Pohl Decl. Ex. A. This entry does not make clear what task was being performed, and thus is impermissibly vague. The vagueness of this entry warrants a reduction in time expended, albeit minor.

Defendants contend, however, that Plaintiff's purportedly vague time entries "also show Parker Pohl's pervasive use of block billing, in which significant amounts of time are described only with one, general description, which is additionally inappropriate." Defs.' Opp'n at 3. Defendants cite several cases for this proposition, but provide no argument regarding how the entries presented evince block billing. Notably, block billing is permissible, but the Second Circuit has held that the practice can be problematic when the time billed is aggregated into increments of five hours or more. *Raja v. Burns*, 43 F.4th 80, 87–89 (2d Cir. 2022); *see also Alcon Vision, LLC v. Lens.com, Inc.*, 2023 WL 8072507, at *4. However, the entries that Defendants identify as problematic either involve only one task, do not bill for more than five hours, or are reasonable in that the tasks described, in the aggregate, would have taken the total amount of time identified. Indeed, only four of the time entries billed for more than five hours and all four of those entries were for less than seven hours. See Pohl Decl. Ex. A; Pohl Decl. Ex. J. The Court thus finds that the entries are not block billed.

In light of the few entries found that were unreasonable under the relevant standards for hours expended, the Court finds that a five percent reduction in the number of hours sought is a reasonable adjustment. Having so found, the Court rejects Defendants' argument that a 60%

reduction is warranted to account for time entries Defendants argue are improper. Defs.' Opp'n at 5–6. The Court thus adjusts the requested hours expended, and calculates the lodestar as follows.

| Attorney | Rate | Hours | Total | 5% Reduction |
|---|---|---|---|---|
| David Pohl | $550 | 13.23 + 36.6 = **49.83** | $27,406.32 | $26,036.00 |
| Todd Parker | $550 | 0.33 + 2.4 = **2.73** | $1,501.50 | $1,426.43 |
| Wendy Tennenbaum | $400 | 28.06 + 1.6 = **29.66** | $11,864 | $11,270.80 |
| Andrew J. Wit | $315 | **12.3** | $3,874.50 | $3,680.78 |
| | | | **$44,646.32** | **$42,414.01** |

### III.    Rule 11 Considerations.

Having determined the lodestar, the Court now turns to the question of whether an upward or downward deviation from that amount is necessary in order to serve the deterrent purposes of Rule 11. *Smith*, 798 F. Supp. 2d at 436 (noting that courts must first determine the lodestar before considering whether to adjust it to serve Rule 11's objectives). In addition to arguing that a 60% across-the-board reduction to the hours sought is warranted by the entries that Defendants contend are inadequate, they further argue that such reduction is warranted on Rule 11 grounds. Defs.' Opp'n at 6–7. Specifically, Defendants contend that they do not have a pattern of asserting frivolous claims or arguments in this action and that they are not inclined to do so in the future. *Id.* In support, Defendants note that they did not object to the Court's report and recommendation on the Rule 11 motion for sanctions, in an effort to avoid continuing to assert a claim that the Court had found to be frivolous. *Id.* at 6. Defendants further argue that the conduct at issue, asserting a counterclaim, cannot be repeated at this stage of the litigation. *Id.* Defendants thus argue that they have made an effort to cease the actions that the Court found to be sanctionable, and that a deterrent purpose would not be served by the imposition of the full fee request. *Id.* at 6–7.

However, since the Court issued its report and recommendation, three more motions for sanctions or other related requests for relief have come before this Court, as well as an emergency injunction request which was filed before the District Judge. In one such request, the Court issued an Order to Show Cause, ordering Defendants to appear and show cause as to why sanctions should not issue for failure to comply with discovery orders that Defendants had, on multiple occasions, assured the Court that they were able to comply with. However, in response to the Order to Show Cause, Defendants appeared and sought modification of or relief from the discovery order on the grounds that they were unable to comply with it.

The Court held that sanctions under Rule 37(b) were not warranted, and does not revisit that holding here. However, on the underlying Rule 11 motion for sanctions giving rise to the instant fee application, the Court already held that sanctions, including an award of attorneys' fees incurred in defending against the counterclaim, were warranted. That holding was adopted in its entirety by the District Judge as the opinion of the Court. While a holding that Plaintiff is entitled to attorneys' fees as a sanction does not necessarily preclude the Court from setting the amount awarded according to Rule 11's objectives, the Court is not convinced, against this backdrop of continuing discovery disputes, that history will not continue to repeat itself.

While Defendants argue that the conduct that the Court found sanctionable—asserting a counterclaim—cannot repeat given the posture of this action, this argument overlooks the basis for the Court's holding on the Rule 11 motion. Indeed, the Court explicitly held that "the history of discovery between the parties, including the eight motions to compel thus far filed by Plaintiff," gave rise to an inference of improper purpose. *Ammann v. Sharestates, Inc.*, 2024 WL 1956237, at *11. Since that time, another motion to compel has been filed and adjudicated, as well as a Rule 37(b) motion for sanctions, which Defendants responded to by requesting that the discovery order,

which was the subject of the ninth motion to compel, be modified because Defendants contended they could not comply with it. Notably, the Court denied the ninth motion to compel because Defendants had represented that they *would* be able to comply with the order. *See* ECF No. 108. The Court's holding on the Rule 11 motion for sanctions was plainly reached against this backdrop, rather than being merely limited to the assertion of a counterclaim.

As discussed in the Court's decision on that motion, the standards governing Rule 11 specifically call for courts to examine the broader context of the litigation. *Ammann v. Sharestates, Inc.*, 2024 WL 1956237, at *11. It would not serve Rule 11's purposes to overlook the continued occurrence of issues that were directly relevant to the Court's holding that such sanctions were warranted. The Court thus finds that the deterrent purposes of Rule 11 would not be served by a percentage reduction to the lodestar as determined above, and awards the full lodestar rate of $42,414.01.[4]

## IV.    Parties Subject to Imposed Sanctions.

Finally, Defendants argue that the award of attorneys' fees should not be imposed against Defendant Shayanfekr, on the grounds that the first counterclaim was an action asserted by Defendant Sharestates, not Shayanfekr. Defs.' Opp'n at 1. A review of the Amended Answer confirms that the counterclaim was, indeed, alleged only by Sharestates. Am. Answer at 12. While Plaintiff, on reply, highlights this argument and asserts that it is relevant to another motion that, at the time, was pending before this Court, that motion has since been decided and, in any event, is not the subject of this opinion. Pl.'s Reply at 1–2. As Plaintiff advances no argument clearly opposing this request or asserting a contrary interpretation of the counterclaim, it requires no

---

[4] For the avoidance of doubt, given the contentious nature of this action, the Court reiterates that the discussion herein does not disturb the Court's holding regarding the Rule 37(b) motion for sanctions. On that motion, the Court denied Plaintiff's request for a default judgment and for dismissal of Defendants' second counterclaim, but granted Plaintiff leave to file a motion seeking an adverse inference. The Court has not ruled on that motion, as it has not yet been filed.

further discussion. A plain review of the counterclaim demonstrates that it was asserted by Defendants Sharestates, and thus the Court holds that the attorneys' fees imposed herein shall not be assessed as against Defendant Shayanfekr.

## CONCLUSION

For the reasons set forth above, Plaintiff's motion is GRANTED IN PART and DENIED IN PART, and Plaintiff is hereby awarded attorneys' fees and costs in the amount of $42,414.01.

**SO ORDERED.**

_____/s/_____
Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Central Islip, New York
       April 1, 2025