UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

STEVEN AMMANN,

Plaintiff,

— against —

SHARESTATES, INC., and ALLEN
SHAYANFEKR,

Defendants.

Case No.  2:21-cv-02766 (SJB) (ST)



RECEIVED
August 20, 2025
PRO SE OFFICE

*** Filed ***
02:36 PM, 20 Aug, 2025
U.S.D.C., Eastern District of New York

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION
## FOR LEAVE TO FILE A SECOND AMENDED AND SUPPLEMENTAL COMPLAINT

GOLENBOCK EISEMAN ASSOR BELL & PESKOE LLP

711 Third Avenue

New York, New York 10017

*Attorneys for Defendants*

5328696.1

**TABLE OF CONTENTS**

Page

BACKGROUND ................................................................................................................. 1

ARGUMENT ..................................................................................................................... 6

I.   PLAINTIFF CANNOT ESTABLISH GOOD CAUSE FOR THE
     PROPOSED COMPLAINT ........................................................................................ 6

     A.   Relevant Legal Standards ................................................................................. 6

     B.   Plaintiff Cannot Demonstrate Diligence .......................................................... 7

          1.   The Sixth Cause of Action ........................................................................ 7

          2.   The Tort Claims......................................................................................... 9

          3.   The Insurance Claims ...............................................................................11

          4.   The Thirteenth Cause of Action ............................................................... 13

          5.   The Eighteenth and Nineteenth Causes of Action ................................... 14

     C.   The Proposed Amendments Would Significantly Prejudice Defendants ........ 14

     D.   The Proposed Amendments are Futile ............................................................ 15

          1.   The Sixth Cause of Action ....................................................................... 15

          2.   The Tort Claims....................................................................................... 16

          3.   The Insurance Claims .............................................................................. 18

          4.   The Thirteenth Cause of Action ............................................................... 19

          5.   The Sixteenth Cause of Action................................................................. 20

          6.   The Nineteenth and Twentieth Causes of Action..................................... 21

          7.   The Proposed Complaint Does Not Adequately Allege This Court's Personal
               Jurisdiction Over Intercap, Chapnick or Merkur. ................................... 23

i

5328696.1

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Amalfitano v. Rosenberg,* 533 F.3d 117 (2d Cir. 2008) .................................................... 21

*Atuahene v. City of Hartford*, 10 F. App'x 33 (2d Cir. 2001)........................................... 18

*Block v. First Blood Assocs.,* 988 F.2d 344 (2d Cir.1993) ............................................... 7

*Broadway & 67th St. Corp. v. City of New York*, 100 A.D.2d 478 (1st Dep't 1984) ..................... 24

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) ................................................................ 25

*De Jesus v. Sears Roebuck & Co.,* 87 F.3d 65 (2d Cir.1996)............................................... 19

*Engel v. CBS, Inc.,* 93 N.Y.2d 195 (1999)..................................................................... 24

*Facebook, Inc. v. DLA Piper LLP*, 134 A.D.3d 610 (1st Dep't 2015) ......................................... 21

*Grochowski v. Phoenix Const.,* 318 F.3d 80 (2d Cir.2003) ................................................... 6

*Hadid v. City of New York*, 182 F. Supp. 3d 4 (E.D.N.Y. 2016)............................................... 7

*Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085 (2d Cir.1995) ............................................... 19

*Kirch v. Liberty Media Corp.,* 449 F.3d 388 (2d Cir.2006).................................................... 18

*Korova Milk Bar of White Plains, Inc. v. PRE Props., LLC*, No. 11 Civ. 3327 (ER), 2013 WL
417406 (S.D.N.Y. Feb. 4, 2013) ....................................................................... 23

*Landow v. Wachovia Sec., LLC*, 966 F. Supp. 2d 106 (E.D.N.Y. 2013) ....................................... 16

*LaRose v. Combs*, No. 24-CV-8908 (KMW), 2025 WL 1425756 (S.D.N.Y. May 16, 2025)....... 17

*McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184 (2d Cir. 2007) ............................................ 7

*New Hampshire Ins. Co. v. Total Tool Supply, Inc.*, 621 F. Supp. 2d 121 (S.D.N.Y. 2009)............ 8

*Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).......................... 18

*Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 889 F.Supp.2d 453 (S.D.N.Y. 2012) .............. 7

5328696.1

*Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129 (2d Cir. 1993) ........................................................ 8

*Ruotolo v. City of New York,* 514 F.3d 184 (2d Cir.2008) ............................................................ 7

*Sharestates v. Maddali*, 24-cv-00812 ........................................................................................ 25

*Smith v. Local 819 I.B.T. Pension Plan,* 291 F.3d 236 (2d Cir.2002) ....................................... 18

*Walden v. Fiore*, 571 U.S. 277 (2014) ....................................................................................... 25

*Werking v. Andrews*, 526 F. App'x 94 (2d Cir. 2013) .................................................................. 6

**Rules**

Fed. R. Civ. P. 8 .......................................................................................................................... 17

Fed. R. Civ. P.  9……………………………………………………………………………………19

Fed. R. Civ. P.……………………………………………………………………………...18, 19

Fed. R. Civ. P. 15 .................................................................................................... *passim*

Fed. R. Civ. P. 16 .................................................................................................... *passim*

Rule 213(8) of the New York Civil Practice Law and Rules ....................................................... 16

iii

Defendants Sharestates, Inc. ("Sharestates") and Allen Shayanfekr ("Shayanfekr" and, together with Sharestates, "Defendants"), by and through their undersigned counsel, respectfully submit this memorandum of law, and the accompanying Declaration of Michael M. Munoz (the "Munoz Decl.") in opposition to the motion (the "Motion") by Plaintiff Steven Ammann ("Plaintiff") for leave to file a second amended and supplemental complaint (the "Proposed Complaint" or the "PSAC").

## PRELIMINARY STATEMENT

Plaintiff's Proposed Complaint is his fifth assertion of a pleading across two lawsuits, all arising from the same basic allegations. Plaintiff's delay in seeking to assert eighteen new claims in this action, against approximately twenty new defendants, bars his proposed amendments both because Plaintiff knew or should have known all of the relevant factual allegations in the Proposed Complaint long ago, and because re-starting this lawsuit now, on a significantly new footing, would unduly prejudice Defendnats. Additionally, the new claims in the Proposed Complaint are either time-barred or defective, such that allowing Plaintiff to assert those clams would be futile. For the reasons set forth below, Plaintiff's Motion should be denied.

## BACKGROUND

### *This Lawsuit*

Plaintiff commenced this action in May, 2021, with the filing of his original Complaint. (Docket Entry ("DE") 1) Plaintiff was represented at that time by David Pohl of the law firm of Parker Pohl LLP. Mr. Pohl represented Plaintiff in this action for three years, until May, 2024, when he withdrew from representing Plaintiff and was replaced by a group of three new attorneys. (DE 123) Those attorneys represented Plaintiff until April, 2025, when all three withdrew from representation. (DE 152) Thereafter, Plaintiff proceeded *pro se* in this lawsuit.

