UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

STEVEN AMMANN,

                                        Plaintiff,

                -against-

SHARESTATES, INC. and ALLEN
SHAYANFEKER, in his capacity as Employer,

                                        Defendant.

**MEMORANDUM & ORDER**
21-CV-2766 (SJB) (ST)

**TISCIONE, United States Magistrate Judge:**

Before this Court are a flurry of motions by Steven Ammann ("Plaintiff") against Sharestates, Inc. and Allen Shayanfekr ("Defendants") including a: motion to lift an automatic stay (ECF No. 157); motion to compel payment of sanctions and for contempt of court (ECF No. 160); motion for sanctions (ECF No. 162); motion for a hearing to finalize the Court's Rule 37 order (ECF No. 166); motion to compel the production of documents and further sanctions (ECF No. 170); motion to disqualify counsel (ECF No. 171); motion to reopen discovery (ECF No. 177); motion for reconsideration (ECF No. 180); and a motion to expedite entry of Rule 37 award (ECF No. 191). This opinion addresses all of them.

## BACKGROUND

The facts of this case were set forth in prior opinions and we presume familiarity. *See Ammann v. Sharestates*, Inc., No. 21-CV-2766 (JS) (ST), 2024 WL 1956237 (E.D.N.Y. Mar. 21, 2024), *report and recommendation adopted*, (E.D.N.Y.  June 17, 2024) and *Ammann v. Sharestates, Inc.*, No. 21-CV-2766 (JS) (ST), 2025 WL 974574 (E.D.N.Y. Apr. 1, 2025). Nevertheless, this Court offers a *brief* summary.

### I.    Factual Allegations

Sharestates is a New York real estate lender that makes money through selling loans. Amended Complaint ("Am. Compl."), ¶ 1, ECF No. 47. In 2016, Plaintiff was hired by Sharestates

-1-

to facilitate loans and connect Sharestates with investors. *Id*. ¶¶ 1-2. Plaintiff's primary form of compensation was sales commissions. *Id*. ¶¶ 1, 5. Plaintiff alleges at some point during the course of employment, Defendants attempted to unilaterally modify the contract and began withholding commission. *Id*. ¶¶ 5-7. This suit followed.

## II.    Procedural History

On May 17, 2021, Plaintiff filed a complaint alleging breach of contract and violations of New York's Labor Law. *See* Complaint, ECF No. 1.[1] On June 30, 2021, Defendants filed an answer asserting a counterclaim that Plaintiff failed to obtain a broker/dealer license under the Securities Exchange Act. *See* Answer, ¶¶ 1-9. ECF No. 8. Several months later, Plaintiff sent Defendants a safe harbor letter alerting Defendants their counterclaim was frivolous. *See* Motion for Sanctions, ECF No. 89-11. Defendants acknowledged receipt of the safe harbor letter but failed to respond. Plaintiff then filed a Rule 11 motion. *Id*.

On March 21, 2024, this Court issued a report and recommendation finding the counterclaim frivolous and recommending sanctions by dismissing the counterclaim and awarding Plaintiff attorney fees. *See* ECF No. 112. On June 17, 2024, Judge Seybert adopted the report and recommendation, directing Plaintiff to file a fee application. *See* Docket Order Dated June 17, 2024.

On June 28, 2024, Plaintiff filed the fee application, seeking $47,652.82. *See* Motion for Attorney Fees, ECF No. 127. On April 1, 2025, this Court awarded Plaintiff $42,414.01. *See* Order Dated April 1, 2025, ECF No. 149.

Between March 2022 and January 2024, Plaintiff filed nine motions to compel production of discoverable information.  *See* ECF Nos. 24, 31, 36, 53, 63, 72, 78, 90, & 105. Plaintiff won, at

---

[1] The superseding amended complaint was filed September 29, 2022. *See* Am. Compl.

least in part, eight of the nine motions. On April 29, 2024, Plaintiff moved for Rule 37 sanctions. *See* ECF Nos. 116-118. On March 21, 2025, this Court granted Plaintiff's Rule 37 motion but deferred on issuing the award amount. *See* Minute Order for Show Cause Hearing Dated March 21, 2025, ECF No. 147.

In September 2024, Plaintiff filed a subsequent complaint *pro se* against all Defendants, Defense Counsel, and several additional parties. *See Ammann v. Sharestates, et al.*, 24-cv-6586. That case was dismissed on March 17, 2026.

In January 2025 Intercap purchased Sharestates. Shayanfekr remains Sharestates' CEO.

On March 27, 2025, Plaintiff's counsel moved to withdraw on Plaintiff's request to proceed *pro se*. *See* Motion to Withdraw, ECF No. 148. On April 9, 2025, this Court granted Plaintiff's motion to withdraw, and Plaintiff has since proceeded *pro se*. *See* ECF No. 152.

## DISCUSSION

### I.    Motion to Compel Relief from Automatic Stay

On April 8, 2025, Plaintiff filed a Chapter 7 involuntary bankruptcy petition against Sharestates triggering an automatic stay of this case. *See In Re Sharestates, INC.*, 25-71372-AST. On April 10, 2025, Plaintiff filed a lift-stay motion. *See* ECF No. 157. On April 28, 2025, Judge Trust dismissed the bankruptcy petition. *See* ECF No. 163-1. The bankruptcy case was ultimately closed May 21, 2025, rendering moot Plaintiff's lift-stay motion. *See* 11 U.S.C. § 362(c)(2)(A-B). Accordingly, that motion is denied.

### II.    Motion to Compel Payment of Fees and for Contempt/Sanctions

On April 1, 2025, this Court ordered Defendants to pay Plaintiff attorney fees as a result of Rule 11 sanctions. *See* Order Dated April 1, 2025. On April 15, 2025 – a mere 14 days later – Plaintiff filed a motion to compel payment and for further sanctions. *See* ECF No. 160. On April

-3-

16, 2025, Plaintiff filed a subsequent motion informing the Court Defendants paid but maintained "that the motion remains ripe for decision and that further sanctions are warranted." *See* ECF No. 162. Plaintiff asserts further sanctions are appropriate under Rule 11 and 37(b)(2) for several reasons.

First, Plaintiff alleges Defendants paid attorney fees only after he filed a motion to compel, constituting willful non-compliance with the Court. Second, Plaintiff alleges Defense counsel made knowingly false statements during an April 8, 2025, hearing. Third, Plaintiff feels entitled to sanctions based on Defendants' "broader pattern of litigation misconduct and abuse of court process[.]" *Id*. Each argument fails.

    a. *Non-Compliance*

Plaintiff offers no evidence of Defendants' alleged non-compliance. A brief timeline of events illustrates the point. On April 1, 2025, this Court ordered Defendants pay attorney fees. Less than one week after that order, Plaintiff filed an involuntary bankruptcy petition against Sharestates triggering an automatic stay. Just two days after Plaintiff's bankruptcy filing, Plaintiff moved this Court to lift the automatic stay. Five days later, Plaintiff moved to compel payment of fees even though no decision had been made regarding the lift-stay motion. The next day, Plaintiff received payment but maintained that further sanctions were warranted. Plaintiff's sole argument for non-compliance rests on an alleged delay of payment, but Defendants paid within two weeks of this Court's order. This does not demonstrate non-compliance. Nor does it necessitate Plaintiff filing successive motions to compel. Indeed, any such delay – real or imagined – was likely due to the automatic bankruptcy stay *caused by Plaintiff*. In any event, Plaintiff's impatience does not justify further sanctions.

    b. *False Representations*

Next, there is no evidence Defense Counsel made false representations to the Court. The sole basis of the assertion is that Sharestates stated it was facing liquidity issues at one hearing but claimed it located funds to cover attorney fees at a subsequent hearing and would be paid promptly. Defense Counsel contends he never made false statements, but rather in a response to a question from this Court stated that he did not know when Sharestates would make payment due to liquidity issues. Under either parties' interpretation, Defense Counsel's statements are not sanctionable.