5328696.1

In September, 2021, Magistrate Judge Tomlinson entered an Initial Case Management and Scheduling Order in this lawsuit, setting out a number of deadlines pertaining to this case.  (DE 16)  That Order set a deadline of November 4, 2021 "to initiate the process of joinder of additional parties and/or amendment of pleadings."  (*Id.* at 1)

On September 29, 2022, Plaintiff filed an Amended Complaint (the "FAC") with Defendants' consent.  (DE 47)  The FAC alleges that Sharestates entered into an agreement with Plaintiff under which Plaintiff provided "[s]ervices related to the generation of loan purchase agreements" and under which Sharestates would pay Plaintiff commissions on revenue Sharestates received "in connection with loan purchases executed by the investors introduced to Company" and in connection with loan sales "utilizing the warehouse line [Plaintiff] introduced" to Sharestates.  (DE 47 ¶¶ 34, 35, 38)

The FAC alleges that Sharestates' accounting of Plaintiff's commissions was rife with "inaccuracies, omissions, and errors" that resulted in the underpayment of Plaintiff's commissions and that "at worst, . . . reflected a purposeful effort to deprive Ammann of his earned commissions."  (DE 47 ¶¶ 56, 60)  The FAC alleges that Plaintiff repeatedly demanded "all information necessary to calculate the amount in earned commissions he is owed" but that Sharestates "has refused to provide" that information to Plaintiff.  (*Id.* ¶ 87)  The FAC alleges that Plaintiff has been injured by resulting underpayment of commissions, and that he is in fact entitled to commissions in an amount exceeding the commissions that he actually received from Sharestates.

The FAC further alleges that after Plaintiff commenced this lawsuit, Sharestates sold "loans to Plaintiff's investors *at a loss* and, upon doing so, have claimed that Plaintiff owes Sharestates a *negative* or *reverse* commission for these sales," and also filed a frivolous counterclaim against

2

5328696.1

Plaintiff.  (DE 47 ¶¶ 136, 139 (emphasis in original))  The FAC alleges that both acts were retaliatory, and have caused injury to Plaintiff in the form of "legal costs and delays."  (*Id*. ¶ 142)

The FAC asserts five causes of action:  one against Sharestates for breach of contract, and four against Sharestates and Shayanfekr under New York's Labor Law (alleging that both Sharestates and Shayanfekr were Plaintiff's employers).  The Labor Law claims include claims for unpaid commissions and for retaliation.  (DE 47 ¶¶ 143-181)

During the course of discovery in this lawsuit, Plaintiff's counsel took the depositions of several of Sharestates' former employees and board members, including Shayanfekr and Proposed Defendants Ray Davoodi, Chi Chan, Amy Liu, and Hari Maddali.  Discovery in this action concluded on March 8, 2024 by Order of this Court.  (DE dated February 28, 2024)  Plaintiff, represented by counsel at the time, did not object to the closing of discovery.[1]

Despite being represented by counsel until April, 2025, Plaintiff did not seek to amend the FAC until July 2, 2025, when he filed a motion for leave to amend the FAC.  (DE 176)  This Court denied that motion the next day, and directed Plaintiff to seek leave again.  (DE dated July 3, 2025).  Plaintiff served Defendants with a new motion and a copy of the Proposed Complaint on July 24, 2025.

### *Ammann II*

In September, 2024, Plaintiff commenced his second action, titled *Ammann v. Sharestates, Inc., et al.*, Case No. 24-06596 ("*Ammann II*"), also pending before this Court.  Each originally-named *Ammann II* defendant requested permission to make a motion to dismiss the original

---

[1] Throughout the Proposed Complaint, Plaintiff asserts that discovery in this action continued through 2025.  The Proposed Complaint cites no deposition taken or document produced in discovery after discovery closed in March, 2024.

3

Complaint.  On November 26, 2024, Judge Tiscione held a conference addressing those letters, resulting in an Order entered the same day (DE 33), in which Judge Tiscione stated that he:

> explained to Plaintiff that the original complaint did not contain the required specificity and particularity with respect to the alleged fraudulent actions of each Defendant, that in many instances the Defendants were simply lumped together instead of delineating with specificity which actions were taken by each Defendant, which claims were being asserted against each Defendant and what specific injury Plaintiff suffered as a result of specific actions taken by each Defendant.

On April 2, 2025, Plaintiff filed his Amended Complaint in *Ammann II*.  (DE 37)  Despite Judge Tiscione's prior verbal and written explanations to Plaintiff, the *Ammann II* Amended Complaint is rife with vague, generalized, and "lumping" allegations.  This Court previously noted that the original *Ammann II* Complaint contained "various deficiencies that Magistrate Judge Tiscione identified at a November 26, 2024 hearing," but that "given an opportunity to cure those deficiencies, [Plaintiff] filed an Amended Complaint on April 2, 2025, in which he named yet more additional defendants—close to 50, including both individuals and corporations, most of whom are not named in *Amman I*—and added a RICO claim."  (*Ammann II* DE 129 at 1)[2]

### *The Proposed Complaint*

The Proposed Complaint seeks to add eighteen causes of action to the FAC, and seeks to add approximately twenty new Proposed Defendants to this lawsuit.  The Proposed Defendants are:

- Former Sharestates employees (collectively, the "Former Employees") Amy Doshi ("Doshi"), Diane Mockler ("Mockler"), Christina Deldonna, Amy Liu ("Liu"), Nicole Joseph, Stephan Leccese and Chi Chan ("Chan");

---

[2] In the same Order, the Court stated that claims in the *Ammann II* Amended Complaint "might have been better pursued in *Ammann I*."  (*Id.* at 3)  In his Motion, Plaintiff re-characterizes the Court's statement as meaning that "claims in *Ammann II* might <u>be</u> better pursued in this action."  (Mot. at 1 (emphasis added))  Plaintiff thereby uses the Court's statement as an endorsement of Plaintiff's asserting *Ammann II* claims in this case.  The Court's actual statement, that such claims "might have been better pursued in *Ammann I*," leaves open that possibility that such claims might have been properly asserted in this action only if they had been asserted at an earlier stage of the case.

4

5328696.1

- Current and former members of Sharesates' board of directors (collectively, the "Board Members") Jason Chapnick ("Chapnick"), James Merkur ("Merkur"), Ray Davoodi, Radni Davoodi, David Sakhai, Rayman Mathoda;

- Sharestates' outside counsel in this litigation, Michael Munoz (the "Outside Counsel");

- Intercap, Inc. ("Intercap"), which is alleged to have indirectly purchased 100% of Sharestates' stock in January, 2025;

- Atlantis National Services Inc., which is alleged to be affiliated with Sharestates; and

- Markel Insurance Company ("Markel") and Fortegra Specialty Insurance Company ("Fortegra"), which are alleged to be insurers of Sharestates.

The Proposed Complaint's First through Fifth Causes of Action appear identical to the five Causes of Action asserted in the FAC. The Proposed Complaint's Sixth through Twenty-Third Causes of Action do not appear in the FAC. For the sake of brevity, the specific allegations in each new proposed Cause of Action are discussed in the Argument section, below, but in short:

The Proposed Complaint's Sixth Cause of Action is asserted against Shayanfekr, for fraudulent inducement.