"Under Rule 11(c)(3) and the inherent power of the court, sanctions are appropriate where an individual has made a false statement to the court and has done so in bad faith." *S.E.C. v. Smith*, 710 F.3d 87, 97 (2d Cir. 2013). Indeed, "[b]ecause of the potency of the court's inherent power, courts must take pains to exercise restraint and discretion when wielding it. Accordingly, [the Second Circuit] has required a finding of bad faith for the imposition of sanctions under the inherent power doctrine." *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 136 (2d Cir. 1998). That bad faith requirement must be shown by "clear evidence" or "harassment or delay or for other improper purposes." *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 948 F.2d 1338, 1345 (2d Cir. 1991) (citation and quotation marks omitted). Here, there is no evidence Defense Counsel made false statements – let alone in bad faith supported by clear evidence.

c. *Litigation Misconduct*

Next, Plaintiff contends he is entitled to fees based on Defendants' "broader pattern of litigation misconduct and abuse of court process." *See* ECF No. 162. We must take a moment to note that Judge Bulsara specifically warned *Plaintiff* "that filing repeated motions, seeking the same relief, over and over again, may result in the Court imposing a filing injunction, barring him from making any additional filings." *See* Order Dated September 16, 2025. I also issued an order

barring "[e]ach side --plaintiff and each defendant-- . . . from making any additional filing in this case absent permission of the Court [because] [t]he parties have sought to overwhelm each other with repetitive, duplicative filings, a practice that has only had the effect of delaying the resolution of the matters presented. Should additional filings be made by any party in violation of this Order, the Court will strike such filings and may lead to the imposition of sanctions[.]" *See* Docket Order dated September 9, 2025.

While I recognize the contentious nature of the immediate action, this Court does not find additional sanctions are warranted at this juncture. There are insufficient grounds for Plaintiff's allegations of litigation misconduct.

Further, Plaintiff's request for a Rule 37 default judgment is misplaced. Rule 37(b)(2)(A)(vi) authorizes the court to issue a default judgment for failing to obey discovery orders. But judgment or dismissal under Rule 37 is appropriate only in the rarest of circumstances. To be sure, "[c]ertain Rule 37 remedies—dismissing a complaint or entering judgment against a defendant—are severe sanctions, but they may be appropriate in 'extreme situations,' as 'when a court finds willfulness, bad faith, or any fault on the part of the' noncompliant party." *Bobal v. Rensselaer Polytechnic Inst.,* 916 F.2d 759, 764 (2d Cir.1990) (quoting *Guggenheim Cap., LLC v. Birnbaum*, 722 F.3d 444, 450–51 (2d Cir. 2013)). Such a draconian remedy does not fit the conduct here.

Accordingly, Plaintiff's request for sanctions under ECF Nos. 160 and 162 is denied. Likewise, Plaintiff's request to compel payment is denied as moot. *See supra*.

### III.    Rule 37 Award

It is no secret that discovery issues have plagued this docket. From March 2022 through January 2024, Plaintiff filed nine motions to compel discovery. *See* ECF Nos. 24, 31, 36, 53, 63,

-6-

72, 78, 90, & 105. These motions revolved around the production of Plaintiff's payroll records, QuickBooks data, and information related to Plaintiff's sales commissions, which Defendants repeatedly failed to produce. A brief recitation is appropriate.

a)    *First Motion to Compel*

On March 7, 2022, Plaintiff filed his first motion to compel. *See* First Motion to Compel, ECF No. 24. Prior to the motion, this Court so ordered the parties' joint ESI protocol which required specific search terms and production of relevant documents. *See* ECF No. 20. Defendants failed to abide by the stipulation, and Plaintiff asserted "Defendants' document production [] contained massive duplication, filler, and useless information. Meanwhile, they [] failed to produce highly relevant materials, including summaries that the Court ordered them to produce [.]" First Motion to Compel at 3. On March 18, 2022, this Court granted the motion in part.

b)    *Second Motion to Compel*

On May 18, 2022, Plaintiff filed his second motion to compel. *See* Second Motion to Compel, ECF No. 31. Plaintiff alleged "Despite the Court twice ordering Defendants to produce much of the information that is the subject of this letter . . . Defendants have produced essentially nothing since the Court's Order two months ago." *Id*. at 1. Plaintiff continued that "Defendants have buried Plaintiff in irrelevant, meaningless documentation, while withholding the critical information relevant to his claims." *Id*. at 2. On June 2, 2022, this Court granted the motion in part.

c)    *Third Motion to Compel*

On July 21, 2022, Plaintiff filed his third motion to compel. *See* Third Motion to Compel, ECF No. 36. That motion "concern[ed], in large part, information the Court has Ordered Defendants to produce three times already. . . . When they [did] on occasion finally produce Court-Ordered summaries, the data [was] so riddled with errors as to suggest a near-total lack of care or

concern. Simply put, Defendants have shown a remarkable disregard for the judicial process." *Id*. at 1. On August 2, 2022, this Court granted Plaintiff's motion in part. Defendants were "ordered to produce all source data necessary to accurately calculate Plaintiff's commissions[,]" and Plaintiff was directed to "file a motion for fees and expenses pursuant to Rule 37(a)(5)." *See* ECF No 39. Plaintiff filed his fee request on August 31, 2022, but before the Court could rule, further discovery complications arose.

d)      *Fourth Motion to Compel*

On November 21, 2022, Plaintiff filed his fourth motion to compel. *See* Fourth Motion to Compel, ECF No. 53. That motion concerned Defendants' refusal to produce the names of brokers as well as myriad discovery failures. On December 5, 2022, this Court granted the motion in full. *See* ECF No. 56. This Court also set a discovery deadline of February 10, 2023. Unsurprisingly, discovery remained outstanding at the deadline for close of discovery.

e)      *Fifth Motion to Compel*

On February 21, 2023, Plaintiff filed his fifth motion to compel. *See* Fifth Motion to Compel, ECF No. 63. There, Plaintiff alleged Sharestates continued to earn fees based on loans he sold to investors. Plaintiff argued this entitled him to additional commission and requested updated discovery for new earnings. On March 1, 2023, this Court granted Plaintiff's motion and ordered Defendants to "produce regular updates every 30 days to the spreadsheets with information about all types of fees earned by Sharestates on loans sold to Plaintiff's investors and/or the warehouse line he produced." *See* ECF No. 67. The order also directed Plaintiff to file a supplemental Rule 37 motion. Plaintiff filed the supplemental motion on March 15, 2023. *See* ECF No. 71.

f)      *Sixth Motion to Compel*

A week later, Plaintiff filed his sixth motion to compel. *See* Sixth Motion to Compel, ECF No. 72. There, Plaintiff alleged recent depositions revealed Defendants misrepresented the nature of their QuickBooks data to conceal information. On April 11, 2023, this Court granted Plaintiff's motion and directed Defendants to: (1) search for and produce all seven categories of documents listed in Plaintiff's March 22, 2023 letter motion; (2) produce all QuickBooks files from April 2016 through the date of the order; (3) produce all materials required by the Court's February 28, 2023 order; and (4) produce updated monthly spreadsheets as required by the Court's February 28, 2023 order. *See* ECF No 76.