The Seventh through Twelfth Causes of Action (the "Tort Claims") all allege tort claims against the Defendants and combinations of Proposed Defendants.

The Fourteenth, Fifteenth, Seventeenth, Eighteenth, and Twenty First through Twenty Third Causes of Action (the "Insurance Claims") allege that Sharestates and others failed to notify Sharestates' two alleged insurers of this lawsuit, and that those insurers are obligated to provide coverage for this lawsuit.

The Thirteenth Cause of Action is asserted under New York's Judiciary Law § 487, against Defendants' Outside Counsel.

The Sixteenth Cause of Action alleges that Intercap's recent acquisition of 100% of Sharestates' stock is a voidable transfer.

5

5328696.1

The Nineteenth and Twentieth Causes of Action are asserted against Defendants and their Outside Counsel for malicious prosecution and abuse of process.

## ARGUMENT

**I.   PLAINTIFF CANNOT ESTABLISH GOOD CAUSE FOR THE PROPOSED COMPLAINT**

### A.   Relevant Legal Standards

Federal Rule of Civil Procedure 15(a)(2) states that a "court should freely give leave" to amend a pleading "when justice so requires."  However, Plaintiff's Motion also must be assessed under FRCP 16.  FRCP 16(b)(4) states that "[a] schedule may be modified only for good cause and with the judge's consent."  "When a plaintiff seeks to amend his or her complaint after the deadline imposed by a scheduling order, the Court must balance the Rule 15(a) standard against the Rule 16(b) mandate that a scheduling order 'shall not be modified except upon a showing of good cause.'" *Grochowski v. Phoenix Const.,* 318 F.3d 80, 86 (2d Cir.2003); see also *Werking v. Andrews*, 526 F. App'x 94, 96 (2d Cir. 2013) (under Rule 16, "a party must show 'good cause' to amend his or her complaint if the motion is filed after the deadline imposed by the district court in its scheduling order").  The scheduling Order in this action sets an already-expired deadline for the amendment of pleadings.  Accordingly, Plaintiff must satisfy the "good cause" standard in order to amend the FAC.

In order to establish "good cause" to amend a complaint, the moving party "demonstrate 'diligence'" and demonstrate that "the amendment would not significantly prejudice the nonmoving party." *Id.*  To satisfy the first factor of diligence, the moving party "must show that despite its having exercised diligence, the applicable amendment's deadline could not have been reasonably met." *Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 889 F.Supp.2d 453, 457 (S.D.N.Y. 2012).

6

Under the second "good cause" factor, significant prejudice exists where "an amendment would 'require the opponent to expend significant additional resources to conduct discovery and prepare for trial' or 'significantly delay the resolution of a dispute.'" *Hadid v. City of New York*, 182 F. Supp. 3d 4, 8 (E.D.N.Y. 2016), *aff'd*, 730 F. App'x 68 (2d Cir. 2018) (citing *Ruotolo v. City of New York,* 514 F.3d 184, 192 (2d Cir.2008); *Block v. First Blood Assocs.,* 988 F.2d 344, 350 (2d Cir.1993)).

Even under FRCP 15, a "court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). Thus, delay in seeking amendments and prejudice to the non-moving party are relevant under both FRCP 15 and 16.

Finally, proposed amendments should not be permitted where those amendment fail to state a claim, akin to the "the traditional Fed. R. Civ. P. 12(b) standard." *New Hampshire Ins. Co. v. Total Tool Supply, Inc.*, 621 F. Supp. 2d 121, 124-25 (S.D.N.Y. 2009) (collecting cases). Even under FRCP 15 standards, "[w]here it appears that granting leave to amend is unlikely to be productive . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).

**B.    Plaintiff Cannot Demonstrate Diligence**

**1.    The Sixth Cause of Action**

The Proposed Complaint's Sixth Cause of Action is asserted against Shayanfekr, for fraudulent inducement, alleging that Shayanfekr induced Plaintiff to change Plaintiff's "warehouse-line commission" from 10% to 2%. (PSAC ¶ 341) The Proposed Complaint alleges that Plaintiff was induced to agree to that change by a misrepresentation occurring "[o]n or about November 7, 2018." (*Id.* ¶ 342) The identified misrepresentation is Shayanfekr's statement to Plaintiff that Sharestates had "an offer on the table" to obtain a credit facility as an alternative to

7

5328696.1

the warehouse line introduced by Plaintiff, and that if Plaintiff did not agree to reduce his commission, "we really have to consider replacing [the warehouse line] altogether with the new provider who's targeting a November 16th close." (*Id.*)  The Sixth Cause of Action alleges that those statements were false because "no such alternate warehouse-line offer existed at the time." (*Id.* ¶ 343)  It further alleges that Plaintiff relied on that alleged misrepresentation by agreeing to reduce his commission rate, and that he was injured in the form of reduced commissions.  (*Id.* ¶ 345)

Plaintiff has been aware of the allegations underlying the Sixth Cause of Action for years. Both the original Complaint, filed in 2021, and the FAC, filed in 2022, allege that in 2018, Sharestates and Shayanfekr caused a "unilateral modification" to Plaintiff's "commissions on warehouse-line sales from 10% to 2%." (DE 1 ¶ 79; DE 47 ¶ 79)  Both pleadings assert that this modification was "improper" and a "blatant breach" of Sharestates' written agreement with Plaintiff.  (DE 1 ¶ 80; 47 ¶ 80)

Plaintiff's counsel took Shayanfekr's deposition in 2023, and questioned Shayanfekr about the statements that the Sixth Cause of Action now asserts were false.  Plaintiff's counsel showed Shayanfekr the November 7, 2018 email in which Shayanfekr stated that Sharestates had "an offer on the table" to obtain a credit facility as an alternative to the warehouse line introduced by Plaintiff.  (Munoz Decl. Exh. A at 411:4-17)  Plaintiff's counsel asked Shayanfekr to identify the "new provider" described in that email and questioned Shayanfekr's ability to identify that entity. (*Id.* at 411:18-412:24)   During the deposition, Plaintiff's counsel requested documents "to substantiate that you did in fact have an offer on the table from this group." (*Id.* at 412:4-14)

Had Plaintiff's counsel believed that there was a basis to assert that the November 7, 2018 email constituted an actionable misrepresentation, Plaintiff could have sought to amend the FAC and assert a claim for that misrepresentation.  Plaintiff's counsel did not do so in the two years

8

5328696.1

following Shayanfekr's March, 2023 deposition.  Plaintiff did not do so until now.  Accordingly, Plaintiff did not exercise diligence in seeking to assert the Proposed Complaint's Sixth Cause of Action.