g)    *Seventh Motion to Compel*

On April 24, 2023, less than a month after the Court's ruling on the sixth motion to compel, Plaintiff filed their seventh motion to compel. *See* Seventh Motion to Compel, ECF No. 78. There Plaintiff alleged that Defendants failed to follow prior discovery orders, sought compliance and leave to move for contempt. On May 9, 2023, this Court granted Plaintiff's motion in part, denying only the request to hold Defendants in contempt. *See* ECF No. 80.

h)    *Eighth Motion to Compel*

On September 5, 2023, Plaintiff filed his eighth motion to compel, alleging Defendants failed to produce QuickBooks data in an accessible format. *See* Eighth Motion to Compel, ECF No. 90. Specifically, Plaintiff asserted: (1) Defendants produced files that were password protected but failed to provide the password; (2) Defendants produced files in a non-compatible format, forcing Plaintiff to buy a laptop and software to view; and (3) when Plaintiff was able to access the files, Defendants restricted access. On September 15, 2023, this Court granted Plaintiff's eighth motion to compel. *See* ECF No. 94.

i)    *Ninth Motion to Compel*

On January 17, 2024, Plaintiff filed his ninth motion to compel which can be summarized as a request for compliance with prior orders and discovery requests. *See* Ninth Motion to Compel, ECF No. 105. On January 29, 2024, the motion was denied as moot. *See* ECF No 108.

The Court further ordered the Parties to prepare a declaration addressing outstanding discovery. The Court also granted Defendants additional time to compile and correct monthly commission reports. Defendants agreed to amend their Rule 26 disclosures regarding counterclaim damages. Defendants also agreed to check and confirm that Plaintiff was in possession of all SEC filings relevant to the case. A subsequent conference was scheduled for February 15, 2024.

At the February 15, 2024, conference, the Court ordered Defendants to "produce the sworn declaration regarding REO and asset management fees and corrected versions of all past-due monthly commission reports." A subsequent conference was scheduled for February 26, 2024, to confirm that discovery was complete. *See* ECF No. 109.

At the February 26, 2024, conference, this Court ordered Defendants to "produce corrected monthly reports no later than March 8, 2024, and [] continue to produce such reports every month until trial. If Defendants fail to produce the corrected reports by March 8, 2024, Plaintiff may file a motion seeking an adverse inference." *See* ECF No. 110.

In sum, while the ninth motion to compel was denied as moot, it yielded discoverable information and moved the case forward.

### Plaintiff's Renewed Rule 37 Motion

On April 29, 2024, Plaintiff filed his renewed Rule 37 motion. *See* Rule 37 Motion ("Mot. 37"), ECF Nos. 116-118. On March 21, 2025, this Court granted Plaintiff's motion but deferred issuing the award. *See* Docket Order Dated March 21, 2025. Since that time, Plaintiff has twice

moved to either expedite the Court's entry of fees or hold a hearing. *See* ECF Nos. 166 & 191. Those motions are denied. The Court will now issue the Rule 37 award.

Justification for Rule 37 attorney fees derives from the notion that parties should be compensated for unnecessary work expended as a result of an opposing party's discovery failures. *See Am. Empire Surplus Lines Ins. Co. v. JJSL Dev., Inc.*, 2017 WL 9485713, at *3 (E.D.N.Y. Feb. 13, 2017), (holding Rule 37 sanctions appropriate where opposing party "forced to litigate the missing discovery in this action for an extended period with multiple filings."). As with any imposition of attorney fees, "sanctions under Rule 37 lies within the broad discretion of the district court." *Ganci v. U.S. Limousine Serv., Ltd.*, 2012 WL 13109965, at *3 (E.D.N.Y. Sept. 28, 2012) (citing *Corporation of Lloyd's v. Lloyd's U.S.,* 831 F.2d 33, 36 (2d Cir. 1987).

"As with the award of statutory attorneys' fees to a party that prevails on the merits, an award of fees as a sanction for discovery abuse begins with a lodestar analysis." *Rahman v. The Smith & Wollensky Rest. Grp., Inc.*, 2008 WL 1899938, at *2 (S.D.N.Y. Apr. 29, 2008). Calculating the lodestar figure requires multiplying the number of hours reasonably worked by the appropriate hourly rate for each attorney. *See Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983). In making such determination, the court may consider "the difficulty of the questions involved, the skill required to handle the problem, the time and labor required, the lawyer's experience, ability and reputation, the customary fee charged by the Bar for similar services, and the amount involved." *Cardwell v. Davis Polk & Wardwell LLP*, 2021 WL 2650371, at *3 (S.D.N.Y. June 28, 2021) (citation omitted) (cleaned up). Indeed, "product of a reasonable hourly rate and the reasonable number of hours required by the case[,] creates a 'presumptively reasonable fee.' " *Millea v. Metro–N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill*, 522 F.3d at 183).

A.  Hourly Rate

-11-

First, we must determine whether the hourly rates requested are consistent with similar cases in the Eastern District of New York. Here, Plaintiff requests a total of $239,926.73 in fees. *See* Final Fee Calculation, ECF No. 118-40. In doing so, Plaintiff requests $550 an hour for partners Davil Pohl and M. Todd Parker, and $400 an hour for associate Wendy Tannenbaum. The Second Circuit has established a list of twelve non-exhaustive factors when determining a reasonable hourly rate:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 187 (2d Cir. 2008). Here, Plaintiff's Counsel demonstrates considerable experience to justify the requested rate.

M. Todd Parker graduated from St. Louis University Law School in 2005. Parker Declaration ("Parker Decl."), ECF No. 116-2. He worked for two years as a Staff Attorney in the Eighth Circuit Court of Appeals and clerked for one year with Judge Nicholas G. Garaufis in this District. *Id*. ¶ 2. Mr. Parker has litigated in New York for 14 years and has handled hundreds of cases, including complex commercial and employment matters. *Id*. ¶ 3.

David Pohl graduated from New York University School of Law in 2005. Mot. 37 at 48. Upon graduation, Mr. Pohl worked at a firm for two years, then clerked for one year with Judge Nina Gershon in this District. *Id*. Mr. Pohl has 18 years of litigation experience in New York and has handled hundreds of cases, including complex commercial and employment matters. *Id*.

Wendy Tannenbaum graduated from Columbia Law School in 2000. *Id*. at 49. Ms. Tannenbaum has experience as an associate at large law firms prior to joining Parker Pohl LLP in 2019 and has ample litigation experience. *Id*.

Collectively, Plaintiff's Counsel displays considerable litigation experience.  Moreover, Plaintiff's request is consistent with similar cases in the Eastern District. *See New York Ass'n for Retarded Child. v. Cuomo*, 2019 WL 3288898 at *3 ("fees in complex cases in the Eastern District have ranged between $400-$600 per hour for partners, $200-$400 per hour for associates and $75-100 per hour for paralegals."); *Nat'l Env't Safety Co., Inc. v. Katz*, 2019 WL 1994049, at *2 (E.D.N.Y. May 6, 2019) ($500-$600 an hour for partners and $300 an hour for associates in breach of contract case); *McLaughlin v. IDT Energy*, 2018 WL 3642627, at *16 (E.D.N.Y. July 30, 2018) (holding $550 an hour for partners and $400 for associates).

Accordingly, Plaintiff's hourly rates are appropriate – $550 an hour for partners Davil Pohl and M. Todd Parker, and $400 an hour for associate Wendy Tannenbaum.

B.  <u>Hours Expended</u>

Second, we must determine whether the hours requested are reasonable. Attorney fees requests "should specify, for each attorney, the date, the hours expended, and the nature of the work done." *New York State Ass'n for Retarded Child. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). "[I]n the Second Circuit, motions for attorney's fees must be based on contemporaneous time records specifying relevant dates, time spent and work done." *Broad. Music, Inc. v. R Bar of Manhattan, Inc.*, 919 F. Supp. 656, 661 (S.D.N.Y. 1996) (emphasis added).