### 2.    The Tort Claims

The Proposed Complaint's Seventh through Twelfth Causes of Action all allege that the Defendants and various Proposed Defendants committed torts by (a) "[f]ailing to accurately track, calculate, and report Plaintiff's commissions" and "misapplying commission rates"; (b) "[f]ailing to implement or maintain adequate accounting systems, controls, or oversight to ensure accurate commission calculations"; (c) inadequately "supervising or failing to supervise financial reporting and accounting processes"; (d) "producing inaccurate commission reports and failing to correct errors; (e) "misrepresenting to the Court that Sharestates lacked loan-level data in QuickBooks"; (f) "Diverting, concealing, or misallocating" revenue "to reduce Plaintiff's commissions"; (g) "reducing Plaintiff's commissions without consideration or signed amendments"; (h) "concealing systematic manipulations" of accounting data; (i) failing to tender an insurance claims; and (j) "engaging in or approving retaliatory tactics" including "a frivolous counterclaim" and "negative commissions."  (PSAC ¶¶ 352; 364; 375; 384; 394; 403)

These Tort Claims are based on alleged facts known to Plaintiff for years.  The same accusations made in the Tort Claims already were made in the 2022 FAC and in motions filed in this lawsuit.  Just like the proposed Tort Claims, the FAC asserts that Sharestates engaged in inadequate and erroneous accounting and reporting, and alleges that "at worst" those issues "reflected a purposeful effort to deprive Ammann of his earned commissions."  (DE 47 ¶¶ 56, 60).  The FAC alleges the same retaliatory acts that are alleged in the Tort Claims. (DE 47 Fifth Cause of Action)  And Plaintiff previously alleged that Sharestates misrepresented facts to this Court

concerning "loan-level data" in Sharestates' QuickBooks account, including in Plaintiff's motion

under FRCP 37 (the "Rule 37 Motion") (DE 116 at 26-28).

The fact that the Tort Claims are based on alleged facts long known to Plaintiff is illustrated

by the Tort Claim's specific citations to documents and events from years ago, including:

- "admissions" in emails dated June 2017, September 2017, March 2018, and April and July 2019, including that one commission report should be "more accurate now" and, with respect to another report, "Sorry about that! I should have double checked those"  (PSAC ¶¶ 364, 375, 384, 394, 404);

- "admissions" attributed to Shayanfekr, including that certain issues were caused by "bugs" in the commissions reports (*id.* ¶¶ 376, 378, 385);

- lawsuits filed in 2021 and 2024 (i*d.* ¶¶ 50, 208-209, 364, 375, 404);

- complaints lodged by Plaintiff in August 2017, February 2018 and April 2019 (i*d.* ¶¶ 364, 375, 385, 404);

- spreadsheets previously produced in discovery and dated 2017 and 2019 (*id.* ¶ 394).[3]

Not only does the Proposed Complaint allege that these examples date from 2017 through

2024,  but some of these examples already were included in the FAC, meaning Plaintiff was aware

of them in 2022.  The FAC cites:

- Emails to Plaintiff in 2017 containing alleged admissions of improper accounting and reporting, in which an employee stated that one commission report should be "more accurate now" and, with respect to another report, "Sorry about that! I should have double checked those."  (DE 47 ¶ 58)

- Plaintiff's alleged identification of erroneous reporting in 2017 and 2018.  (*Id.*)

- Defendants' alleged characterization of accounting errors as "bugs in the report" and "complicated accounting."  (*Id.* ¶ 59)

The Tort Claims also allege that Proposed Defendants engaged in or approved "retaliatory

tactics" including "a frivolous counterclaim" and "negative commissions."  These allegations are

---

[3] These examples are in addition to the seven pages of the Proposed Complaint that recount alleged testimony from depositions in this case of Shayanfekr and Proposed Defendants Chan, Ray Davoodi, Liu, Maddali (and former employee Jackie Salter, who is not named as a Proposed Defendant). (PSAC ¶ 228-294)  Those latest of those depositions occurred in March, 2023.  (*Id*).

10

5328696.1

simply reiterations of the FAC's existing Fifth Cause of Action, and therefore have been known to Plaintiff for years.

Finally, the Tort Claims' allegations concerning a failure to tender insurance claims were know to Plaintiff, or should have been known, for years, for the reasons set forth in subsection (3), below.

Plaintiff therefore was aware of the alleged facts asserted in the Tort Claims throughout the course of this litigation, yet Plaintiff's counsel never sought to amend the FAC to assert those claims. Similarly, Plaintiff was aware (or should have been aware) of the Proposed Defendants against whom the Tort Claims are asserted. Plaintiff's counsel took the depositions of four of those Proposed Defendants; Sharestates produced emails and other documents identifying employees who dealt with Plaintiff's commissions; and yet Plaintiff's attorneys never sought to add any of the Board Members or Former Employees to this lawsuit. In light of those circumstances, Plaintiff did not exercise diligence in pursuing the Tort Claims, and he should not be permitted to amend the FAC by asserting the Tort Claims at this late stage.

### 3.    The Insurance Claims

The Insurance Claims fall into two subcategories. The Fourteenth, Fifteenth, Eighteenth, Twenty Second and Twenty Third Causes of Action are directed against Sharestates, the Board Defendants, Outside Counsel and Doshi (a) for fraudulently concealing the insurance policies; (b) for failing to tender claims to Markel and Fortegra; and (c) to compel the tender of claims to Markel and Fortegra. The Seventeenth and Twenty First Causes of Action are asserted against Merkel and Fortegra, seeking a judgment compelling those insurers to provide coverage with respect to Plaintiff's claims.

The Insurance Claims in the first category allege that Proposed Defendants "fail[ed] to tender a formal written claim" concerning this lawsuit to each of Markel and Fortegra, and further

11

"concealed the existence" of the insurance policies from Plaintiff.  (PSAC ¶¶ 352, 364, 375, 421, 428, 457, 504)  This alleged concealment included Sharestates' alleged omission of each policy "from multiple Rule 26 disclosures."  The Proposed Complaint further alleges concealment by asserting that "David Pohl (former counsel), Derek Kantaskas (former counsel), and Steven Ammann (pro se) all asked [Outside Counsel] for insurance policies multiple times."  (*Id.* ¶ 430)

Sharestates' Rule 26 disclosures initially were made in 2021, and Sharestates served amended Rule 26 disclosures twice in 2023 and once in March, 2024.  (Munoz Decl. ¶ 2)  Each disclosure states that "Defendants have no applicable insurance policies."  (*Id.*)  Plaintiff therefore was on notice of Sharestates' position in 2021, and Sharestates confirmed that position on three occasions, including as late as March, 2024.  The Proposed Complaint does not allege the timing of the "multiple requests" for insurance policies that each of Plaintiff's former attorneys allegedly made to Sharestates, but at least some of those requests are attributed to Mr. Pohl, who withdrew as Plaintiff's counsel in May, 2024.