As a guiding principle, Plaintiff is entitled to reasonable fees and costs associated with successful motions to compel, as well as additional work that was necessitated by Defendants

repeated discover violations. Plaintiff is not entitled to fees associated with routine casework that would have taken place absent discovery violations.

Although mostly successful, Plaintiff achieved a mixed result through discovery motions. Specifically, Plaintiff's first, second, third, and seventh motions to compel were granted in part; Plaintiff's fourth, fifth, sixth, and eighth motions to compel were granted in full; and Plaintiff's ninth motion to compel was denied. It should be noted, however, that even where Plaintiff's motions were only granted in part, they received discoverable information Defendants had failed to produce.

Relevant here, Rule 37(a)(5)(A) controls where a motion to compel is granted in full, and the court must order the non-movant "to pay the movant's reasonable expenses incurred in making the motion." Fed. R. Civ. P. 37. Where a motion is granted in part, Rule 37(a)(5)(C) controls, giving the court discretion to "apportion the reasonable expenses for the motion." *Id*. Where a motion is denied, Rule 37(a)(5)(B) permits the nonmovant to request fees for defending the motion, "[b]ut the court must not order this payment if the motion was substantially justified." Fed. R. Civ. P. 37. This is all to say, Plaintiff is entitled to fees with reasonable reductions "given the mixed results of the motion[s]." *Schanfield v. Sojitz Corp. of Am.*, 258 F.R.D. 211, 217 (S.D.N.Y. 2009).

"Indeed, the most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (citation and quotation marks omitted). As such, courts in the Second Circuit generally reduce fees where a movant is not wholly successful on a motion. *See, e.g., Hardaway v. Ridgewood Corp.*, 706 F. Supp. 2d 436, 441 (S.D.N.Y. 2010) (reducing fee award 25%); *McDow v. Rosado*, 657 F. Supp. 2d 463, 470 –71 (S.D.N.Y. 2009) (reducing fee award 12%); *Valvo v. City of New York*, 2018 WL 3999011, at *5

(E.D.N.Y. Jan. 23, 2018) (reducing fee award 55%); *Husain v. Springer*, 579 F. App'x 3, 5 (2d Cir. 2014) (reducing fee award by roughly 25%).

Importantly, "because fees are left to each court's discretion, the case law concerning reduced fees is not easily summarized." *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 2021 WL 1222159, at *16 (S.D.N.Y. Mar. 31, 2021). Here, where Plaintiff requests fees for motions that were granted in part or denied but prompted compliance, the fee will be reduced by 10% – a rate this Court deems reasonable.

Plaintiff requests a total of $239,926.73 in fees. *See* Final Fee Calculation, ECF No. 118-40. Plaintiff provides thirty-three detailed invoices organized by date and time supporting the request. *See* ECF Nos. 118-7 – 118-40. For thoroughness, this Court will analyze each invoice and reduction.[2]

### 1.  September1, 2021 Invoice

As stated, Plaintiff is not entitled to fees for work that would have occurred absent Defendants' discovery failures. Nevertheless, Plaintiff requests $1,466.67 for drafting the joint ESI protocol on August 24, 2021. *See* September 1, 2021 Invoice, ECF No. 118-7. This work was done jointly and eight months prior to the first motion to compel. Accordingly, Plaintiff is not entitled to such fees.

### 2.  October 1, 2021 Invoice

Likewise, Plaintiff's October 1, 2021 invoice requests $3,712.49 for time spent communicating with Steven Ammann and Defense Counsel regarding the joint ESI protocol. *See* October 1, 2021 Invoice, ECF No. 118-8. Again, this work was done prior to any discovery dispute, and Plaintiff is not entitled to such fees.

---

[2] For ease of comprehension, a table demonstrating the total fee calculation is attached as an appendix to this opinion.

3.  November 1, 2021 Invoice

Plaintiff's November 1, 2021 invoice – again – requests $3,162.50 for work done on the joint ESI protocol and prior to any sanctionable discovery disputes. *See* November 1, 2021 Invoice, ECF No. 118-9. Plaintiff is not entitled to such fees.

4.  December 1, 2021 Invoice

Plaintiff's December 1, 2021 invoice requests $1,168.14 for drafting and serving non-party subpoenas deuces tecum. *See* December 1, 2021 Invoice, ECF No. 118-10. This work was done due to Defendants' failure to produce Plaintiff's payroll records. Indeed, "Plaintiff's efforts in discovery have been aimed at obtaining an accurate accounting of his commissions – including via non-party subpoenas duces tecum." First Motion to Compel at 2. Plaintiff is entitled to such fees.

5.  January 3, 2022 Invoice

Plaintiff's January 3, 2022 invoice requests $1,833.34 for revising the subpoenas deuces tecum. *See* January 3, 2022, ECF No. 118-11. For the reasons set forth above, Plaintiff is entitled to such fees.

6.  February 2, 2022 Invoice

Plaintiff's February 2, 2022 invoice request $7,959.60 for preparing and serving additional non-party subpoenas deuces tecum, and drafting correspondence with Defense Counsel. *See* February 2, 2022 Invoice, ECF No. 118-12. For the reasons set forth above, Plaintiff is entitled to such fees.

7.  March 1, 2022 Invoice

Plaintiff's March 1, 2022 invoice requests $9,221.35 for reviewing Defendants' discovery production to determine compliance and drafting additional subpoenas. *See* March 1, 2022 Invoice,

ECF No. 118-13. Review of the discovery production is intrinsically tied to the imminent discovery disputes. Such is recoverable.

8.  April 1, 2022 Invoice

Plaintiff's April 1, 2022 invoice requests $4,629.17 drafting the first motion to compel and preparing for the pre motion conference. *See* April 1, 2022 Invoice, ECF No. 118-14. The motion was granted in part. Accordingly, the fee will be reduced by 10% to $4,166.25.

9.  May 4, 2022 Invoice

Plaintiff's May 4, 2022 invoice requests $3,025.00 for correspondence with Defense Counsel regarding outstanding discovery. *See* May 4, 2022 Invoice, ECF No. 118-15. The request is granted.

10. June 1, 2022 Invoice

Plaintiff's June 1, 2022 invoice requests $6,095.83 to prepare Plaintiff's second motion to compel. *See* June 1, 2022 Invoice, ECF No. 118-16. The motion was grated in part. Accordingly, Plaintiff is entitled to the fee request with a 10% reduction – $5,486.25.

11.  July 1, 2022 Invoice

Plaintiff's July 1, 2022 invoice requests $11,199.79 for work correcting discovery deficiencies. *See* July 1, 2022 Invoice, ECF No. 118-17. The request is granted.

12. August 2, 2022 Invoice

Plaintiff's August 2, 2022 invoice requests $13,429.16 in fees for preparing the third motion to compel. *See* August 2, 2022 Invoice, ECF No. 118-18. The motion was granted in part. Accordingly, fee request is granted less a 10% reduction – $12,086.25.

13. August 31, 2022 Invoice

Plaintiff's August 31, 2022 invoice request $23,512.49 for preparing the first Rule 37 motion. *See* August 31, 2022 Invoice, ECF No. 118-19. On July 17, 2022, this Court denied the motion as moot because Plaintiff sought to supplement due to ongoing discovery violations. While that motion was not *per se* successful, it was amended due to Defendants' continued discovery failure. Accordingly, no reduction is necessary.

14. October 2, 2022 Invoice

Plaintiff's October 2, 2022 invoice requests $1,695.84 for work concerning outstanding discovery issues. *See* October 2, 2022 Invoice, ECF No. 118-20. The request is granted.