Thus, based on the Proposed Complaint's allegations, Plaintiff and his counsel were on notice as early as 2021 and as late as March, 2024 that Sharestates claimed to have no insurance policies applicable to this lawsuit.  In light of that position, Plaintiff was aware (or should have been aware) that Sharestates had not tendered claims to its insurers concerning this lawsuit, given Sharestates' position that it had no insurance policies applicable to this lawsuit.  Plaintiff and his counsel also were aware sometime between 2021 and May, 2024 that Sharestates would not produce its insurance policies voluntarily in response to Plaintiff's counsel's inquiries.  Despite that knowledge, Plaintiff's former attorneys did not seek to compel the production of insurance policies, and did not seek to assert claims akin to the Insurance Claims at any time.  Neither did

12

5328696.1

Plaintiff seek to assert those claims, either in this action or in *Ammann II*, until now.  Accordingly, Plaintiff did not exercise diligence in seeking to assert the Insurance Claims.

### 4.    The Thirteenth Cause of Action

The Thirteenth Cause of Action is asserted against Outside Counsel under New York's Judiciary Law § 487, which provides that an attorney who is "guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party" can be civilly liable.  The Thirteenth Cause of action alleges the following instances of deceit or collusion:

> (a) Submitting multiple materially false Rule 26 disclosures, including four that misstated payments to Plaintiff and omitted ledgers relevant to Sharestates's counterclaim; (b) Misrepresenting in court filings and communications that Sharestates did not maintain loan-level data in QuickBooks, which was later disproved by compelled production; (c) Filing and defending a frivolous counterclaim under Section 15(a)(1) of the Securities Exchange Act, which the Court sanctioned as frivolous and retaliatory under Fed. R. Civ. P. 11; (d) Obstructing discovery, leading to nine granted motions to compel and Rule 37 sanctions for intentional delay and harm; and (e) Concealing the Markel insurance policy (Policy No. FP85312B) and the January 2025 change-of-control transaction, despite a duty to disclose under Fed. R. Civ. P. 26(a)(1)(A)(iv).

Plaintiff has long known of the facts underpinning these allegations.  First, Sharestates' Rule 26 disclosures were made between 2021 and 2023, and the allegedly false information contained in those disclosures has been known to Plaintiff since that time.  Despite being represented by counsel through April, 2025, Plaintiff never sought to hold Outside Counsel liable for allegedly false statements in those disclosures.  Second, while represented by counsel, Plaintiff asserted in his Rule 37 Motion the same allegation of misrepresentations concerning "loan-level data in Quickbooks," and therefore knew of  those misrepresentations since at least that time.  Again, Plaintiff's counsel  never attributed those misrepresentation to Outside Counsel.  Third, The "frivolous counterclaim" already was the subject of the 2022 FAC, and therefore has been known to Plaintiff since that time.  Fourth, the supposed discovery obstruction is alleged to have

13

been the subject of Plaintiff's Rule 37 Motion, which was filed in April, 2024. The alleged obstruction therefore was known to Plaintiff at least as of that date, and, again, Plaintiff's counsel never sought sanctions against Outside Counsel or otherwise attributed any alleged obstruction to Outside Counsel. Finally, as is set forth above, Plaintiff knew from 2021 through March, 2023 that Sharestates disclaimed having any insurance policies applicable to this lawsuit and knew at least as of April, 2024 that Sharestates would not produce copies of its policies to Plaintiff, and did not seek to assert any "concealment" claim until now.

### 5.    The Eighteenth and Nineteenth Causes of Action

The Proposed Complaint's Eighteenth and Nineteenth causes of Action are for abuse of process and malicious prosecution, both arising from Sharestates' filing a counterclaim against Plaintiff. That same act already is the basis for the 2022 FAC's Fifth Cause of Action, and therefore the underlying allegations have been known to Plaintiff since at least 2022.

### C.    The Proposed Amendments Would Significantly Prejudice Defendants

To establish "good cause" under FRCP 16, Plaintiff also must show that the proposed amendments do not prejudice Defendants. Prejudice is also a relevant factor under FRCP 15.

Here, the proposed amendments would unduly prejudice Defendnats. Plaintiff seeks to radically change the parameters of this lawsuit as they previously were pled by his attorneys, seeking to add eighteen new claims and twenty new defendants. If Plaintiff is permitted to proceed with the Proposed Complaint, every previously-unnamed Proposed Defendant would have the right to take full discovery on the claims against them and any defense that they may assert against those claims. The Defendants would demand discovery on the newly-asserted claims and any new defenses asserted by Defendants. Presumably, Plaintiff also would want to take discovery concerning the new Causes of Action and any defenses asserted against those claims. This case, in which Defendants are prepared to make a summary judgment motion, would for all purposes

14

5328696.1

begin again, requiring responses to the Proposed Complaint and full-blown discovery by 20-plus parties on eighteen new claims. The resulting delay plainly would cause significant prejudice to Defendants.

### D.    The Proposed Amendments are Futile

As is set forth above, and even under the more lenient Rule 15 standards, amendments should not be allowed where they would be futile. As is set forth below, the new claims in the Proposed Complaint either are time-barred or are defectively pled. While Defendants do not raise every reason that the proposed new claims are futile, and may raise additional defects if Plaintiff is allowed to proceed with any of those claims, the defects identified below show that the proposed new claims are futile.

#### 1.    The Sixth Cause of Action

The Proposed Complaint's Sixth Cause of Action, for fraudulent inducement, is time-barred. "New York law provides that an action based upon fraud, including claims of aiding and abetting and conspiracy to commit fraud, must be commenced within 'the greater of six years from the date the cause of action accrued or two years from the time the plaintiff discovered the fraud, or could with reasonable diligence have discovered it.'" *Landow v. Wachovia Sec., LLC*, 966 F. Supp. 2d 106, 126 (E.D.N.Y. 2013) (citing Rule 213(8) of the New York Civil Practice Law and Rules).

The Sixth Cause of Action alleges that the misrepresentation, Plaintiff's reliance on that misrepresentation, and Plaintiff's resulting injury occurred in 2018. The Sixth Cause of Action therefore is time-barred under New York's six-year limitations period, running from the date the alleged cause of action accrued. The Sixth Cause of Action is not saved by New York's discovery rule, providing a two-year period beginning on the date that plaintiff discovered the fraud, or could with reasonable diligence have discovered it. Plaintiff tacitly admits that he learned of the alleged

15

fraud long ago. The Proposed Complaint specifically alleges that "Plaintiff discovered the falsity only during discovery in this action (commencing May 2021, with key revelations through depositions and productions)." (PSAC ¶ 347) The last-most depositions in this case occurred in March, 2023. Plaintiff does not cite to any document produced less than two years ago that would have revealed the alleged fraud. Plaintiff gives the Court no basis to determine that the Sixth Cause of Action was known to Plaintiff only in the last two years, and the allegations that are made strongly illustrate, if not outright prove, that Plaintiff learned of the alleged fraud more than two years before he made the present Motion.

### 2.    The Tort Claims

Among other potential defects, the Seventh through Twelfth Causes of Action suffer fatally from Plaintiff's repeated practice of making "group" allegations against multiple defendants. FRCP 8 states that "[a] pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief." FRCP 8(a)(1)-(3). "Rule 8 'does not demand that a complaint be a model of clarity or exhaustively present the facts alleged,' but it does require, 'at a minimum, that a complaint give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests.'" *LaRose v. Combs*, No. 24-CV-8908 (KMW), 2025 WL 1425756, at *3 (S.D.N.Y. May 16, 2025) (quoting *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001)).