15. November 1, 2022 Invoice

Plaintiff's November 1, 2022 invoice requests $12,882.00 for preparing document requests, preparing for discovery conferences, and other work associated with discovery disputes. *See* November 1, 2022 Invoice, ECF No. 118-21. The request is granted.

16. December 3, 2022 Invoice

Plaintiff's December 3, 2022 invoice requests $8,360.00 for various discovery related case work. *See* December 3, 2022 Invoice, ECF No. 118-22. The lion's share of which is dedicated to drafting Plaintiff's fourth motion to compel. That motion was granted in full. No reduction is necessary.

17. January 4, 2023 Invoice

Plaintiff's January 4, 2023 invoice requests $2,106.56 in fees for various work related to outstanding discovery. *See* January 14, 2023 Invoice, ECF No. 118-23. The request is granted.

18. February 1, 2023 Invoice

Plaintiff's February 1, 2023 invoice requests $2,530.00 in fees for work related to outstanding discovery. *See* February 1, 2023 Invoice, ECF No. 118-24. The request is granted.

19. <u>March 1, 2023 Invoice</u>

Plaintiff's March 1, 2023 invoice requests $23,194.50 in fees for various work, some of which is recoverable and some of which is not. *See* March 1, 2023 Invoice, ECF No 118-25. First, Plaintiff requests $790.00 for Associate Wendy Tannenbaum preparing depositions, summary judgment material, and trial preparation. Such is not recoverable as it is unrelated to the discovery violations. The remaining work in the March 1, 2023 invoice pertains to depositions that were necessary to attain discoverable material, as well as preparation of the fifth motion to compel which was granted in full. Accordingly, $22,404.50 is recoverable.

20. <u>March 15, 2023 Invoice</u>

Plaintiff's March 15 2023 invoice requests $37,687.30. *See* March 15, 2023 Invoice, ECF No. 118-26. The work here pertains to court ordered depositions and preparing the revised Rule 37 motion. The fee request is recoverable.

21. <u>April 4, 2023 Invoice</u>

Plaintiff's April 4, 2023 invoice requests $4,620.00 for a meet and confer with Defense Counsel regarding outstanding discovery and revising the sixth motion to compel which was granted in full. *See* April 4, 2023 Invoice, ECF No. 118-27. The fee request is recoverable, and no reduction is necessary.

22. <u>May 1, 2023 Invoice</u>

Plaintiff's May 1, 2023 invoice requests $4,730.00 for the sixth and seventh motions to compel. *See* May 1, 2023 Invoice, ECF No. 118-28. The sixth motion to compel was granted in full resulting in the full requested amount. The seventh motion, however, was granted in part, warranting a 10% reduction of time dedicated to the seventh motion to compel: 5.7 hours at a rate

of $550 an hour –$3,135.00. With a 10% reduction for time spent on the seventh motion to compel, Plaintiff is entitled to $4,416.50 for the May 1, 2023 invoice.

### 23. June 2, 2023 Invoice

Plaintiff's June 2, 2023 invoice requests $3,300.00 for various work related to ongoing discovery disputes, including drafting stipulations and communication with Defense Counsel. *See* June 2, 2023 Invoice, ECF No. 118-29. The request is recoverable and requires no further reduction.

### 24. July 5, 2023 Invoice

Plaintiff's July 5, 2023 invoice requests $1,320.00 for drafting letters to the court and further correspondence with Defense Counsel. *See* July 5, 2023 Invoice, ECF No. 118-30. The request is recoverable and requires no further reduction.

### 25. August 1, 2023 Invoice

Plaintiff's August 1, 2023 invoice requests $1,320.00 00 for various work related to ongoing discovery disputes including further correspondence with Defense Counsel. *See* August 1, 2023 Invoice, ECF No. 118-31. The request is recoverable and requires no further reduction.

### 26. September 2, 2023 Invoice

Plaintiff's September 2, 2023 invoice requests $3,465.00 for various work related to ongoing discovery disputes, including drafting and revising the Rule 30(b)(6) notice. *See* September 2, 2023 Invoice, ECF No. 118-32. The request is recoverable and requires no further reduction.

### 27. October 2, 2023 Invoice

Plaintiff's October 2, 2023 invoice requests $3,090.00 for preparation of the eighth motion to compel and other work related to the discovery disputes. *See* October 2, 2023 Invoice, ECF No. 118-33. The eighth motion was granted in full. No reduction is necessary.

28. November 1, 2023 Invoice

Plaintiff's November 1, 2023 invoice requests $3,300.00 for various work related to ongoing discovery disputes. Including drafting and revising a proposed discovery schedule. *See* November 1, 2023 Invoice, ECF No. 118-34. The request is recoverable and requires no further reduction.

29. December 4, 2023 Invoice

Plaintiff's December 4, 2023 invoice requests $3,340.00 for various work related to ongoing discovery disputes. *See* December 4, 2023 Invoice, ECF No. 118-35. The request is recoverable and requires no further reduction.

30. January 2, 2024 Invoice

Plaintiff's January 2, 2024 invoice requests $5,500.00 for various work related to ongoing discovery disputes, including the revised Rule 37 motion. *See* January 2, 2024 Invoice, ECF No. 118-36. The request is recoverable and requires no further reduction.

31. February 1, 2024 Invoice

Plaintiff's February 1, 2024 invoice requests $11,055.00 for various work related to ongoing discovery disputes, including the revised Rule 37 motion. *See* February 1, 2024 Invoice, ECF No. 118-37. The invoice requests $2,640.00 for preparation of the ninth motion to compel. Although that motion was denied as moot, it produced discoverable information and progressed the case. Rule 37(a)(5)(A) specifically permits fees when a motion is granted or "or [d]isclosure or [d]iscovery [i]s [p]rovided [a]fter [f]iling." Fed. R. Civ. P. 37. Here, the ninth motion to compel

-21-

prompted subsequent disclosure. Accordingly, Plaintiff is entitled to such fees less a 10% reduction for time dedicated to the ninth motion to compel. A total of 7.2 hours at $550 an hour – $3,960. With a 10% reduction for time spent on the ninth motion to compel, Plaintiff is entitled to $10,659 for the February 1, 2024 invoice.

32. March 1, 2024 Invoice

Plaintiff's March 1, 2024 invoice requests $4,845.00 for various work related to ongoing discovery disputes, including preparation of correspondences to this Court regarding discovery disposes. *See* March 1, 2024 Invoice, ECF No. 118-38. The request is recoverable and requires no further reduction.

33. March 15, 2024 Invoice

Plaintiff's March 15, 2024 invoice requests $11,170.00 for work dedicated to finalizing this Rule 37 motion. *See* March 15, 2024 Invoice, ECF No. 118-39. The request is recoverable and requires no further reduction.

**Final Rule 37 Award**

Plaintiff is entitled to $227,670.16 in attorney fees.

**IV.    Motion to Compel Production**

Plaintiff requests production of Sharestates' 2021 D&O (directors and officers) insurance policy. *See* Motion to Compel ("Mot. Compel D&O"), ECF No. 170. Additionally, Plaintiff requests: (1) the Court reopen discovery for a limited insurance inquiry; (2) an adverse inference that Defendants had a D&O policy in 2021 and concealed it; (3) an order barring Defendants and their insurer (a non-party) from asserting the notice of claim is untimely in this action or future actions; (4) sanctions totaling $120,000; and (5) referral of Defense Counsel Michael Munoz to the grievance committee. *See* Mot. Compel D&O.