The Tort Claims are not sufficiently plead under FRCP 8. Those claims assert only that overlapping combinations of Defendants and Proposed Defendants engaged in group conduct, with no specific conduct pled in a manner that delineates between them. The Defendants and Proposed

16

Defendants named in those claims do not have fair notice of what asserted conduct is attributed to each of them.[4]

The Tort Claims also fail to allege elements such as duties owed to Plaintiff or causation with respect to individual persons.  In the analogous context of a FRCP 12 motion to dismiss, "[c]onclusory allegations or legal conclusions masquerading as facts will not suffice to defeat a motion to dismiss." *Kirch v. Liberty Media Corp.,* 449 F.3d 388, 398 (2d Cir.2006) (quoting *Smith v. Local 819 I.B.T. Pension Plan,* 291 F.3d 236, 240 (2d Cir.2002)); *see also Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) ("Although for the purposes of [a] motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation."); *De Jesus v. Sears Roebuck & Co.,* 87 F.3d 65, 70 (2d Cir.1996) (holding that a complaint consisting of merely conclusory allegations unsupported by factual assertions cannot meet the liberal requirements of Fed.R.Civ.P. 12(b)(6)); *Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085, 1092 (2d Cir.1995) ( "[C]onclusory allegations of the legal status of a defendant's acts need not be accepted as true for purposes of ruling on a motion to dismiss.").

In contravention of these pleading rules, the Tort Claims set forth only conclusory allegations concerning duties allegedly owed and harm allegedly caused by the Defendants and Proposed Defendants named in the Tort Claims.  While the Proposed Complaint alleges general job titles for certain Defendants and Proposed Defendants, and alleges that all of them had knowledge of Plaintiff's commissions, the Proposed Complaint makes no allegations establishing what duties any individual Defendant or Proposed Defendant may have owed Plaintiff.  And the

---

[4]  The only conduct specifically attributed to a Defendant or Proposed Defendant are the alleged filing of misleading declarations in this action by Doshi and Mockler.  Mockler has never filed a declaration in this action.  The Proposed Complaint's allegations concerning Doshi's declaration already were asserted by Plaintiff in his Rule 37 Motion, and therefore were known to Plaintiff well before he asserted his present Motion.

17

5328696.1

Proposed Complaint sets forth only legal conclusions with respect to causation, without tying any particular act by any individual to Plaintiff's alleged harm.

Finally, and for the same reasons, those Tort Claims sounding in fraud are not alleged with the particularity required by FRCP 9.

For all of these reasons, in addition to any other defects that may exist, assertion of the Tort Claims would be futile, and Plaintiff's request to assert those claims should be denied.

### 3.    The Insurance Claims

Each of the Proposed Complaint's Insurance Claims relies upon the contention that Markel and Fortegra's policies would actually provide coverage to Sharestates for this lawsuit. Without Defendants' taking a position on that ultimate issue, it still is the case that the Proposed Complaint fails to allege that either insurer is actually obligated to provide that coverage.

With respect to Markel, the Proposed Complaint relies on its contention that the Merckel Policy covers the services Plaintiff rendered to Sharestates as a "Lending Service," the definition of which is quoted in the Proposed Complaint as:

> any act performed ... in the course of extending ... credit or ... any transaction in the nature of a loan.  (PSAC ¶ 26)

The language omitted from that quotation renders Plaintiff unable to rely upon that provision as obligating Markel to provide coverage to Sharestates for Plaintiff's claims. The relevant omitted language is in italics as follows:

> Any act performed by an Insured *for a lending customer* that is not affiliated with the [sic] Sharestates Inc. in the course of extending or refusal to extend credit or granting or refusal to grant a loan or any transaction in the nature of a loan, including any act of restructure, termination, transfer, repossession or foreclosure.  (Munoz Decl. Exh. B)

Plaintiff's alleged role as either an employee or an independent contractor was to introduce Sharestates to investors that might purchase loans from Sharestates. Plaintiff's services plainly

18

were not performed "for a lending customer," but instead were performed for Sharestates. Even if Plaintiff were to be considered to have been providing services for the investors purchasing loans from Sharestates, those purchasing investors are not "lending customers." Plaintiff therefore cannot rely upon the Merckel policy's definition of "Lending Services" to allege that Merckel is obligated to provide coverage for Plaintiff's claims.

With respect to the Fortegra policy, the Proposed Complaint explicitly alleges the Fortegra policy covers claims "first made during the Policy Period." (PSAC ¶¶ 485, 487) The Proposed Complaint alleges that the policy's Policy Period is "March 16, 2024, to March 16, 2025." (*Id.* ¶ 485) The claims in this lawsuit all were made, at the very latest, in 2022 when Plaintiff's FAC was filed. Thus, by the Proposed Complaint's own allegations, Plaintiff's claims in this lawsuit do not fall within the Policy Period covered by the Fortegra policy.

### 4.    The Thirteenth Cause of Action

The Thirteenth Cause of Action is asserted under New York's Judiciary Law § 487. "Allegations regarding an act of deceit or intent to deceive must be stated with particularity; the claim will be dismissed if the allegations as to scienter are conclusory and factually insufficient." *Facebook, Inc. v. DLA Piper LLP*, 134 A.D.3d 610, 615 (1st Dep't 2015) (dismissing §487 claim where allegations of misconduct were conclusory and not supported by the record) (internal citations omitted). Relief under §487 is "'not lightly given' and requires a showing of 'egregious conduct or a chronic and extreme pattern of behavior' on the part of the defendant attorneys that caused damages." *Id.*; *accord Amalfitano v. Rosenberg,* 533 F.3d 117 (2d Cir. 2008), *certified question answered,* 11 N.Y.3d 728 (2008) (liability attaches only if there is deceit, which is "extreme" or "egregious").

The Thirteenth Cause of Action makes only generalized allegations without particularly alleging that Outside Counsel knew that any of the alleged deceit or collusion was actually

19

5328696.1

improper.  The Proposed Complaint does not allege any reason that Outside Counsel would know that ledger and payment information disclosed in Rule 26 disclosures was "materially false," or that characterizations about the workings of Sharestates' QuickBooks account were false, or that the Markel policy existed and was applicable to Plaintiff's claims.  The Proposed Complaint does not allege that Outside Counsel had access to or experience with Sharestates' accounting data or had any particular reason not to rely on information from Sharestates (which is alleged to have had an in-house counsel at the time) when authoring Rule 26 disclosures or communicating with the Court.  As such, the Thirteenth Cause of Action fails to state a claim under Judiciary Law § 487.