Rule 26 (a)(1)(A)(iv) requires automatic disclosure of "any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment." Fed. R. Civ. P. 26. Defendants' Rule 26 disclosure states they "have no applicable insurance policies." ECF No 89-8. Nevertheless, Plaintiff emailed Defense Counsel on May 7, 2025, demanding the disclosure of pertinent insurance policies. Mot. Compel, Ex. C. Importantly, that discovery request was made pursuant to this docket and 24-cv-6586. Defense Counsel replied, again asserting that Sharestates had no applicable insurance policy in 2021, but would make all mandatory disclosures for 24-cv-6586. Plaintiff responded that Defense Counsels' "representation that 'Defendants have no applicable insurance policies' in Case No. 21-cv-02766 is not sufficient to satisfy [their Rule 26] obligations[.]" *Id*. Defense Counsel then produced D&O policies from 2022, 2023, and 2024. But Defendants produced the documents in accordance with their Rule 26 obligations for 24-cv-6586 and maintained that discovery in this case was closed.

Following further communication between Plaintiff and Defense Counsel, Plaintiff emailed Defendants' insurer directly, requesting copies of the 2021 D&O policy. *Id*. Ex. A. The insurer emailed Plaintiff that "there is no valid policy for Sharestates, Inc[.]" *Id*. Following further inquiry from Plaintiff, the insurer stated that Sharestates' policy expired in 2022. *Id*. Defendants' insurer then stated that "[i]t is a claims made policy, which means the claim has to be made when there is an active policy. No claim was made in 2021 or later regarding this matter." *Id*.

Further, in opposition to Plaintiff's motion to disqualify, Defense Counsel states "[a]t the time of its Rule 26 disclosures, Sharestates determined that the same insurance policy cited by Plaintiff did not provide coverage for the claims he asserts in this case." Response to Motion to

Disqualify, ECF No. 181.  This is to say, there is at least some indication Defendants maintained a policy in 2021.

"[A]s in all matters relating to discovery, the district court has broad discretion[.]" *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012). "Discovery rules are to be accorded a broad and liberal treatment . . . to effectuate their purpose that civil trials in the federal courts no longer need be carried on in the dark." *Ratliff v. Davis Polk & Wardwell*, 354 F.3d 165, 170 (2d Cir. 2003) (internal quotation marks omitted).[3]

"Under ordinary circumstances, a party's good faith averment that the items sought simply do not exist, or are not in his possession, custody, or control, should resolve the issue of failure of production since one cannot be required to produce the impossible" *Zervos v. S. S. Sam Houston*, 79 F.R.D. 593, 595 (S.D.N.Y. 1978). "In the face of a denial by a party that it has possession, custody or control of documents, the discovering party must make an adequate showing to overcome this assertion." *Golden Trade S.r.L. v. Lee Apparel Co.*, 143 F.R.D. 514, 525 n.7 (S.D.N.Y. 1992). "In other words, Plaintiffs must cite to specific evidence to challenge Defendants' assertions that no additional responsive documents exist." *Mason Tenders Dist. Council of Greater N.Y. v. Phase Constr. Servs., Inc.*, 318 F.R.D. 28, 36 (S.D.N.Y. 2016) (citations omitted).

Here, Defendants claim the 2021 D&O insurance policy does not exist. Plaintiff, however, has produced emails alluding to a 2021 policy. While Defendants cannot produce what does not exist, the email exchange raises questions.

As such, Defendants are ordered to produce any D&O insurance policies they held in 2021, if they exist. If no such insurance policies exist, Defendants shall produce a sworn affidavit that

---

[3] While discovery in this case is closed, a motion to compel following the discovery period may be filed if there is good cause. *Novartis Pharma AG v. Incyte Corp.*, 778 F. Supp. 3d 637, 645 (S.D.N.Y. 2025) (citation and quotation marks omitted).

no 2021 D&O insurance policies exist. To be clear, Defendants are not entitled to withhold insurance policies they deem inapplicable. All insurance D&O policies that were active in 2021 must be produced.

Plaintiff's additional requests under ECF No. 170 are denied. Specifically, the request to reopen discovery is denied as the above ruling to compel production of the insurance policy quelches any concern. The request for an adverse inference is both premature and lacks evidentiary support. An order barring Defendants and their insurer (a non-party) from raising defenses at a later point is similarly premature and lacking evidentiary support. Nor do we have the authority to curtail insurance defenses in future adjudication. Finally, Plaintiff's request for sanctions and disciplinary referral is denied. *See DLC Mgmt. Corp.* 163 F.3d at 136 ("courts must take pains to exercise restraint and discretion" issuing sanctions).

## V.    Motion to Disqualify Counsel

On June 16, 2025, Plaintiff moved to disqualify Michael Munoz ("Munoz" or "Defense Counsel") and his firm Golenbock, Eiseman, Assor, Bell, & Peskoe LLP ("Golenbock") from this action. *See* Motion to Disqualify ("Mot. Disqualify"), ECF No. 171. Plaintiff makes five arguments, each of which are unsuccessful.

### a.   *Defense Counsel as Plaintiff's Adversary*

In September 2024, Plaintiff filed a separate suit against Sharestates, and several parties related to this action including Munoz and Golenbock. *See Ammann v. Sharestates, et al.*, 24-cv-6586. Plaintiff asserts Defense Counsel's newfound status as a named defendant in 24-cv-6586 renders them ethically and professionally incapable of representing Defendants here. That contention, however, is moot, as that action was dismissed by Judge Bulsara on March 17, 2026. Nevertheless, even if 24-cv-6586 had survived dismissal, Plaintiff's argument is unavailing.

-25-

Plaintiff relies on two cases: *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384 (2d Cir. 1976) and *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746 (2d Cir. 1981). These cases, however, do not stand for Plaintiff's proposition.

In *Cinema 5*, an attorney was partner of two firms. *Cinema 5* 528 F.2d at 1385. One firm sued an active client of the other. *Id*. at 1386. The Second Circuit held that although the attorney did not represent the client, simultaneous representation opposed "the duty of undivided loyalty which an attorney owes to each of his clients." *Id*. at 1384. Indeed, "it would be questionable conduct for an attorney to participate in any lawsuit against his own client without the knowledge and consent of all concerned." *Id*. at 1386. In reaching this conclusion, the Court applied the substantial relationship test which is "customarily applied in determining whether a lawyer may accept employment against a former client." *Id*. at 1386. The Second Circuit ultimately found simultaneously representing adverse clients is "prima facie improper." *Id*. at 1387. *Cinema 5* says nothing of suing a mutually adverse party. Plaintiff's suit against Munoz and Golenbock does not impede their loyalty to Defendants here.

In *Glueck v. Jonathan Logan, Inc.*, the Second Circuit had to decide whether "a law firm that represents an incorporated trade association may represent an individual client in a suit against a corporation one division of which is a member of the association." 653 F.2d at 747. In lay terms, a law firm represented a trade association and simultaneously represented a client suing a member of the trade association. *Id*. The Second Circuit found that, although the relationship did not create a *per se* conflict, the District Court's disqualification was justified based on a "requisite relationship." *Id*. at 750. Again, the *Glueck* court did not discuss whether an attorney could represent a client against a mutually adverse party. Nothing here indicates Plaintiff's now dismissed suit against Defense Counsel will "create a realistic risk either that the [clients] will not

be represented with vigor or that unfair advantage will be taken of the defendant." *Id*. at 750. To be sure, adopting Plaintiff's approach would give litigants the ability to disqualify adverse attorneys at will by naming them in a separate suit.

    b.  *Intercap Transaction*

Plaintiff asserts Defense Counsel should be disqualified because Sharestates sold to Intercap-affiliated in January 2025. Specifically, Plaintiff contends

> [t]he new leadership has already taken the position to distance former board member involvement and may wish to remediate or disclose past misconduct, while Mr. Shayanfekr seeks to justify it. Representing both sides of that divide violates RPC 1.7(a)(1). *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791-92 (2d Cir. 1983), confirms disqualification is required when one lawyer's simultaneous representation inevitably diminishes the vigor of his advocacy.