### 5.    The Sixteenth Cause of Action

The Sixteenth Cause of Action alleges that Intercap's purchase of 100% of Sharestates "equity and control" constitutes a "voidable transaction," and seeks a judgment voiding that transaction, imposing injunctive relief and imposing a receiver.  The Sixteenth Cause of Action is brought under New York's Uniform Voidable Transactions Act (also known as New York's Debtor & Creditor Law) §§ 273, 273-a, and 276.  (PSAC ¶439) The Act renders as voidable a "transfer made or obligation incurred by a debtor" under certain circumstances.  Debtor & Creditor Law § 273(a).  Here, the PSAC alleges that Sharestates is the debtor under the voidable transfer analysis.  (*See* PSAC ¶¶ 440-442)

The Proposed Complaint fails to state a claim under the Debtor & Creditor Law because it fails to allege that any asset of Sharestates was transferred to Intercap.  Instead, the Proposed Complaint explicitly alleges that in January, 2025, "Intercap Equity bought 100% of Sharestates Inc."  (PSAC ¶¶ 39, 200)  That purchase could only have been made from Sharestates' then-existing shareholders.  Later in the Proposed Complaint, Plaintiff attempts to recharacterize this transaction by alleging that "Sharestates, Inc. transferred 100% of its equity and control to Intercap."  This allegation is nonsensical.  Sharestates is alleged to be a corporation and, as with

20

5328696.1

any acquisition of a corporation's stock, Intercap only could have acquired "100%" of Sharestates' shares from then-existing shareholders, not from the corporation itself.  Equally incredible is the allegation that Intercap's equity acquisition "rendered Sharestates, Inc. insolvent or undercapitalized."  (PSAC ¶ 442)  The PSAC alleges no special circumstance under which the acquisition of shares in a company would render that company "insolvent or undercapitalized."

Even those allegations that attempt to show some transfer of Sharestates' assets or a danger of insolvency are entirely speculative.  The Proposed Complaint alleges that Intercap's acquisition of Sharestates stock will allow "redirection of profits, assets, and risks away from Plaintiff's reach." (PSAC ¶ 440)  The Proposed Complaint contains no allegation supporting this conclusion, and the assertion therefore is entirely speculative.  The Proposed Complaint also alleges that "Sharestates is on the brink of insolvency," citing a declaration by Shayanfekr dated March 20, 2025.  That declaration does not state that Sharestates is insolvent.  Instead, it states that a "[l]ack of funds means that Sharestates' outside IT resources are limited to those functions critical to Sharestates' day-to-day operations."  (DE 146 ¶ 9)

The Sixteenth Cause of Action therefore fails to state a claim under New York's Debtor & Creditor Law.

### 6.    The Nineteenth and Twentieth Causes of Action

The Twentieth Cause of Action, for abuse of process, is time-barred.  Claims for abuse of process are subject to a one-year limitation period, accruing upon the filing of the allegedly abusive pleading.  *Korova Milk Bar of White Plains, Inc. v. PRE Props., LLC*, No. 11 Civ. 3327 (ER), 2013 WL 417406, at *15 (S.D.N.Y. Feb. 4, 2013) ("since accrual of a cause of action for abuse of process need not await the termination of an action in claimant's favor, the statute of limitations expires one year from institution of the process, that is, from the complaint") (internal citations, ellipses and quotations omitted).  To the extent that Plaintiff has any cause of action for abuse of

21

5328696.1

process arising from the Counterclaim, that cause of action expired one year after the counterclaim was filed, first on June 30, 2021 and again on October 27, 2022.  (DE 8, 52)

The Nineteenth Cause of action is for malicious prosecution.  A valid claim for malicious prosecution must allege a "special injury," among other elements.  *See Engel v. CBS, Inc.,* 93 N.Y.2d 195, 201 (1999).  Special injury must be pled "with sufficient particularity as to identify and causally relate the actual losses to the allegedly tortious acts."  *Broadway & 67th St. Corp. v. City of New York*, 100 A.D.2d 478, 486 (1st Dep't 1984).

The Nineteenth Cause of Action alleges that the filing of the counterclaim caused Plaintiff to suffer damages, including increased litigation costs and harm to his reputation, and also caused emotional distress.  These vague and unsupported allegations do not plead special injury with particularity or identify and causally relate the alleged losses to the alleged act of malicious prosecution.

The Proposed Complaint does not specifically articulate the alleged reputational harm or financial losses, and does not set forth any details concerning the "lost opportunities" that Plaintiff allegedly suffered as a result of the counterclaim.  (PSAC ¶¶ 470, 472)  The Proposed Complaint contains no specific articulation of emotional distress allegedly suffered by Plaintiff, other than generally alleging that Plaintiff suffered "anxiety, depression, insomnia, and physical manifestations such as headaches and gastrointestinal issues."  (*Id.* ¶ 376)  Neither does the Proposed Complaint allege how the assertion of the counterclaim caused those alleged injuries.  For at least those reasons, the Proposed Complaint fails to state a cognizable claim for malicious prosecution.

22

5328696.1

**7.    The Proposed Complaint Does Not Adequately Allege This Court's Personal Jurisdiction Over Intercap, Chapnick or Merkur**

The Proposed Complaint fails to state a basis for personal jurisdiction over the Intercap, Chapnick or Merkur (the "Canadian Defendants"). The two individuals are alleged to be residents of Canada; and Intercap is alleged to be a Canadian entity. (PSAC ¶¶ 40)  Thus, a New York-based court cannot exercise general jurisdiction over the those Proposed Defendants. *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014). The Proposed Complaint also does not contain sufficient allegations to support specific jurisdiction over the Canadian Defendants. It alleges the Canadian Defendants are corporate affiliates or board members of other defendants engaging in New York conduct, but jurisdictional analysis "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). Service as a board member of a company accused of tortious act does not confer personal jurisdiction. *In re Parmalat Sec. Litig.*, 376 F. Supp. 2d 449, 454 (S.D.N.Y. 2005); *see also In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111, 136 (S.D.N.Y. 2021) (holding that sweeping allegations of an individual's control and supervision over a corporation were not sufficient for personal jurisdiction absent allegations of specific participation in the alleged fraud). Notably, the Proposed Complaint alleges no New York conduct by Intercap or Chapnik. For Merkur, the only New York conduct alleged is that while in Canada, he accessed a virtual feed to view hearings before Magistrate Judge Tiscione in the separate litigation titled *Sharestates v. Maddali*, 24-cv-00812; that allegation is insufficient to establish specific New York jurisdiction based on the claims asserted by Plaintiff.

**CONCLUSION**

For the foregoing reasons, the Motion should be denied in its entirety.

23

5328696.1

Dated:  New York, New York          GOLENBOCK EISEMAN ASSOR BELL &
        August 14, 2025             PESKOE LLP

                                    By: /s/ Michael M. Munoz
                                          Michael M. Munoz

                                    711 Third Avenue, 17th Floor
                                    New York, New York 10017
                                    (T) (212) 907-7300
                                          mmunoz@golenbock.com

                                    *Attorneys for Defendants*


### LOCAL RULE 7.1 CERTIFICATE

Michael M. Munoz, an attorney signing this memorandum of law, certifies pursuant to Local Rule 7.1 that the memorandum of law contains 7,271 words, inclusive of footnotes but exclusive of the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates.  In calculating the number of words, I relied upon on the word count of the word-processing program used to prepare the document.