Mot. Disqualify at 1. Defense Counsel contends "[t]hese vague and speculative characterizations are insufficient to establish an actual conflict between Defendants, let alone a conflict that requires disqualification of counsel." Response to Motion to Disqualify, ECF No. 181. The Court agrees.

As an initial matter, *Evans v. Artek Sys. Corp.* does not support Plaintiff's argument. *Evans* involved a conflict of interest that arose in a complex derivative suit. In 1977, Dynatech acquired a controlling share of Artek's common stock. 715 F.2d at 789. In 1980, the president of Artek, consulted with a law firm about a potential suit against Dynatech. The Artek president believed Dynatech violated anti-trust law by intentionally depreciating Artek common stock to effectuate acquisition at bargain rate. *Id*. For several years prior, the law firm which Artek's president consulted served as Artek's general counsel. In 1982, Artek became a wholly owned subsidiary of Dynatech. Artek shareholders were given $1.75 per share although the stock traded at $7 per share prior to Dynatech's alleged anti-trust violations.

Shortly thereafter, shareholders sued Dynatech and Artek for securities violations. The shareholders, however, were represented by the same firm that served as Artek's general counsel

and consulted with Artek's president. The District Court disqualified the firm based on their prior representation of Artek. On appeal, the Second Circuit found that the primary issue was whether the Artek president consulted the law firm on behalf of Dynatech and Artek, or individually and on behalf of Artek minority shareholders. The Second Circuit ultimately held

> if a confidential attorney-client relationship existed in 1980 between [the firm] and Dynatech or Artek, [the firm] must be disqualified from acting as plaintiff's counsel in the present case. If, on the other hand, [the firm] was consulted on behalf of [the president] individually or the minority public stockholders, no such disqualification is required.

*Id*. at 792. The *Evans* case highlights distinct conflicts that arise when a firm takes an adverse position to a former client. That is to say, it is immaterial to the immediate action.

Plaintiff has taken the position that every time a corporate entity is bought or sold, such change in ownership necessitates a change in legal representation. That is, of course, not true. Even still, by Plaintiff's own admission, "Shayanfekr remains CEO" of Sharestates. Mot. Disqualify at 1. A change in corporate control does not necessitate a change in legal representation.

Giving the most liberal reading to Plaintiff's argument, he asserts a future conflict may arise between Shayanfekr and Intercap. But "the possibility that future conflicts of interest may arise does not require disqualification." *GB v. Town of Hempstead*, 2019 WL 3330243, at *3 (E.D.N.Y. May 1, 2019), *report and recommendation adopted,* 2019 WL 2560150 (E.D.N.Y. June 21, 2019) (citation and quotation marks omitted).

c. *Advocate-Witness Rule*

Next, Plaintiff contends Munoz should be disqualified under the advocate-witness rule – that "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a witness on a significant issue of fact[.]" Model Rules of Professional Conduct, 3.7; *Ramey v. Dist. 141, Int'l Ass'n of Machinists & Aerospace Workers*, 378 F.3d 269, 282 (2d Cir. 2004) ("The advocate-

witness rule applies, first and foremost, where the attorney representing the client before a jury seeks to serve as a fact witness *in that very proceeding.*") (emphases in original).

Plaintiff argues Munoz is a "necessary witness on a disputed, outcome-determinative issue." Mot. Disqualify at 2. The assertion is based solely on this Court's prior Rule 11 order regarding the now dismissed counterclaim. Plaintiff, however, fails to identify the fact issue on which Munoz is likely to testify and fails to provide evidence to support the assertion. To be sure, a Rule 11 finding does not necessitate disqualification. Such would severely undermine a party's right to select representation and derail litigation upon every Rule 11 finding by forcing an abrupt change of legal representation. Even still, "numerous courts have [] held that the witness-advocate rule addresses only counsel's participation at trial, and does not bar counsel's participation in pre-trial proceedings." *Cassini v. Cnty. of Nassau*, 2023 WL 6958795, at *4 (E.D.N.Y. Oct. 20, 2023) (citation and quotation marks omitted). As such, even if Munoz were likely to testify at trial – *which he is not* – disqualification would not be necessary until such time.

d. *Discovery Disputes*

Plaintiff also seeks disqualification based on the discovery dispute over the 2021 D&O policy and information regarding Intercap's acquisition of Sharestates. Essentially, Plaintiff believes Defense Counsel intentionally withheld discoverable information. The assertion is misplaced.

First, Defendants contend "[a]t the time of its Rule 26 disclosures, Sharestates determined that the same insurance policy cited by Plaintiff did not provide coverage for the claims he asserts in this case." Response to Mot. Disqualify at 4. This Court has no reason to doubt the veracity of the claim. Additionally, this Court ordered Defendants to produce the 2021 insurance policy *if it*

*exists* and file a sworn affidavit if not. *See supra*. No sanction or disqualification will be ordered while production is pending.

Second, Plaintiff's amended complaint makes no allusion to the Intercap transaction. Indeed, by Plaintiff's own admission, the Intercap acquisition "occurred after the close of the original discovery period." *See* ECF No. 177. Accordingly, failure to provide information about Intercap is not a discovery violation.

Third, the cases cited by Plaintiff do not contain the quoted language "pulls in the opposite direction from the client's interest." Mot. Disqualify at 2. Nor do the cases stand for the conclusion that an attorney should be disqualified for alleged – but not proven – discovery violations. *Bd. of Ed. of City of New York v. Nyquist* was a complex case between several entities regarding the layoff structure of the New York City Board of Education. 590 F.2d 1241 (2d Cir. 1979). There, groups of male and female gym teachers had crossclaims against each other. The alleged conflict of interest arose when the male gym teachers were represented by a union lawyer whose fees were partially paid by the female gym teachers' union dues. *Id*. The Second Circuit found that disqualification was not warranted. *Id*. at 1246-47. Further, *S & S Hotel Ventures Ltd. P'ship v. 777 S.H. Corp.* concerns the advocate-witness rule which was addressed above. 69 N.Y.2d 437 (1987).

e.  *Cumulative Prejudice*

Finally, Plaintiff contends the cumulative effect of alleged litigation misconduct supports disqualification.

"The authority of federal courts to disqualify attorneys derives from their inherent power to 'preserve the integrity of the adversary process.'" *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (quoting *Nyquist,* 590 F.2d at 1246). "In exercising this power, we have attempted to balance 'a client's right freely to choose his counsel' against 'the need

to maintain the highest standards of the profession.' " *Id.* (quoting *Gov't of India v. Cook Indus., Inc.,* 569 F.2d 737, 739 (2d Cir.1978).

"Recognizing the serious impact of attorney disqualification on the client's right to select counsel of his choice, we have indicated that such relief should ordinarily be granted only when a violation of the Canons of the Code of Professional Responsibility poses a significant risk of trial taint." *Glueck*, 653 F.2d at 748. To be sure, "disqualification invades the sanctity of the attorney-client relationship [and] is generally disfavored in the Second Circuit." *Galloway v. Cnty. of Nassau*, 589 F. Supp. 3d 271, 277 (E.D.N.Y. 2022) (citations and quotation marks omitted). Indeed, "courts require a high standard of proof to disqualify the non-movant's counsel." *Id.* (citations and quotation marks omitted). Courts of this Circuit have long recognized that disqualification is a last resort not to be ordered lightly. Indeed, "[g]iven the availability of both federal and state comprehensive disciplinary machinery, . . . there is usually no need to deal with all other kinds of ethical violations in the very litigation in which they surface." *Bd. of Ed. of City of New York v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979). The bar set to disqualify a non-movants counsel is a high one. Plaintiff falls well short. The motion to disqualify is denied.