                                              /s/ Michael M. Munoz

5328696.1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

STEVEN AMMANN,

        Plaintiff,

   — against —

SHARESTATES, INC., and ALLEN
SHAYANFEKR,
        Defendants.

Case No. 2:21-cv-02766 (SJB) (ST)

---

**DECLARATION OF MICHAEL M. MUNOZ**

MICHAEL M. MUNOZ, pursuant to 28 U.S.C. § 1746, hereby declares and says:

1.      I am a partner at the law firm of Golenbock Eiseman Assor Bell & Peskoe LLP, counsel for the Defendants in this action. I submit this Declaration in opposition to the motion by Plaintiff Steven Ammann for Leave to File Second Amended and Supplemental Complaint.

2.      Defendants served Plaintiff their initial disclosures pursuant to Federal Rule of Civil Procedure 26 in this lawsuit in 2021, and served amended Rule 26 disclosures twice in 2023 and once in March, 2024. Each disclosure states that "Defendants have no applicable insurance policies."

3.      Attached hereto as Exhibit A is a true and correct copy of the certain pages of the transcript of the deposition of Allen Shayanfekr taken in March, 2023.

4.      Attached hereto as Exhibit B is a true and correct copy of the Schedule of Professional Service Providers for an insurance policy issued by Evanston Insurance Company, doing business as Markel, to Sharestates, Inc., with the policy number FP85312B.

5332181.1

5.      I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

August 14, 2025

/s/ Michael M. Munoz

MICHAEL M. MUNOZ

5332181.1

**Page 363**

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

------------------------------------------x

STEVEN AMMANN,

                         Plaintiff,

       - against -

SHARESTATES, INC., and ALLEN SHAYANFEKR,

                         Defendants.

------------------------------------------x

                  Remote deposition

                  March 1, 2023

                  10:37 a.m.

     CONTINUED VIDEOCONFERENCE DEPOSITION of ALLEN SHAYANKEFR, before Michele Moskowitz, a shorthand reporter and Notary Public of the State of New York.

                  REF: 5784850

Page 410

SHAYANFEKR

MR. MUNOZ:  Objection to form.

A.      Compared to Kevin Shane, yes, he's had -- I don't know how many negative trades there were, but this being one of them, yeah, I believe he's had more negative trades than Kevin Shane.

Q.      Did you ever have any discussions with Jenine Fitter about how these loan sale losses would be treated on her commission report?

A.      Again, I don't recall.

Q.      Any e-mails between you and Jenine Fitter regarding how loan sale losses would be treated on her commission report?

A.      I don't recall.

Q.      Any calls or e-mails with Michael Kim about how loan sale losses would be treated on his commission report?

A.      I do not recall.

MR. POHL:  Mike, do you want to take a five-minute break?

MR. MUNOZ:  Sure.

(A brief recess was taken.)

MR. POHL:  Back on the record.

(E-mail, SH_00049498, was marked

Page 411

SHAYANFEKR

Shayanfekr Exhibit 140 for identification, as of this date.)

Q.    Mr. Shayanfekr, can you look at Exhibit 140?  This is a document produced by Sharestates in this litigation and it's Bates numbered SH_00049498.

A.    I have it open.  Just give me a minute to read that.

Q.    Yes.

A.    Okay.

Q.    The second paragraph is just one sentence, "We currently have an offer on the table from a group for a 20 million initial facility at 9 percent which can accordion to a 100 million"; do you see that?

A.    Yes.

Q.    Who was that group?

A.    I don't remember specifically.  My best guess is it was probably Intercap just based on the timing.

Q.    Well, whoever that group was would have given you a term sheet or something, correct?

A.    It may have been an e-mail, may have

**Page 412**

SHAYANFEKR

been a term sheet.  I don't remember.  This is four years ago.

Q.      Okay.  But there's some document to substantiate that you did in fact have an offer on the table from this group, right?

A.      Possibly.  We'd have to check.

Q.      Okay.  We're going to ask that you do.

MR. MUNOZ:  That's a request to me, Allen.

MR. POHL:  Yeah, Mike, like I said, I don't want to say it every time.

MR. MUNOZ:  Yup, it's fine.

Q.      Did Sharestates ever get any warehouse facility or similar facility from Intercap?

A.      I believe we did eventually -- we did eventually close a facility with Intercap, yes.

Q.      But as of the date of this e-mail, November 7, 2018, you can't say whether the group you're referring to was Intercap, right?

A.      Correct.  I don't recall.  That's just a guess based on the timing.

Q.      Mr. Ammann was paid his commissions

Page 413

SHAYANFEKR

by wire transfer; isn't that right?

    A.    I believe so.

    Q.    Isn't it true that you approved all wire transfers before they went out?

        MR. MUNOZ:  Objection to form.  You can answer.

    A.    My approvals of wires generally are signing off to our accounting team that they're okay to send the wires.  That doesn't necessarily mean that I'm reviewing the content or the basis for the underlying wire.

    Q.    So you approve the execution of a wire to accounting without reviewing the underlying basis of the wire --

        MR. MUNOZ:  Objection.

    Q.    -- at the time?

        MR. MUNOZ:  Misstates testimony.

    Q.    Help me understand what you just said.  It sounds to me like you just said that you approve wires being sent by accounting, but you don't review what the wires are for, and that can't be right, so help me understand that.

    A.    So it's not that I'm not reviewing what the wires are for, but I'm not getting into



**PROFESSIONAL LIABILITY**
POLICY NUMBER:



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SCHEDULE OF PROFESSIONAL SERVICE PROVIDERS

This endorsement modifies insurance provided under the following:

INVESTMENT ADVISER, PROFESSIONAL SERVICES AND DIRECTORS AND OFFICERS LIABILITY INSURANCE POLICY

**SCHEDULE**

| Individual Or Entity | Services |
|---|---|
| Sharestates, Inc. | **Lending Services:**<br><br>Any act performed by an **Insured** for a lending customer that is not affiliated with the Sharestates Inc. in the course of extending or refusal to extend credit or granting or refusal to grant a loan or any transaction in the nature of a loan, including any act of restructure, termination, transfer, repossession or foreclosure. |
| Sharestates, Inc. | **Loan Servicing:**<br><br>For others under a contract, the servicing of any loan, lease or extension of credit, but not including financing for investment banking, or for leveraged management buyouts.<br><br>**Loan Servicing** includes the following servicing activities: record keeping, billing and disbursements of principal or interest, receipt or payment of insurance premiums and taxes, credit reporting or statements of creditworthiness, determination of the depreciation amount of property (but not projections of or an appraisal for residual or future value of property).<br><br>**Loan Servicing** shall not include any act of restructure, termination, transfer, repossession or foreclosure, or any act arising out of the operation or control of any entity or property that the Insured acquired as security or collateral for any loan, lease or extension of credit. |

Each Individual Or Entity shown in the Schedule of this endorsement is a covered **professional service provider** for the Services described in the Schedule of this endorsement. Such Services must be **professional services**.

All other terms and conditions remain unchanged.

MPL 1231 07 17                                                    **Page 1 of 1**