## VI.    Motion to Reopen Discovery Regarding Intercap Acquisition

Plaintiff requests to reopen discovery for the limited purpose of determining the details of Intercap's acquisition of Sharestates. *See* Motion to Reopen ("Mot. Reopen") ECF No. 177. Plaintiff claims such information is necessary "for enforcing any court order or judgment in this case." *Id*.

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Information is relevant if: (a) it has any tendency to make a fact more or less probable than it

would be without the evidence; and (b) the fact is of consequence in determining the action." *N. Shore-Long Island Jewish Health Sys., Inc. v. MultiPlan, Inc.*, 325 F.R.D. 36, 47 (E.D.N.Y. 2018).

Plaintiff's suit is against Sharestates and its CEO. The allegations are premised on Plaintiff's employment with Sharestates four years prior to Intercap's acquisition. As such, Intercap's acquisition of Sharestates has no bearing on any claim nor outcome of this case.

If judgment is rendered in Plaintiff's favor, Intercap's control over Sharestates' assets may be relevant for post-judgment discovery. *See* Fed. R. Civ. P. 69(a)(2); *Libaire v. Kaplan*, 760 F. Supp. 2d 288, 293 (E.D.N.Y. 2011) ("[T]he scope of post-judgment discovery is broad."); *First Tech. Cap., Inc. v. Airborne, Inc.*, 380 F. Supp. 3d 217, 219–20 (W.D.N.Y. 2019) ("The purpose of discovery under Rule 69(a)(2) is to allow the judgment creditor to identify assets from which the judgment may be satisfied and consequently, the judgment creditor should be permitted to conduct a broad inquiry to uncover any hidden or concealed assets of the judgment debtor.").

Accordingly, the request to reopen discovery is denied without prejudice. Plaintiff may renew this motion in the event judgment is rendered in his favor against Defendants.

## VII.    Motion for Reconsideration and to Strike

Finally, Plaintiff moves for reconsideration of an order scheduling an in person hearing on August 1, 2025. ECF No. 180. That hearing was adjourned without date rendering the request moot. *See* Docket Entry dated July 31, 2025.

Plaintiff further requests this Court strike two late responses filed by Defendants. Plaintiff filed two non-dispositive motions on April 15 and 16, 2025. *See* ECF Nos. 160 and 162. Defendants did not respond until May 8, 2025. *See* ECF No. 164. Plaintiff cites my individual rules which require responses to "be served and filed within five business days of receipt of the letter motion." *See* Magistrate Judge Steven Tiscione, Individual Practice Rule III. My individual rules

also state that "letter motions may not exceed three pages in length," and failure to comply "will result in the denial of the motion." *Id*. Ironically, Plaintiff's letter motion to compel payment of sanctions (ECF No. 160) to which Defendants were responding, was six pages. This alone is grounds for denial. *See Keybank Nat'l Ass'n v. Nour Limo, Inc.*, 345 F.R.D. 555, 560 (E.D.N.Y. 2024). Plaintiff's request is further tainted by the fact that Defendants delayed response was likely due to the automatic stay caused by Plaintiff's bankruptcy petition. To maintain fairness, this Court will disregard the failure – by *both* parties – to abide by my individual rules. This is a one-time courtesy, and all further filings shall comply with my individual practice rules.

As a final point, this Court takes a moment to advise that the constrained timeline of successive requests for relief triggered by duplicative and largely meritless motion practice has done nothing more than delay the adjudication of this action. As should be obvious by orders issued by myself and Judge Bulsara restricting the parties from filing, emotionally driven motion practice serves only to clog the arteries of the docket and hinder the efficient adjudication of this case.

## CONCLUSION

The Court orders as follows:

- ECF No. 157 is DENIED;

- ECF No. 160 is DENIED;

- ECF No. 162 is DENIED;

- ECF Nos. 166 and 191 are DENIED in part. Plaintiff is entitled to $227,670.16 in attorney fees for discovery violations;

- ECF No. 170 is GRANTED in part and DENIED in part. Defendants are ordered to produce any D&O insurance policies that were active in 2021 if they exist. If Defendants did not have D&O insurance in 2021, Defendants shall file a sworn affidavit affirming that no such insurance policies exist by April 3, 2026;

- ECF No. 171 is DENEID;

- ECF No. 177 is DENIED;

- ECF No. 180 is DENIED.

**SO ORDERED.**

/s/ Steven Tiscione

Steven Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Central Islip, New York
March 20, 2026

**Appendix 1 – Rule 37 Award Chart**

| Invoice | Amount Requested | Amount Reduced | Amount Awarded |
|---|---|---|---|
| September 1, 2021 | $1,466.67 | $1,466.67 | $0 |
| October 1, 2021 | $3,712.49 | $3,712.49 | $0 |
| November 1, 2021 | $3,162.50 | $3,162.50 | $0 |
| December 1, 2021 | $1,168.14 | $0 | $1,168.14 |
| January 3, 2022 | $1,833.34 | $0 | $1,833.34 |
| February 2, 2022 | $7,959.60 | $0 | $7,959.60 |
| March 1, 2022 | $9,221.35 | $0 | $9,221.35 |
| April 1, 2022 | $4,629.17 | $462.92 | $4,166.25 |
| May 4, 2022 | $3,025.00 | $0 | $3,025.00 |
| June 1, 2022 | $6,095.83 | $609.58 | $5,486.25 |
| July 1, 2022 | $11,199.79 | $0 | $11,199.79 |
| August 2, 2022 | $13,429.16 | $1,342.91 | $12,086.25 |
| August 31, 2022 | $23,512.49 | $0 | $23,512.49 |
| October 2, 2022 | $1,695.84 | $0 | $1,695.84 |
| November 1, 2022 | $12,882.00 | $0 | $12,882.00 |
| December 3, 2022 | $8,360.00 | $0 | $8,360.00 |
| January 4, 2023 | $2,106.56 | $0 | $2,106.56 |
| February 1, 2023 | $2,530.00 | $0 | $2,530.00 |
| March 1, 2023 | $23,194.50 | $790.00 | $22,404.50 |
| March 15, 2023 | $37,687.30 | $0 | $37,687.30 |
| April 4, 2023 | $4,620.00 | $0 | $4,620.00 |
| May 1, 2023 | $4,730.00 | $313.50 | $4,416.50 |
| June 2, 2023 | $3,300.00 | $0 | $3,300.00 |
| July 5, 2023 | $1,320.00 | $0 | $1,320.00 |
| August 1, 2023 | $1,320.00 | $0 | $1,320.00 |
| September 2, 2023 | $3,465.00 | $0 | $3,465.00 |
| October 2, 2023 | $3,090.00 | $0 | $3,090.00 |
| November 1, 2023 | $3,300.00 | $0 | $3,300.00 |
| December 4, 2023 | $3,340.00 | $0 | $3,340.00 |
| January 2, 2024 | $5,500.00 | $0 | $5,500.00 |
| February 1, 2024 | $11,055.00 | $396 | $10,659.00 |
| March 1, 2024 | $4,845.00 | $0 | $4,845.00 |
| March 15, 2024 | $11,170.00 | $0 | $11,170.00 |
| **Totals** | **$239,926.73** | **$12,256.57** | **$227,670.16** |